**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MINNESOTA**

_____

|  |  |
|---|---|
| Everest Stables, Inc., a Minnesota corporation and Jeffrey Nielsen, | Court File No.: |
| Plaintiffs, | |
| v. | **COMPLAINT**<br>**JURY TRIAL DEMANDED**<br>**UNDER FRCP 38(b)** |
| Porter, Wright, Morris, & Arthur LLP and Christopher D. Cathey, | |
| Defendants. | |

_____

Plaintiffs Jeffrey Nielsen ("Nielsen") and Everest Stables, Inc., ("Everest"), by his undersigned attorneys, for his complaint against Christopher D. Cathey ("Cathey") and Porter, Wright, Morris & Arthur LLP ("Porter Wright") alleges as follows:

## <u>PARTIES, JURISDICTION AND VENUE</u>

1.      Everest is a Minnesota corporation with its principal place of business located in Stillwater, Minnesota.  Everest is a thoroughbred horse breeding and racing company owned by Nielsen.    Nielsen is the owner and Chief Executive Officer of Everest.

2.      Nielsen is a Minnesota resident, residing in Washington County, Minnesota.

3.      Christopher Cathey is a Florida resident now practicing at Dickinson Wright in Fort Lauderdale, FL.  At all times relevant to this matter Cathey was a partner at Porter Wright.

4.      Porter Wright is a limited liability partnership with its principal place of business located at 41 South High Street, Suite 2900, Columbus, Ohio.  Porter Wright is a national law firm with eight offices throughout the United States.

5.      Porter Wright does not have an office in Minnesota and does not have any partners who reside in Minnesota.

6.      Porter Wright and Cathey commenced three legal malpractice lawsuits on behalf of Plaintiffs.  Two Complaints were venued in Hennepin County Minnesota; one lawsuit on behalf of Everest and one lawsuit on behalf of Nielsen. The third Complaint was venued in the United States District Court in the Western District of Kentucky on behalf of Everest. The malpractice, fraud and the adverse consequences of these actions of Porter Wright and Cathey all manifested themselves in and through the rulings of the U.S. District Court in Kentucky and the Minnesota District Court.

7.      Plaintiffs under Minnesota jurisdiction is proper in the District of Minnesota pursuant to 28 U.S.C §§ 1332 and 1441 as Plaintiffs are residents of Minnesota, Defendant Cathey is a resident of Florida and Defendant Porter Wright is a resident of Ohio and none of the limited liability partners are residents of Minnesota.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1442 because the claim arose while a party resided in Minnesota.

## **BACKGROUND FACTS**

9.      In the first of three matters, Porter Wright and Cathey were retained by Everest to pursue claims against Foley and Mansfield, PLLP ("F&M") and attorney Thomas Pahl ("Pahl") related to F&M's and Pahl's representation of Everest. (Everest Stables v. Foley & Mansfield and Thomas W. Pahl #27-CV-18-8745).  F&M and Pahl had been retained in three separate pieces of litigation.  First, F&M and Pahl brought a claim on behalf of Everest against Crestwood Farms, et al., ("*Crestwood Litigation*"), venued in Hennepin County District Court, later removed to

Kentucky, and a second for a claim on behalf of Everest against Canani and Licht ("*Canani Litigation*") venued in U.S. District Court, Central District of California.

10.     In the second matter Nielsen retained Porter Wright and Cathey to pursue legal malpractice claims against Dorsey & Whitney LLP ("Dorsey") and attorney George Eck ("Eck") relating to personal matters arising in Washington County ("*Washington County Litigation*") (Jeffrey Nielsen v. Dorsey & Whitney, LLP, George Eck, and Peter M. Lancaster #27-CV-17-16371).

11.     In the third matter Everest retained Porter Wright and Cathey to pursue legal malpractice claims against William C. Rambicure, Jr., Rambicure Law Group, PSC and Miller &Wells, PLLC ("*Rambicure Litigation*") on behalf of Everest concerning the legal advice Rambicure provided to Nielsen regarding the contract parties obligations for the reduction of equine holdings. (Everest Stables v. William C. Rambicure, Jr., et al #3:15-CV-576 GNS/CHL).

12.     Porter Wright and Cathey made assurances to Plaintiffs that they were qualified to handle three legal malpractice claims simultaneously and provided claims as to their assurances and that they would never make the same mistakes as Plaintiffs previous counsel had made.  They also assured Plaintiffs that they understood the critical nature of his concerns with the gross mishandling that occurred by previous counsel and that they could not comprehend the way Pahl and Eck handled these matters.

13.     Porter Wright and Cathey reassured Plaintiffs that they had sufficient experience to handle these matters and Plaintiffs relied upon those assurances and Cathey assured Plaintiffs that he had experience in handling legal malpractice claims and understood the special requests of these claims.

## UNDERLYING MALPRACTICE ACTIONS

**I.    Foley & Mansfield and Thomas Pahl Litigation**

14.     F&M and Pahl undertook two pieces of litigation on behalf of Everest, those being the *Crestwood Litigation* and *Canani Litigation*.

Underlying Crestwood Litigation Matter

15.     The *Crestwood litigation* was litigated by F&M and Pahl in the Hennepin County District Court and later moved to the Eastern District of Kentucky Court file No.  5:10-CV-72. The history of this litigation is set forth in the Complaint and Amended Complaint filed by Porter Wright and Cathey in the Foley matter.  The Amended Complaint of Porter, Wright, Morris & Arthur LLP, and Christopher Cathey is attached as Exhibit A.  After losing on summary judgment in the District Court, F&M  and Pahl appealed certain issues to the 6th Circuit.   (Crestwood v. Everest Court File No. 13-5688)

16.     The case was commenced in the summer of 2009 and subsequently F&M and Pahl drafted three amended complaints.  These claims related to a series of transactions involving various horses, involving claims for breach of contract, breach of fiduciary duty, fraud and misrepresentation, and implied covenant of good faith and fair dealing.  The Kentucky court dismissed all of Everest's claims based on F&M and Pahl's negligence.

17.     After the dismissal, F&M and Pahl filed a motion for a fourth amended complaint attempting to add a series of new claims, claims he had known before the summary judgment motion was brought by Crestwood. The federal court in Kentucky summarily denied the motion because F&M and Pahl had brought the new claims after summary judgment was granted, all key deadlines had passed, the late motion would burden the court and the Crestwood defendants, and

the motion was futile.  The Court's decisions were appealed and the Sixth Circuit Court of Appeals affirmed. (Crestwood v. Everest Court File No. 13-5688)

Underlying Canani Litigation Matter

18      The *Canani litigation* was initiated by F&M and Pahl in the U.S. District Court for the Central District of California, Court file No.:  2:09-CV-09446 on December 23, 2009.  The Complaint was subsequently amended three times by F&M and Pahl.  The history of this litigation is set forth in the Complaint and Amended Complaint filed by Porter Wright and Cathey in the Foley matter.  The Amended Complaint is attached as Exhibit A.    After trial, F& M  and Pahl appealed certain issues to the 9th Circuit.   (Everest v. Canani, et al, Court File No. 12-57215)

19.      The facts underlying the *Canani Litigation* were simple fraud and breach of fiduciary duty, and punitive damages were sought based on the conduct of two defendants, Julio Canani ("Canani") and Roger Licht ("Licht").

20.      Canani had been the trainer for Everest in California since 1990.  Everest and Nielsen were located in Minnesota.  Everest trusted and relied on Canani regarding the horses owned by Everest and their condition.

21.      Canani engaged in a conspiracy to misrepresent the physical condition of certain horses owned by Everest so Canani, Licht or other clients of Canani could buy the horses from Everest, either directly or indirectly, far below their fair market value.  Canani would then sell the horses he acquired, directly or indirectly, for a quick and substantial profit.  The jury found that Canani and Licht engaged in fraud, breached their fiduciary duty and other alleged claims.  The jury also awarded punitive damages against Canani and Licht based on their conduct.

22.      Everest however was limited in the damages it could present to the jury because F&M and Pahl failed to properly disclose any expert for trial, including Nielsen, and all such expert

testimony was barred by the California court.  The parties were required to designate experts by July 17, 2011.  F&M and Pahl never disclosed any expert under Rule 702, Federal Rules of Evidence, within the time frames required by the California court.  F&M and Pahl never disclosed an expert under Rule 701 within the time frames required by the California court.  F&M and Pahl then attempted to have Nielsen testify as an undisclosed expert under Rule 701, Federal Rules of Civil Procedure.  That attempt to circumvent the expert disclosure rules was denied by the Court. As such, Everest was forced to attempt to prove its damages without an expert, with a resulting devastating effect on its damage claim.

24.     F&M and Pahl were aware prior to attempting to disclose Nielsen as an expert under Rule 701 that this attempt would fail.  Research done by others at F&M at the direction of Pahl on this same issue regarding the defendant Canani had provided the same conclusion as the court reached, that being Canani could not testify without being disclosed as an expert under Rule 701.

24.     Additionally, in the *Canani Litigation*, F&M and Pahl failed to present evidence of financial condition of the Canani defendants as required by California law when awarding punitive damages.  The California court vacated the award of punitive damages of $50,000 because of this failure of F&M and Pahl.

**Porter Wright and Cathey Representation of Everest in the Foley & Mansfield, and Pahl Litigation**

25.     Porter Wright and Cathey commenced claims against F&M and Pahl on or about August 1, 2017, for claims of professional malpractice, negligence, breach of contract, and breach of fiduciary duty relating to the *Crestwood Litigation* and the *Canani Litigation*.  (Hennepin County Court file no.: #27-CV-18-8745).   At that time, Cathey provided an Affidavit of Expert

Review pursuant to Minnesota Statute § 544.42 that he had conferred with an expert who had indicated that the actions of F&M and Pahl constituted legal malpractice.

26.     On May 16, 2018 Porter Wright and Cathey Amended the Complaint adding claims of fraud and negligent misrepresentation.  The First Amended Complaint is attached as Exhibit A.

27.     On July 11, 2018, Judge Ronald Abrams issued a Scheduling Order for the case, the Scheduling Order was amended on July 20, 2018.

28.     The Amended Scheduling Order dated July 20, 2018 was issued about 1 year after the commencement of the underlying litigation.   Defendants' advised Plaintiffs' that they would never miss a deadline.

29.     The Amended Scheduling Order at paragraph 6 specifically addresses the requirements for expert disclosures under Minn. Stat. § 544.42 and the disclosure of expert opinions.

30.     Cathey advised Everest and Nielsen that Cathey and Porter Wright would not allow for deficient discovery responses by the opposing party and that they would fully pursue the deficient discovery

31.     In accordance with the Amended Scheduling Order, Cathey and Porter Wright advised Nielsen that the necessary discovery responses had been received during the course of the discovery period and that they had put the documents through a digitized process for efficient use of the information. The process and tools for digitizing the documents was a cost and expense that was passed onto Everest.

### *Failure to Timely Disclose Expert Witnesses*

32.    The Amended Scheduling Order dated July 20, 2018 at paragraph 6 states the Plaintiffs shall make expert disclosures, including any required by Minn. Stat. § 544.42 on or before January 14, 2019.

33.    An Affidavit of Expert Identification was served by Porter Wright and Cathey related to the F&M and Pahl litigation on January 14, 2019, the last day under the Amended Scheduling Order in which to serve this affidavit under the Minn. Stat. §544.42 and the underlying Court Order.

34.    Porter Wright and Cathey failed to file any expert opinions by the required date under the District Court's Amended Scheduling Order.  Instead, on January 14, 2019, the date the expert opinion was due pursuant to the Amended Scheduling Order, Porter Wright and Cathey brought a motion to extend the time for filing the required expert affidavit.

35.    The Motion to extend the time to file the expert affidavit was heard by the District Court on January 30, 2019.   The Court took the matter under advisement.

36.    Cathey also advised  Everest and Nielsen that at the time of the Pre-Trial Hearing that if he was not able to get a favorable response from the judge as to what they were seeking, that he would take responsibility and acknowledge to the Court that he was negligent in order to protect Plaintiffs.  This did not happen.

37.    Porter Wright and Cathey served the expert opinion of Carl Thurow and Rachel McCart on behalf of Everest on February 14, 2019, a month after the required disclosure date.

38.    On March 5, 2019 the Court issued its order denying Everest's motion to extend the time to file the expert affidavit.  Cathey and Porter Wright made various representations to the Court during the hearing that the Court discounted at the hearing and in its Order.     Cathey and

Porter Wright further represented to the Court that the January 14, 2019 deadline was met, but that a more comprehensive affidavit would be prudent. The Court found that Porter Wright and Cathey had failed to demonstrate good cause for an extension of the deadline, and that by purporting that the deadline had been "met" there was no authority to extend the deadline.

39.    Porter Wright and Cathey withdrew from representing Everest on April 25, 2019, knowing that Everest would need to replace counsel within 30 days.

40.    The manner of this withdrawal by Porter Wright and Cathey caused Everest harm as it had to immediately seek new counsel under the difficult circumstances of critical motions left pending or which were brought by the various defendants shortly after the withdrawal.

41.    F&M and Pahl brought a motion for summary judgment on the legal malpractice claims on June 10, 2019.

42.    The District Court granted the F&M's and Pahl's motion for summary judgment with respect to the legal malpractice claims because the expert affidavit as submitted to the Court by Porter Wright and Cathey was deficient.  The Court stated "Everest's Affidavit fails to make a meaningful disclosure addressing Defendants' alleged breach of the appropriate standard of care, and/or how Defendants' departure was proximate and but-for cause of Everest's damages.  Where Everest fails to make meaningful disclosures, no safe-harbor is warranted." The Court further stated that Everest's expert affidavit was almost silent on what constituted "proper research", "failing to handle the prosecution of the Litigation with prompt diligence and in an expeditious manner so that the client's interests were not impaired", "failing to pursue necessary discovery", "failing to provide Everest with truthful and candid legal advice", and "deceiving Everest regarding the readiness of the case for trial". The District Court also struck from the record the submission by Porter Wright and Cathey of the untimely expert opinions.

***Summary Judgment following Failure to Timely Disclose Experts***

43.     On July 10, 2020 the District Court heard a motion for summary judgment on the remaining claims.  The court granted the motion for summary judgment.   For its Order the District Court repeatedly tied the failure of the expert affidavit to the failure of the claims as the District Court had determined that these claims needed expert opinion to prove the claims.  The District Court refused to consider the expert opinions because of the late disclosure of those opinions and found that the original expert affidavit was deficient in any event.

44.     The entirety of the claims brought by Everest were dismissed in these two orders by the District Court because of the failure to disclose the expert opinions timely as required by Court Order and because the expert affidavit was fundamentally deficient.

45.     Everest appealed the District Court's decisions to the Minnesota Court of Appeals. The Minnesota Court of Appeals affirmed the District Court finding that, among other things, expert testimony was required to bring forth viable claims.  (Everest v. F&M Court File No.  A20-1514)

46.     As the expert affidavit was fundamentally deficient the Court of Appeals affirmed the District Court's refusal to grant the safe harbor request.  The untimely and deficient expert reports doomed the underlying claims of Everest.

**II.     Dorsey & Whitney and George Eck Litigation**

47.     The Dorsey law firm and attorney Eck undertook representation of Nielsen in various lawsuits between October 2010 through June 2011. Those lawsuits are set forth in the Complaint brought through Cathey and Porter Wright on behalf of Nielsen against Dorsey and Eck. (See First Amended Complaint, Exhibit B)

48.    The claims brought by Dorsey and Eck were universally dismissed as futile. Repeatedly, the claims were dismissed as futile, without merit, moot or fundamentally lacking in factual or legal support or both.  One claim was dismissed because it contained only threadbare recitals of the cause of action.  Another claim was dismissed because no effort had been made to move the matter forward for a hearing in timely basis so the matter was moot.

49.    In the Mandamus action that was dismissed as moot, the Defendants in that matter sought sanctions against Dorsey, Eck and Nielsen.  The Court threatened Eck with sanctions.  Eck and Dorsey then withdrew.  Dorsey  and Eck then paid certain settlement amounts to Grant Township, and the Court eventually denied the motion for sanctions against Nielsen determining that those sanctions were appropriate only against Nielsen's attorneys.

Underlying Hennepin County Action

50.    On October 12, 2012, Stephen Bohnen commenced an action in Hennepin County against Nielsen, Eck, Dorsey, and F&M (the "Hennepin County Action"). Bohnen alleged that the lawsuits brought by Dorsey and Eck against him were intended to harass and intimidate him.  Keith Mueller commenced a similar action against Nielsen in approximately 2012.

51.    Although the Court granted summary judgment in favor of Dorsey, Eck, Pahl, and F&M, the claims against Nielsen in the Hennepin County Action remained.    While it is the understanding of Nielsen that Dorsey and/or Eck paid a substantial settlement to Bohnen to resolve the matter, Nielsen was left unprotected by Dorsey and Eck forcing Nielsen to settle with Bohnen in November of 2015.  Neither Dorsey nor Eck ever advised Nielsen of the potential claims that either Bohnen or Mueller could bring against him.   Nielsen subsequently settled these matters with payments to Bohnen of $125,000 and payments to Mueller of approximately $140,000. These payments were necessary because of the negligent actions of Dorsey and Eck.

11

**<u>Porter Wright and Cathey Representation of Nielsen in the Dorsey & Whitney
and Eck Litigation</u>**

52.    Nielsen retained Porter Wright and Cathey to represent himself individually regarding claims of malpractice against Dorsey and Eck.

53.    Porter Wright and Cathey commenced action in Hennepin County, Minnesota on behalf of Nielsen on October 27, 2016 against Dorsey and Eck claiming professional malpractice/negligence, breach of contract, breach of fiduciary duty, fraud, and violations of Minn. Stat. §481.07, and Minn. Stat. §481.071.

54.    On July 17, 2017 Cathey and Porter Wright provided an Affidavit of Expert Identification identifying expert Paul D. Friedman, P.C. as Plaintiffs' expert.

55.    On November 29, 2017 a motion was brought before the Court to amend the Complaint.  The Court pursuant to its Order dated November 30, 2017 granted Porter Wright and Cathey's request to amend the Complaint to add a negligence claim but denied the request at the time to add additional claims sought for abuse of process and claims against Peter Lancaster specifically for abuse of process, breach of contract, fraud and Minn. Stat. §481.07 violations.

56.    On December 12, 2017 Porter Wright and Cathey amended the Complaint on behalf of Nielsen.  The First Amended Complaint in that matter is attached as <u>Exhibit B</u>.

57.    In the Dorsey and Eck matter, once again Porter Wright and Cathey obtained an expert to provide testimony as required by Minn. Stat. § 544.42.

58.    On January 19, 2018 the Court issued its Scheduling Order outlining dates and deadlines, including the expert disclosures.  Plaintiff's complete disclosures including opinions and reports was due by June 1, 2018 and Defendants was due by August 1, 2018.

59.    Upon the Stipulation of the parties, the Court amended the Scheduling Order on July 19, 2018 and again on October 19, 2018 to extend certain dates and deadlines, however the deadlines for expert submissions was not stipulated to or extended by the Court.

60.    Dorsey and Eck noticed a motion on February 4, 2019 and amended the notice on February 21, 2019 moving the court to grant them summary judgment and dismiss this matter based upon the failures contained within the Plaintiff's expert affidavit.

61.    On April 30, 2019 the Court in its Order granted Porter Wright and Cathey's motion to withdraw as counsel for Plaintiff.

62.    The District Court heard Dorsey and Eck's motion on July 25, 2019 and determined that the claims of Nielsen were barred by the repeated failures and deficiencies of the expert affidavit.   The District Court delineated those failures in its Order dated October 18, 2019

63.    The *Nielsen v. Dorsey & Whitney, et al.* case was scheduled for trial in October 2021 which included a counterclaim for attorney fees made futile by Dorsey and Eck's malpractice and Nielsen's remaining claim for recovery of certain paid attorneys' fees.   Dorsey brought the Counterclaim against Nielsen, adding his wife, Susan Nielsen, despite having no agreement with Ms. Nielsen.   Dorsey had never invoiced Nielsen for the remedial efforts to head off malpractice claims until Nielsen's claims were filed.

64.    After the Court of Appeals decision on Porter Wright and Cathey's recurring expert disclosures failures, including causation, and the safe harbor arguments in the *Everest vs Foley & Mansfield* referenced above, Nielsen determined that appealing the issues were futile Accordingly, Nielsen proceeded forward to settle the Dorsey and Eck case.

III. <u>**William Rambicure, Jr., Rambicure Law Group, PSC, and Miller & Wells Litigation**</u>

65.      Everest retained Porter Wright and Cathey to represent it regarding claims of malpractice against Rambicure.

<u>Underlying Rambicure Litigation Matter</u>

66.      Everest hired William Rambicure, Jr. and the Rambicure Law Group, PSC, (collectively, "Rambicure") to draft a contract that would protect Everest during its sale reduction of its equine assets that were being cared for by Crestwood Farm Bloodstock, LLC ("Crestwood").

67.      According to Rambicure, the contract established a fiduciary relationship between Everest and Crestwood to protect Everest during the sale process. However, the Federal Court later determined that the contract failed to establish such relationship, and Everest lost significant assets.

68.      Rambicure also provided advice to Everest based on the contract, stating that Everest could set a reserve price on its horses to protect their value without breaching their contract or incurring damages. However, this advice was incorrect, resulting in loss of claims by Everest and significant damages.

<u>**Representation of Porter Wright and Cathey in Rambicure Litigation Matter**</u>

69.      Porter Wright and Cathey commenced the action in the Western U.S. District Court of Kentucky on July 1, 2015 and subsequently sought to amend the Complaint on July 16, 2015 bringing claims for professional malpractice/negligence (Rambicure), negligent misrepresentation (Rambicure), breach of fiduciary duty (Rambicure) breach of contract (Rambicure), and breach of contract (Miller Wells).

70.      On December 7, 2017 Porter Wright and Cathey amended the Complaint a second time following the Court's Order granting the amendment adding claims for fraud (Miller Wells), Fraud (Zurich), Conspiracy to Commit fraud (Zurich), negligent misrepresentation (Miller Wells),

negligent misrepresentation (Zurich), and bad faith (Zurich).  See Second Amended Complaint attached hereto as Exhibit C.

71.     The additional claims added by Porter Wright and Cathey in the Rambicure matter were without substantial legal or factual support.   Porter Wright and Cathey pursued these claims for the massive fees that resulted from these additional claims, despite these additional claims lacking any factual or legal support.   Incredibly, these claims were the same type of futile and legally flawed claims for which Porter Wright and Cathey had sued on behalf of Everest against Dorsey and Eck.

72.     These additional claims were subsequently ridiculed by the Court in its decision to dismiss the claims Porter Wright and Cathey had filed against Rambicure.

73.     In Rambicure, Cathey and Porter Wright failed to conduct the necessary discovery once again.   They failed to take depositions of the Defendant or third parties.

74.     Cathey and Porter Wright failed to obtain necessary expert opinions, and necessary legal support to sustain the legal viability of the claims.

75.     Cathey and Porter Wright failed to obtain the necessary valuation including the complete history of the horse involved in the litigation and at the hearing before the Court, Cathey claimed to have no knowledge about the horse's whereabouts, and its complete racing and breeding history, which were the essential components for claims he had filed and the damages he had claimed.  Cathey never advised Nielsen that he had no intent to obtain a valuation report, a report whose need was critical for the Court at the hearing and in its decision-making.

76.     Cathey and Porter Wright made a series of misrepresentations to Nielsen regarding the preparation of the case, the merits of the claims, the preparation of expert opinions, and other matters related to the litigation merits.

77.     At the hearing for summary judgment in the underlying matter, the Court raised additional new issues sua sponte.   Cathey and Porter Wright failed to answer those questions and failed to supplement the record to fully address those questions and issues.

78.     The Rambicure case was appealed to the Sixth Circuit.   It affirmed in part and reversed in part, leaving one issue to be decided through trial.

79.     This case was set for trial on January 12, 2021 but was cancelled due to the General Order of 20-25 issued as a result of the Covid 19 Pandemic.

80.     The Court, based on the parties request, has supplemented the deadlines for expert disclosures of the parties.  Plaintiff's supplemental expert disclosures were due on or before March 26, 2021 and Defendants rebuttal disclosures were due on or before May 26, 2021.

81.     The Court has not rescheduled this trial to date.

## DEFENDANTS' DUTIES TO THEIR CLIENT

82.     Under Rule 1.1 of the Minnesota Rules of Professional Conduct, an attorney has a duty to provide competent representation to his client.  This duty includes, among other things, inquiry into the analysis of the factual and legal elements of the claims in a case.

83.     Rule 1.3 of the Minnesota Rules of Professional Conduct requires an attorney to "act with reasonable diligence and promptness in representing a client".  As the Comment to Rule 1.3 notes, "Perhaps no professional shortcoming is more widely resented than procrastination.  A client's interests often can be adversely affected by the passage of time or the change of conditions."  In addition to acting with reasonable diligence and promptness, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client".  *See* Rule 3.2 of the Minnesota Rules of Professional Conduct.

16

84.    Rule 1.4 of the Minnesota Rules of Professional Conduct requires an attorney to "reasonably consult with the client about the means by which the client's objectives are to be accomplished…keep the client reasonably informed about the status of the matter… [and] shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

85.    Rule 2.1 of the Minnesota Rules of Professional Conduct requires a lawyer to "exercise independent professional judgment and render <u>candid</u> advice." (emphasis added).  As the Comment to Rule 2.1 notes, "A client is entitled to straightforward advice expressing the lawyer's honest assessment."

86.    Rule 3.1 of the Minnesota Rules of Professional Conduct mandates that "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."  This rule implies "a duty not to abuse legal procedure."  *See* Comment to Rule 3.1.  Further, a lawyer has a duty to "inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions."  *See id.*

## COUNT I
### Everest - Professional Malpractice/Negligence

87.    Everest restates paragraphs 1 through 86 above as if fully rewritten herein.

88.    At all times relevant to this action, Porter Wright and Cathey formed an attorney-client relationship with Everest to commence litigation against F&M and Pahl as it related then to malpractice and related claims in the *Crestwood Litigation*, *Canani Litigation* and *Rambicure Litigation* that Defendants commenced on Everest's behalf.

17

89.    Defendants Cathey and Porter Wright breached their legal and professional duties to Everest for several reasons, including:

- Failing to handle the representation of Everest as described above in a competent manner;

- Failing to engage in necessary discovery to obtain necessary documents, information and materials along with depositions relevant to the claims

- Failing to conduct proper research in the Litigation;

- Failing to handle the prosecution of the Litigation with prompt diligence and in an expeditious manner so that the client's interests were not impaired;

- Failing to name and disclose expert testimony needed to establish Everest's claims and damages in a timely fashion;

- Failing to provide the required expert affidavits that would comply with the requirements to maintain the malpractice claim;

- Failing to provide Everest with truthful and candid legal advice and deliberately deceiving Everest regarding the readiness of the expert opinions and expert affidavits.

- Defendants' repeated failures caused Everest to incur substantial attorney's fees and expenses, along with substantial expert fees and costs.

90.    The foregoing acts described above fell below the applicable standard of care for a Minnesota attorney and directly and proximately caused Everest damages in an amount in excess of $75,000.00, the exact amount to be proven at trial, together with attorney's fees, interest and costs.

91.    Everest incurred significant attorney fees and costs which were paid to Porter Wright.

92.    As a direct and proximate result of Defendants' numerous breaches and acts of negligence and malpractice, these attorney's fees and costs, along with substantial expert fees and costs, paid by Everest are recoverable in this action.

93.    As a direct and proximate result of Defendants' actions, Everest has been damaged in an amount in excess of $75,000.00 the exact amount to be proven at trial, together with attorney fees, interests and costs.

## COUNT II
### Nielsen - Professional Malpractice/Negligence

94.    Nielsen restates paragraphs 1 through 93 above as if fully rewritten herein.

95.    At all times relevant to this action, Porter Wright and Cathey formed an attorney-client relationship with Nielsen to commence litigation against Dorsey and Eck as it related then to malpractice and related claims that Defendants commenced on Nielsen's behalf.

96.    Defendants Cathey and Porter Wright breached their legal and professional duties to Nielsen for several reasons, including:

- Failing to handle the representation of Nielsen as described above in a competent manner;

- Failing to engage in necessary discovery to obtain necessary documents, information and materials along with depositions relevant to the claims;

- Failing to conduct proper research in the Litigation;

- Failing to handle the prosecution of the Litigation with prompt diligence and in an expeditious manner so that the client's interests were not impaired;

- Failing to name and disclose expert testimony needed to establish Nielsen's claims and damages in a timely fashion;

- Failing to provide the required expert affidavits that would comply with the requirements to maintain the malpractice claim;

- Failing to provide Nielsen with truthful and candid legal advice and deliberately deceiving Everest regarding the readiness of the expert opinions and expert affidavits;

- Defendants' repeated failures caused Nielsen to incur substantial attorney's fees and expenses, along with substantial expert fees and costs.

97.    The foregoing acts described above fell below the applicable standard of care for a Minnesota attorney and directly and proximately caused Nielsen damages in an amount in excess of $75,000.00, the exact amount to be proven at trial, together with attorney's fees, interest and costs.

98.    Nielsen incurred significant attorney fees and costs which were paid to Porter Wright.

99.    As a direct and proximate result of Defendants' numerous breaches and acts of negligence and malpractice, these attorney fees and costs, along with substantial expert fees and costs, are recoverable in this action.

100.    As a direct and proximate result of Defendants' actions, Nielsen has been damaged in an amount in excess of $75,000.00, the exact amount to be proven at trial, together with attorney fees, interests and costs.

### COUNT III
### Everest - Breach of Contract

101.    Everest restates paragraphs 1 through 100 above as if fully rewritten herein.

102.    Defendants Cathey and Porter Wright and Everest entered into a binding contract for legal services related to the legal malpractice claims   against F&M and Pahl.

103.    Defendants Cathey and Porter Wright have an implied contractual duty to perform their legal services in good faith and to deal fairly with Everest as their client.

104.    Defendants Cathey and Porter Wright also have a legal duty to perform their legal services to Everest in a competent and professional manner.

105.    Defendants Cathey and Porter Wright materially breached their contact with Everest, by, among other things, engaging in conduct described in the foregoing paragraphs, including, without limitation, the following:

20

- Failing to handle the representation of Everest as described above in a competent manner;

- Failing to engage in necessary discovery to obtain necessary documents, information and materials along with depositions relevant to the claims;

- Failing to conduct proper research in the Litigation;

- Failing to handle the prosecution of the Litigation with prompt diligence and in an expeditious manner so that the client's interests were not impaired;

- Failing to name and disclose expert testimony needed to establish Everest's claims and damages in a timely fashion;

- Failing to provide the required expert affidavits that would comply with the requirements to maintain the malpractice claim;

- Failing to provide Everest with truthful and candid legal advice and deliberately deceiving Everest regarding the readiness of the expert opinions and expert affidavits.

- Defendants' repeated failures caused Everest to incur substantial attorney's fees and expenses, along with substantial expert fees and costs.

106.    As a direct and proximate result of Defendants' actions, Everest has been damaged in an amount in excess of $75,000.00, the exact amount to be proven at trial, together with attorney's fees, interests and costs.

## <u>COUNT IV</u>
## Nielsen - Breach of Contract

107.    Nielsen restates paragraphs 1 through 106 above as if fully rewritten herein.

108.    Defendants Cathey and Porter Wright and Nielsen entered into a binding contract for legal services related to the Dorsey and Eck case.

109.    Defendants Cathey and Porter Wright have an implied contractual duty to perform their legal services in good faith and to deal fairly with Nielsen as their client.

110.    Defendants Cathey and Porter Wright also have a legal duty to perform their legal services to Nielsen in a competent and professional manner.

111.    Defendants Cathey and Porter Wright materially breached their contact with Nielsen, by, among other things, engaging in conduct described in the foregoing paragraphs, including, without limitation, the following:

- Failing to handle the representation of Everest as described above in a competent manner;

- Failing to engage in necessary discovery to obtain necessary documents, information and materials along with depositions relevant to the claims

- Failing to conduct proper research in the Litigation;

- Failing to handle the prosecution of the Litigation with prompt diligence and in an expeditious manner so that the client's interests were not impaired;

- Failing to name and disclose expert testimony needed to establish Everest's claims and damages in a timely fashion;

- Failing to provide the required expert affidavits that would comply with the requirements to maintain the malpractice claim;

- Failing to provide Everest with truthful and candid legal advice and deceiving Everest regarding the readiness of the expert opinions and expert affidavits.

- Defendants' repeated failures caused Everest to incur substantial attorney's fees and expenses, along with substantial expert fees and costs.

112.    Defendants' repeated failures caused Nielsen to incur substantial attorney's fees and expenses, along with substantial expert fees and costs.

113.    As a direct and proximate result of Defendants' actions, Nielsen has been damaged in an amount in excess of $75,000.00, the exact amount to be proven at trial, together with attorney's fees, interests and costs.

## **COUNT V**
### **Everest - Breach of Fiduciary Duty**

114.    Everest restates paragraphs 1 through 113 as if fully rewritten herein.

22

115.    Under Minnesota law, an attorney is under a legal duty to represent the client with undivided loyalty, to preserve client confidences, and disclose any material matters bearing upon the representation of these obligations.  Further, an attorney must impart to the client any information the attorney has that affects the client's interests.

116.    Defendants breached their fiduciary duty to Everest by, among other things:

- failing to handle the representation of Everest in the various matters as described above in a competent manner;

- failing to advise Everest on the legal viability of potential claims;

- failing to properly name and disclose adequate expert witnesses and opinions;

- filing claims on Everest's behalf that were groundless;

- pursuing claims that had no legal basis solely to generate legal fees.

- Failing to engage in necessary discovery to obtain necessary documents, information and materials along with depositions relevant to the claims.

- Failing to conduct proper research in the Litigation.

- Failing to handle the prosecution of the Litigation with prompt diligence and in an expeditious manner so that the client's interests were not impaired.

- Failing to provide the required expert affidavits that would comply with the requirements to maintain the malpractice claim.

- Failing to provide Everest with truthful and candid legal advice and deliberately deceiving Everest regarding the readiness of the expert opinions and expert affidavits.

117.    Defendants' repeated failures caused Everest to incur substantial attorney's fees and expenses, along with substantial expert fees and costs.

118.    As a direct and proximate result of Defendants' breaches of fiduciary duties, Everest has been damaged, including the payments of attorney's fees and expenses, along with substantial expert fees and costs.  Everest has been damaged in an amount in excess of $75,000.00.

### COUNT VI
### Nielsen – Breach of Fiduciary Duty

119.    Nielsen restates paragraphs 1 through 118 as if fully rewritten herein.

120.    Under Minnesota law, an attorney is under a legal duty to represent the client with undivided loyalty, to preserve client confidences, and disclose any material matters bearing upon the representation of these obligations.    Further, an attorney must impart to the client any information the attorney has that affects the client's interests.

121.    Defendants breached their fiduciary duty to Nielsen by, among other things:

- failing to handle the representation of Nielsen in the various matters as described above in a competent manner;

- failing to advise Nielsen on the legal viability of potential claims;

- failing to properly name and disclose adequate expert witnesses and opinions;

- filing claims on Nielsen's behalf that were groundless;

- pursuing claims that had no legal basis solely to generate legal fees;

- failing to prosecute in an expeditious manner so that the client's interests were not impaired.

- Failing to engage in necessary discovery to obtain necessary documents, information and materials along with depositions relevant to the claims.

- Failing to conduct proper research in the Litigation.

- Failing to handle the prosecution of the Litigation with prompt diligence and in an expeditious manner so that the client's interests were not impaired.

- Failing to provide the required expert affidavits that would comply with the requirements to maintain the malpractice claim.

- Failing to provide Everest with truthful and candid legal advice and deliberately deceiving Everest regarding the readiness of the expert opinions and expert affidavits.

122.    Defendants' repeated failures caused Nielsen to incur substantial attorney's fees and expenses along with substantial expert fees and costs.

123.    As a direct and proximate result of Defendants' breaches of fiduciary duties, Nielsen has been damaged, including the payments of attorney's fees and expenses and other costs, in an amount in excess of $75,000.

<u>**COUNT VII**</u>
**Everest - Fraud/ Misrepresentation**

124.    Everest restates paragraphs 1 through 123 as if fully rewritten herein.

125.    Cathey and Porter Wright representations to Nielsen about Cathey's experience in handling legal malpractice cases was inaccurate and misleading.   Cathey had repeated conversations and communications with Nielsen about the timeliness of filings and the readiness of the necessary filings and information surrounding the expert disclosures, necessary affidavits, and other expert opinions necessary to move forward with the case.   These representations were false and inaccurate when they were made and were made with the intent that Nielsen and Everest would rely upon these statements to their detriment.   This included Cathey's statements that he would assume responsibilities regarding the expert issues and the failures to properly disclose expert opinions and adequacy of the expert reports.   Cathey and Porter Wright represented that they knew and understood what was necessary to be filed under Minnesota law for a legal malpractice claim and that they had fully covered all of these requirements for Everest as a part of preparing and submitting the required disclosures.

**These statements were false.**

126.    Everest relied upon these representations of Cathey and Porter Wright to its detriment.

127.    Everest's reliance upon these statements and representations were reasonable and foreseeable.

128.    As a direct and proximate result of Cathey and Porter Wright's fraud, Everest has been damaged in an amount in excess of $75,000, the exact amount to be proven at trial.

<u>**COUNT VIII**</u>
**Nielsen - Fraud**

129.    Nielsen restates paragraphs 1 through 128 above as if fully rewritten herein.

130.    Cathey and Porter Wright representations to Nielsen about Cathey's experience in handling legal malpractice cases was inaccurate and misleading.   Cathey had repeated conversations and communications with Nielsen about the timeliness of filings and the readiness of the necessary filings and information surrounding the expert disclosures, necessary affidavits, and other expert opinions necessary to move forward with the case.   This included Cathey's statements that he would assume responsibilities regarding the expert issues and the adequacy of the expert reports.    Cathey and Porter & Wright represented that they knew and understood what was necessary to be filed under Minnesota law for a legal malpractice claim and that they had fully covered all of these requirements for Everest as a part of preparing and submitting the required disclosures.

**These statements were false.**

131.    Nielsen relied upon these representations of Cathey and Porter Wright to its detriment.

132.    Nielsen's reliance upon these statements and representations were reasonable and foreseeable.

133.    As a direct and proximate result of Cathey and Porter Wright's fraud, Nielsen has been damaged in an amount in excess of $75,000.00, the exact amount to be proven at trial.

## COUNT IX
### Everest - MINN. STAT. § 481.07

134.    Everest restates paragraphs 1 through 133 above as if fully rewritten herein.

135.    Minnesota Statute § 481.07, which provides for penalties for attorney deceit or collusion, states that:

> An attorney who, with intent to deceive a court or a party to an action or judicial proceeding, is guilty of or consents to any deceit or collusion, shall be guilty of a misdemeanor; and, in addition to the punishment prescribed therefor, the attorney shall be liable to the party injured in treble damages. If the attorney permit any person other than a general law partner to begin, prosecute, or defend an action or proceeding in the attorney's name, the attorney giving such permission, and every person so using the name, shall forfeit $50 to the party against whom the action or proceeding is prosecuted or defended, recoverable in a civil action.

136.    Defendants Cathey and Porter Wright intended to deceive Everest and did so deceive him, by making numerous false representations to him as described in the foregoing paragraphs.

137.    As a direct and proximate result of Defendants' deceitful actions, Everest is entitled to treble damages pursuant to Minn. Stat. § 481.07 in an amount to be determined at trial.

## COUNT X
### Nielsen - MINN. STAT. § 481.07

138.    Nielsen restates paragraphs 1 through 137 above as if fully rewritten herein.

139.    Minnesota Statute § 481.07, which provides for penalties for attorney deceit or collusion, states that:

> An attorney who, with intent to deceive a court or a party to an action or judicial proceeding, is guilty of or consents to any deceit or collusion, shall be guilty of a misdemeanor; and, in addition to the punishment prescribed therefor, the attorney shall be liable to the party injured in treble damages. If the attorney permit any person other than a general law partner to begin, prosecute, or defend an action or proceeding in the attorney's name, the

> attorney giving such permission, and every person so using the name, shall
> forfeit $50 to the party against whom the action or proceeding is prosecuted
> or defended, recoverable in a civil action.

140.    Defendants Cathey and Porter Wright intended to deceive Nielsen and did so deceive him, by making numerous false representations to him as described in the foregoing paragraphs.

141.    As a direct and proximate result of Defendants' deceitful actions, Nielsen is entitled to treble damages pursuant to Minn. Stat. § 481.07 in an amount to be determined at trial.


## COUNT XI
### Everest - MINN. STAT. § 481.071

142.    Everest restates paragraphs 1 through 141 above as if fully rewritten herein.

143.    Minnesota Statute § 481.071, which provides for treble damages for attorney misconduct, states that:

> Every attorney or counselor at law who shall be guilty of any deceit or
> collusion, or shall consent thereto, with intent to deceive the court or any
> party, or who shall delay the attorney's client's suit with a view to the
> attorney's own gain, shall be guilty of a misdemeanor and, in addition to
> the punishment prescribed by law therefor, shall forfeit to the party injured
> treble damages, to be recovered in a civil action.

144.    Defendants Cathey and Porter Wright intended to deceive Everest and did so deceive him, by making numerous false representations to him as described in the foregoing paragraphs.

145.    As a direct and proximate result of Defendants' actions in violation of Minn. Stat. § 481.071, Everest is entitled to treble damages pursuant to Minn. Stat. § 481.071 in an amount to be determined at trial.

## COUNT XII
### Nielsen - MINN. STAT. § 481.071

146.    Nielsen restates paragraphs 1 through 145 above as if fully rewritten herein.

147.    Minnesota Statute § 481.071, which provides for treble damages for attorney misconduct, states that:

> Every attorney or counselor at law who shall be guilty of any deceit or collusion, or shall consent thereto, with intent to deceive the court or any party, or who shall delay the attorney's client's suit with a view to the attorney's own gain, shall be guilty of a misdemeanor and, in addition to the punishment prescribed by law therefor, shall forfeit to the party injured treble damages, to be recovered in a civil action.

148.    Defendants Cathey and Porter Wright intended to deceive Nielsen and did so deceive him, by making numerous false representations to him as described in the foregoing paragraphs.

149.    As a direct and proximate result of Defendants' actions in violation of Minn. Stat. § 481.071, Nielsen is entitled to treble damages pursuant to Minn. Stat. § 481.071 in an amount to be determined at trial.

### JURY DEMAND

PLAINTIFFS HEREBY REQUEST A JURY TRIAL OF ALL CLAIMS IN THIS ACTION PURSUANT TO RULE 38 OF THE MINNESOTA RULES OF CIVIL PROCEDURE.

WHEREFORE, Nielsen and Everest pray for judgment against the Defendants for the following relief:

a.  Compensatory damages against Defendants Cathey and Porter Wright in an amount in excess of $75,000.00, the exact amount to be proven at trial;

b.  Forfeiture of fees paid to Defendants Cathey and Porter Wright by Everest and by Nielsen related to the claims against Foley & Mansfield, Dorsey & Whitney, and Rambicure;

c.  Treble damages pursuant to Minn. Stat. §§ 481.07 and 481.071; and

d.  Such other relief as the Court deems just and equitable, including interest, costs and attorney's fees.

Dated: October 15, 2021                    HENNINGSON & SNOXELL, LTD.


/s/Mark V. Steffenson
Mark V. Steffenson (#178457)
6900 Wedgwood Road, Suite 200
Maple Grove, MN 55311
Tel: (763) 560-5700
Fax: (763) 560-0119
Email:  msteffenson@hennsnoxlaw.com

ATTORNEY FOR PLAINTIFFS