## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Everest Stables, Inc. and Jeffrey Nielsen,<br><br>Plaintiffs,<br><br>v.<br><br>Porter, Wright, Morris & Arthur LLP and Christopher D. Cathey,<br><br>Defendants. | Court File No.  21-cv-02289-WMW-KMM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

## <u>INTRODUCTION</u>

In this legal malpractice action, Jeffrey Nielsen ("Nielsen") and Everest Stables, Inc. ("Everest") (collectively, "Plaintiffs") allege that Christopher Cathey ("Cathey") and his then-firm, Porter, Wright, Morris & Arthur LLP ("Porter Wright"), committed legal malpractice in connection with three separate legal malpractice actions that Plaintiffs retained Defendants to pursue against their prior counsel—namely, (1) the "Rambicure Suit," (2) the "Dorsey Suit," and (3) the "Foley Suit" (described below).  While the Rambicure Suit involved a transactional matter, the Dorsey and Foley Suits each related to three separate (and unrelated) underlying lawsuits.  In total, then, this legal malpractice action concerns one transactional matter and *nine* separate lawsuits initiated by Plaintiffs.[1]

Though this action sounds in legal malpractice (Counts I-II), Plaintiffs tack on claims for breach of contract (Counts III-IV), breach of fiduciary duty (Counts V-VI), fraud

---

[1]    This lawsuit is Plaintiffs' second against Defendants, having initially commenced suit in early 2021 in Hennepin County District Court before voluntarily dismissing the case.

(Counts VII-VIII), and violations of Minn. Stat. §§ 481.07 and 481.071 (Counts IX-XII). Each claim is time-barred and/or legally deficient. <u>First</u>, the applicable legal malpractice statute of limitations under Ohio law—which applies to the claims pertaining to the Dorsey and Foley Suits via a contractual choice-of-law provision and the Minnesota Uniform Conflict of Laws Limitations Act ("MUCLLA")—bars Plaintiffs' legal malpractice claims relating to those matters, as well as the breach of contract, breach of fiduciary duty and fraud claims that are indisputably premised on the same underlying allegations. <u>Second</u>, Plaintiffs' fraud claims as to all three underlying malpractice suits fail Rule 12(b)(6) and Rule 9(b) scrutiny because the Complaint contains only vague, generic, and non-particularized allegations about the supposed misrepresentations underpinning the claims. <u>Third</u>, the statutory claims provide no independent cause of action and fail without the predicate fraud claims. Dismissing the time-barred and legally deficient claims will dramatically narrow the remaining issues (*i.e.*, the non-fraud and non-statutory claims for the Rambicure Suit), which will facilitate a much-needed end to Plaintiffs' long-lingering litigation campaign.

## FACTUAL BACKGROUND[2]

### A.    THE PARTIES

Nielsen is a Minnesota resident and the owner and Chief Executive Officer of Everest, a thoroughbred horse-breeding and racing company. Compl. ¶¶ 1-2. A person of substantial resources, Nielsen is a self-described "successful entrepreneur." *Id.*, Ex. B ¶ 7.

---

[2]    Defendants do not concede the veracity of any of the Complaint's allegations, which are treated as true only for purposes of this motion.

Everest has owned thoroughbred horses for decades and has described its equine holdings as "substantial." *Id.,* Ex. C ¶ 1.

During the relevant time period, Cathey was a partner in the Cincinnati office of Porter Wright, a law firm with a principal place of business in Columbus, Ohio. *Id.* ¶¶ 3-4. Subsequent to the events described in the Complaint, Cathey relocated to Florida, where he practices in the Fort Lauderdale office of Dickinson Wright PLLC. *Id.* ¶ 3.

Plaintiffs engaged Defendants to represent them in three separate legal malpractice actions against Plaintiffs' prior counsel (*id.* ¶ 6), which are identified and described in the Complaint in reverse chronological order (*id.* ¶¶ 9-11) and chronologically below.

## B. FIRST UNDERLYING LEGAL MALPRACTICE ACTION: THE "RAMBICURE SUIT"

On June 23, 2015, Nielsen, on behalf of Everest, retained Cathey and his then-firm, Roetzel & Andres, LPA, to pursue the first of the three underlying legal malpractice actions (the "Rambicure Suit"), which was filed on July 1, 2015 in the United States District Court for the Western District of Kentucky. Compl. ¶ 69; Asmus Dec. Ex. 1. The named defendants included attorney William C. Rambicure ("Rambicure"), Rambicure Law Group ("RLG"), the Miller & Wells law firm ("Miller Wells"), and Zurich American Insurance Company ("Zurich"). Compl. ¶ 11; Asmus Dec. Ex. 2.[3] The allegations in the Rambicure Suit focused on allegedly deficient legal advice Rambicure provided to Nielsen in connection with Everest's effort to reduce its equine holdings pursuant to a November

---

[3]    According to the Second Amended Complaint in the Rambicure Suit, a copy of which is attached to the Complaint herein as Exhibit C, Rambicure is a Kentucky citizen, and both RLG and Miller Wells are Kentucky entities. Dkt. 1-1 at pp. 190-91 ¶¶ 2, 5-7.

4, 2008 Purchase and Sale Agreement drafted by Rambicure.[4] *Id.* ¶¶ 66-68.[5]  After filing the Rambicure Suit, Cathey moved to Porter Wright, and the firm became counsel of record for Everest on July 13, 2015.  Asmus Dec. Ex. 3.

According to Plaintiffs, when prosecuting the Rambicure Suit, Defendants amended the operative complaint to add claims that "were without legal or factual support[]" simply to generate "massive fees."  Compl. ¶¶ 70-71.  Plaintiffs allege that the court "ridiculed" these "additional claims" in its June 8, 2018 dismissal order. *Id.* ¶¶ 71-72; Asmus Dec. Ex. 4.  The Sixth Circuit Court of Appeals affirmed in part and reversed in part the lower court's ruling on February 3, 2020, allegedly leaving a single issue to be resolved at trial.  Compl. ¶ 78; *see also Everest Stables, Inc. v. Rambicure*, No. 18-5634, 2020 WL 534059 (6th Cir. Feb. 3, 2020).[6]  During the pendency of the appeal, the oral argument for which was handled by other counsel, Defendants withdrew from representing Everest as of June 12, 2020.  Asmus Dec. Exs. 5-6.

## C.    SECOND UNDERLYING LEGAL MALPRACTICE ACTION: THE "DORSEY SUIT"

In the second of the three underlying legal malpractice actions, on September 28, 2016, Nielsen engaged Cathey and Porter Wright to pursue legal malpractice claims against

---

[4]    The Purchase and Sale Agreement is attached as Exhibit 2 to Exhibit C of the Complaint.  Dkt. 1-1 at pp. 224-238.

[5]    The plan to reduce the equine holdings encompassed over 145 of Everest's thoroughbreds, valued at "millions of dollars."  Dkt. 1-1 at p. 193 ¶ 13.

[6]    The sole issue to be resolved at trial is not apparent on the face of the Sixth Circuit's Order.  There is no indication in the Complaint that the remaining trial issue in the Rambicure Suit relates to Plaintiffs' legal malpractice claims against Defendants herein.

Dorsey & Whitney, LLP ("Dorsey") and Dorsey attorney George G. Eck ("Eck") relating to Eck's purported mishandling of three lawsuits that emanated from multiple spats between Nielsen and various parties related to matters including, but not limited to, Nielsen's objections to the placement of campaign signs in his neighborhood, as well as his "self-help" measures that resulted in his receipt of theft and disorderly conduct citations (the "Dorsey Suit"). The engagement agreement that Nielsen executed with Porter Wright for the Dorsey Suit ("Engagement Agreement") includes the following "scope of engagement" provision:

> We have been engaged to provide legal advice to the Client in connection with Dorsey & Whitney LLP and George Eck. While this letter is intended to apply to the legal services described above, *it will also apply to any additional legal services outside the initial scope of our representation and that the Client requests and that we agree to provide*.

Asmus Dec. Ex. 7 (emphasis added). The Engagement Agreement also includes the following "choice of law" provision:

> *The relationship between the Client and the Firm*, including the validity, construction, and enforceability of this engagement letter, *shall be governed in all respects by the law and professional conduct rules of the State of Ohio*, without regard to conflicts of laws principles.

*Id.* (emphasis added).

The Dorsey Suit was commenced on October 27, 2016 in Hennepin County District Court. Compl. ¶ 53; Asmus Dec. Ex. 8. The gravamen of Nielsen's legal malpractice allegations regarding the Dorsey Suit is that Defendants' alleged failure to submit an adequate Minn. Stat. § 544.42 expert affidavit resulted in his claims against Dorsey and Eck being dismissed. Compl. ¶¶ 57, 62. The operative order in the Dorsey Suit was entered

on October 18, 2019 (*id.* ¶ 62), nearly six months after Cathey and Porter Wright's motion to withdraw as counsel for Nielsen in the Dorsey Suit was granted (*id*. ¶ 61).[7]

## D. THIRD UNDERLYING LEGAL MALPRACTICE ACTION: THE "FOLEY SUIT"

In the third-filed of the three underlying malpractice actions, Everest retained Porter Wright and Cathey to pursue legal malpractice claims against Foley & Mansfield, PLLP ("Foley") and Foley attorney Thomas W. Pahl ("Pahl"), as a result of Pahl's alleged mishandling of "three separate pieces of litigation" against parties with whom Everest and Nielsen had conducted business (the "Foley Suit"). Compl. ¶ 9; Asmus Dec. Ex. 9. Defendants were engaged by Nielsen, as sole owner and Chief Executive Officer of Everest, to prosecute the Foley Suit. The Foley Suit engagement was entered into under the "additional legal services outside the initial scope of…representation" provision in the Engagement Agreement. Asmus Dec. Ex. 7.

The Foley Suit was commenced on August 1, 2017 in Hennepin County District Court. Compl. ¶ 25. Like the allegations underlying the legal malpractice claims regarding the Dorsey Suit, Plaintiffs' claim here is that Defendants' failure to timely provide an adequate Minn. Stat. § 544.42 expert affidavit resulted in Everest's claims against Foley and Pahl being dismissed. *Id*. ¶ 42. The court in the Foley Suit issued its order detailing its § 544.42-related conclusions on September 9, 2019 (Asmus Dec. Ex. 9, Dkt. 85), which

---

[7]     Court records identify the date of Porter Wright's withdrawal as counsel for Nielsen date as May 7, 2019. Asmus Dec. Ex. 8, Dkt. 155. Nielsen secured replacement counsel less than a month later. *Id.*, Dkt. 160.

was more than four months after Defendants' April 25, 2019 withdrawal as counsel for Everest in that suit (Compl. ¶ 39).[8]

## PROCEDURAL BACKGROUND

On January 29, 2021, Plaintiffs sued Defendants in Hennepin County District Court, asserting claims for legal malpractice, breach of contract, fraud and violations of Minn. Stat. §§ 481.07 and 481.071 relating to the Foley and Dorsey Suits.  Asmus Dec. Ex. 10. Plaintiffs' Complaint omitted any reference to the Rambicure Suit.  *Id.*  On February 26, 2021, the parties entered into a tolling agreement pursuant to which Plaintiffs voluntarily dismissed the Hennepin County suit.  Asmus Dec. Exs. 11-12.  On September 13, 2021, Plaintiffs provided notice of their termination of the tolling agreement. Asmus Dec. Ex. 13.

Plaintiffs commenced this action on October 15, 2021. The instant Complaint is similar to the Hennepin County Complaint in that it includes allegations regarding the Foley and Dorsey Suits (Compl. ¶¶ 14-64) and the previously-dismissed claims for legal malpractice, breach of contract, fraud and Minn. Stat. §§ 481.07 and 481.071 violations (*id*. ¶¶ 87-113, 124-149).  But, the instant Complaint also adds allegations pertaining to the Rambicure Suit (*id*. ¶¶ 65-81), and breach of fiduciary duty claims (*id*. ¶¶ 114-123).

---

[8]     Plaintiffs allege that Porter Wright withdrew from representing Everest in the Foley Suit on April 25, 2019, but court records identify the withdrawal date as May 7, 2019. Asmus Dec. Ex. 9, Dkt. 82. Everest secured replacement counsel less than a month later. *Id.*, Dkt. 83.

# ARGUMENT

## I.    MOTION TO DISMISS STANDARD

A complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Any complaint failing to meet this fundamental requirement should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must allege facts that, accepted as true, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citations omitted). Legal conclusions in a complaint must be supported by factual allegations. *Id.* at 664.

"Though matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Serv.*, 858 F.3d 520, 526 (8th Cir. 2017) (citing *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (internal punctuation modified)); *see also Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to

judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is not questioned") (quoting 5B Wright & Miller, Fed. Prac. & Proc. § 1357 (3d ed. 2004)).

## II.    PLAINTIFFS' CLAIMS REGARDING THE DORSEY AND FOLEY SUITS ARE TIME-BARRED

### A.    Ohio law applies to claims regarding the Dorsey and Foley Suits

When determining which state's substantive law applies, federal courts exercising diversity jurisdiction will "look to the choice of law principles of the forum state." *Miller v. Honkamp Krueger Fin. Serv., Inc.*, 9 F.4th 1011, 1016 (8th Cir. 2021); *see also Hall v. St. Jude Medical S.C., Inc.*, 326 F. Supp. 3d 770, 777 (D. Minn. 2018). Minnesota courts "traditionally enforce[] parties' contractual choice of law provisions…[and] have consistently expressed a commitment to the rule 'that the parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern.'" *Hagstrom v. Am. Circuit Breaker Corp.*, 528 N.W.2d 46, 48 (Minn. App. 1994) (citations omitted); *see also St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785, 788 (8th Cir. 2016) ("[U]nder Minnesota law, a contractual choice-of-law provision will govern so long as the parties acted in good faith and without an intent to evade the law"); *Ewald v. Royal Norwegian Embassy,* Civ. No. 11-cv-2116, 2013 WL 2631876, at *8 (D. Minn. June 12, 2013) (same).

The Engagement Agreement, executed in connection with the Dorsey Suit, includes an explicit Ohio choice-of-law provision:

> ***The relationship between the Client and the Firm***, including the validity, construction, and enforceability of this engagement letter, ***shall be governed***

> *in all respects by the law and professional conduct rules of the State of Ohio*, without regard to conflicts of laws principles.

Asmus Dec. Ex. 7 (emphasis added). Although a separate written engagement agreement was not prepared for the subsequently-filed Foley Suit, the Engagement Agreement expressly provides that the terms thereof "will also apply to any additional legal services outside the initial scope of our representation and that the Client requests and that we agree to provide." *Id.* Because the parties expressly agreed that their relationship "shall be governed in *all* respects" by Ohio law, and because a legal malpractice lawsuit strikes at the heart of the attorney-client relationship, Ohio law applies to Plaintiffs' claims against Defendants arising from both the Dorsey and Foley Suits.[9]

### B.    The MUCLLA requires application of Ohio's legal malpractice statute of limitations

Prior to 2004, Minnesota's statute of limitations periods applied to claims properly commenced in the state, even when those claims involved the application of another state's substantive law. *See Fleeger v. Wyeth*, 771 N.W.2d 524, 527 (Minn. 2009). That changed when the Minnesota legislature adopted the Uniform Conflict of Laws-Limitations Act, Minn. Stat. § 541.30 *et seq.* ("MUCLLA"). *Id.* at 528. The MUCLLA provides that "if a claim is substantively based…upon the law of one other state, the limitation period of that

---

[9]    There is no basis for Plaintiffs to assert that inclusion of the Ohio choice-of-law provision in the Engagement Agreement, or its invocation in defense of a legal malpractice lawsuit, constitutes forum shopping or is otherwise suggestive of bad faith. Porter Wright has deep Ohio roots (Compl. ¶ 4) and Cathey practiced in the firm's Cincinnati office during the entirety of his representation of Plaintiffs in the Rambicure, Dorsey and Foley Suits. *Id.* ¶¶ 3-4 and Exs. A-C; *see also* https://www.porterwright.com/about-the-firm/firm-history/ (last visited December 13, 2021).

state applies." *Burks v. Abbott Labs.,* 639 F. Supp. 2d 1006, 1019 (D. Minn. 2009) (quoting

Minn. Stat. § 541.31, subd. 1).[10]   The MUCLLA, however, includes an exception to this

general rule, sometimes referred to as the "escape clause":[11]

> If the court determines that the limitation period of another state applicable
> under section[] 541.31…is substantially different from the limitation period
> of this state and has not afforded a fair opportunity to sue upon, or imposes
> an unfair burden in defending against, the claim, the limitation period of this
> state applies.

Minn. Stat. § 541.33.  Accordingly, the determination of whether the one-year Ohio statute

of limitations should apply to Plaintiffs' legal malpractice claims in the Dorsey and Foley

Suits involves a two-step inquiry.  In the first step, the Court determines whether the

substantive law of Ohio applies.  In the second step, the Court must determine whether

Plaintiffs can avail themselves of § 541.33's "escape clause" by first addressing whether

the competing statutes of limitations periods are substantially different and, if so, whether

the difference deprived Plaintiffs of a "fair opportunity" to pursue their claims.[12]

When conducting this analysis, it bears noting that "the comments to the UCLLA

make clear that the exception should 'rarely be employed,' and only in 'extreme cases.'"

---

[10]    Discussing the MUCLLA, the Eighth Circuit has observed: "By calling for use of
the statute of limitations from the state whose substantive law otherwise governs a claim
and providing an 'unfairness' exception to this general rule, Minnesota has expressed its
governmental interest in terms of fairness rather than expressing strong preference for
home-rule as to periods of limitations."  *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1126 (8th
Cir. 2012).

[11]    *See Burks*, 639 F. Supp. 2d at 1019 (citing MUCLLA § 4, cmt.).

[12]    It is Plaintiffs' burden to prove the escape clause should apply.  This burden cannot
be sustained with general or conclusory allegations.  *See, e.g., Vicknair v. Phelps Dodge
Indus., Inc.,* 794 N.W.2d 746, 753-54 (N.D. 2011) (party urging application of escape
clause bears the burden of proving it, and bald assertions of unfairness are insufficient).

*U.S. Bank Nat'l Assoc. v. Equity Bank*, Civ. No. 12-2023, 2015 WL 12781180, at *4 (D. Minn. Mar. 27, 2015) (citing MUCLLA § 4 cmt). This is not such a case.

### 1. <u>STEP NO. 1</u>: Ohio substantive law applies

As set forth above, Ohio substantive law applies to Plaintiffs' claims against Defendants related to the Dorsey and Foley Suits because of the Engagement Agreement's choice-of-law provision—it is what the parties agreed to. *See supra* § II.A; *see also Perry v. Zurich North Am., Inc.*, No. A10-608, 2011 WL 68525, at *3 (Minn. App. Jan. 11, 2011) ("Respondent argues that the district court correctly concluded that a choice-of-law analysis was unnecessary because the insurance policy…contained a specific choice-of-law provision. We agree").

### 2. <u>STEP NO. 2</u>: The difference in limitations periods in Ohio and Minnesota does not warrant application of the escape clause

Under Ohio law, the legal malpractice statute of limitations is one year. *See* Ohio Rev. Code § 2305.117(a) ("Except as otherwise provided in this section, an action upon a legal malpractice claim against an attorney or a law firm or legal professional association shall be commenced within one year after the cause of action accrued"). The legal malpractice statute of limitations in Minnesota is six years. *See* Minn. Stat. § 541.05(5); *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999). This five-year difference does not warrant rejecting Ohio's limitations period. *See, e.g., Burks*, 639 F. Supp. 2d at 1019 ("[M]ere difference between the prescriptive time period in Minnesota [six years] and Louisiana [one year] does not constitute a 'substantial' difference under the escape clause [*i.e.* Minn. Stat. § 541.33]"); *but see Burks v. Abbott Labs.*, 917 F. Supp. 2d

902, 919 (D. Minn. 2013) (noting that a five-year difference was "substantial," but did not warrant application of escape clause because the difference did not deprive plaintiffs of the opportunity to litigate).

It is Plaintiffs' burden to demonstrate that the one-year Ohio statute of limitations did not provide them with a fair opportunity to litigate their legal malpractice claims against Defendants. *See id.* at 919 ("Plaintiffs seemingly believed the burden was on defendants to establish that the escape clause should not apply, which several courts have held is incorrect") (citing *Vicknair,* 794 N.W.2d at 753). Plaintiffs cannot sustain their burden.

First, Plaintiffs cannot claim to be incapable of or lacking resources to timely initiate legal malpractice action against Defendants. Indeed, this lawsuit is Plaintiffs' tenth attempt to pursue redress for their alleged harm—*i.e.*, (1) the six separate lawsuits from which the Dorsey and Foley Suits emanated, (2) the Dorsey and Foley Suits, (3) Plaintiffs' initial Hennepin County lawsuit against Defendants, and (4) this lawsuit. Second, Plaintiffs have no basis to claim they were unable to timely pursue litigation against Defendants because of the pendency of the Dorsey and Foley Lawsuits. Plaintiffs sued Defendants in Hennepin County while the Dorsey and Foley Lawsuits were still ongoing. At the very least and with minimal burden, Plaintiffs could have sought a tolling agreement with Defendants, which they did not do until after suing Defendants in Hennepin County and before voluntarily dismissing that lawsuit. Third, Defendants' withdrawal as counsel in the Dorsey and Foley Suits did not preclude Plaintiffs from timely bringing claims against Defendants because Plaintiffs retained replacement counsel (Plaintiffs' counsel of record here) less than one month after Defendants withdrew. Finally, the multiplicity of lawsuits was no barrier to

Plaintiffs' ability to timely pursue claims against Defendants; if anything, Plaintiffs' litigation history demonstrates an ability to simultaneously maintain lawsuits without one being a distraction or impediment to the other. The escape clause exists to prevent manifest injustice, not to protect well-resourced litigants accustomed to the demands of litigation.

**C.    Plaintiffs' legal malpractice claims arising from the Dorsey and Foley Suits are time-barred**

As detailed above, Plaintiffs commenced their legal malpractice action against Defendants relating to the Dorsey and Foley Suits on January 29, 2021. *See supra*, Procedural Background. Thus, for Plaintiffs' legal malpractice claims to be timely under Ohio's one-year statute of limitations, the claims must have accrued on or after January 29, 2020. Under Ohio law, a legal malpractice claim accrues at the latter of: (1) a cognizable event whereby the claimant discovers or should have discovered the alleged malpractice, or (2) the attorney-client relationship for the particular transaction terminates. *See Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398 (Ohio 1989).

Regarding what constitutes a "cognizable event" for accrual purposes, "[i]t is not necessary that one understand the full extent of the injury before there is a cognizable event…It is enough that there be some noteworthy event to 'alert a reasonable person that a questionable legal practice may have occurred.'" *Leach-Hanna v. Altier*, 657 N.E.2d 789, 790 (Ohio App. 1995) (citation omitted, punctuation modified). The Ohio Supreme Court has described the "cognizable event" as an incident or occurrence "whereby the client discovers or should have discovered that his injury was related to his attorney's act

or non-act and the client is put on notice of a need to pursue possible remedies against the attorney[.]" *Zimmie v. Calfee, Halter and Griswold*, 538 N.E.2d 398, 401 (Ohio 1989).

With respect to the Dorsey Suit, Plaintiffs allege in their Complaint that "[t]he District Court heard Dorsey and Eck's motion [for summary judgment] on July 25, 2019 and determined that the claims of Nielsen were barred by the repeated failures and deficiencies of the expert affidavit. The District Court delineated those failures in its Order dated October 18, 2019[.]" Compl. ¶ 62. These purported "failures and deficiencies of the expert affidavit" are the heart of Nielsen's malpractice claim related to the Dorsey Suit, and the above-referenced October 18, 2019 order is the event "whereby the client discover[ed] or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue possible remedies against the attorney[.]" *Zimmie*, 538 N.E.2d at 401. This "cognizable event" also occurred nearly six months after Defendants withdrew as counsel in the Dorsey Suit. *See* Compl. ¶ 61 ("On April 30, 2019 the Court in its Order granted Porter Wright and Cathey's motion to withdraw as counsel"). Thus, Plaintiffs' legal malpractice claim relating to the Dorsey Suit accrued no later than October 18, 2019, which means the claims were time-barred as of October 19, 2020, or more than three months *before* Plaintiffs commenced the Hennepin County case. Therefore, Plaintiffs' claims are time-barred as a matter of law and should be dismissed.

With respect to the Foley Suit, Plaintiffs allege in their Complaint that in a September 9, 2019 order, "[t]he District Court granted the F&M's and Pahl's motion for summary judgment with respect to the legal malpractice claims because the expert affidavit

as submitted to the Court by Porter Wright was deficient…[and] The District Court also struck from the record the submission by Porter Wright and Cathey of the untimely expert opinions."  Compl. ¶ 42.  From these allegations, the September 9, 2019 order was the "cognizable event" because Plaintiffs had actual knowledge of the purported basis for their malpractice claims by virtue of the order.  This "cognizable event" also occurred nearly more than four months after Defendants withdrew as counsel in the Foley Suit.  *See* Compl. ¶ 39 ("Porter Wright and Cathey withdrew from representing Everest on April 25, 2019").  Thus, Plaintiffs' legal malpractice claims relating to the Foley Suit accrued no later than September 9, 2019, which means the claims were time-barred as of September 10, 2020, or more than four months *before* Plaintiffs commenced the Hennepin County case.  Therefore, Plaintiffs' claims are time-barred as a matter of law and should be dismissed.

### D.    The one-year Ohio statute of limitations bars all of Plaintiffs' claims regarding the Dorsey and Foley Suits

Ohio law provides that "[a]n action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice…regardless of whether predicated upon contract or tort."  *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 5 F. Supp. 3d 922, 926 (S.D. Ohio 2014) (citations omitted).  As the Ohio Court of Appeals recently explained:

> It does not matter whether the professional misconduct is expressed in terms of breach of contract or tort…When the gist of a complaint sounds in malpractice, the other duplicative claims, even those labeled as fraud and breach of contract, are subsumed within the legal-malpractice claim…Malpractice by any other name still constitutes malpractice.

*Nalluri v. Jones*, No. 19AP-779, 2020 WL 5203223, at *4 (Ohio App. Sep. 1, 2020) (citations omitted; punctuation modified).  While it is true that, under Ohio law, "a litigant may assert claims for, *inter alia*, fraud, breach of contract, and breach of fiduciary duty if the conduct underlying those claims is distinct from the conduct underlying the malpractice claim" (*Waite*, 5 F. Supp. 3d at 926) (citations omitted)), if the claims arise from the manner in which the attorney represented the client, then all claims are subsumed within the legal malpractice claim.  *Id*.  "Malpractice by any other name still constitutes malpractice." *Muir v. Hadler Real Estate Mgm't Co.*, 446 N.E.2d 820, 822 (Ohio App. 1982).

As made clear by the Complaint's allegations, the alleged conduct underlying Plaintiffs' legal malpractice claims relating to the Dorsey and Foley Suits is the same conduct underpinning the breach of contract, breach of fiduciary duty and fraud claims. To support the legal malpractice claims in Counts I-II, Plaintiffs allege that Defendants committed legal malpractice by:

- Failing to handle the representation of [Plaintiffs] as described above in a competent manner;

- Failing to engage in necessary discovery to obtain necessary documents, information and materials along with depositions relevant to the claims;

- Failing to conduct proper research in the Litigation;

- Failing to handle the prosecution of the Litigation with prompt diligence and in an expeditious manner so that the client's interests were not impaired;

- Failing to name and disclose expert testimony needed to establish [Plaintiffs'] claims and damages in a timely fashion;

- Failing to provide the required expert affidavits that would comply with the requirements to maintain the malpractice claim; [and]

- Failing to provide [Plaintiffs] with truthful and candid legal advice and deliberately deceiving [Plaintiffs] regarding the readiness of the expert opinions and expert affidavits.

- Defendants' repeated failures caused [Plaintiffs] to incur substantial attorney's fees and expenses, along with substantial expert fees and costs.

Compl. ¶¶ 89, 96. As set forth below, these are the same allegations upon which Plaintiffs' non-legal malpractice claims are premised.

Breach of Contract. The Complaint repeats verbatim the above-quoted allegations in support of the breach of contract claims in Counts III-IV. *Id*. ¶¶ 105, 111. Thus, like the legal malpractice claims, the breach of contract claims are time-barred by the one-year statute of limitations. *See Chambers v. Cottrell*, No. L-10-1178, 2011 WL 281145, at *2 (Ohio App. Jan. 14, 2011) ("[C]ourts have found that, even where a plaintiff's pleadings frame his arguments against an attorney not as malpractice, but as claims on theories such as breach of contract, misrepresentation, or promissory estoppel, if the gravamen of the complaint is legal malpractice, the one-year statute of limitations will apply") (citations omitted).

Breach of Fiduciary Duty. Plaintiffs repeat all but one of the above-quoted legal malpractice allegations to support their breach of fiduciary duty claims in Counts V-VI. *See* Compl. ¶¶ 116, 121. Thus, the breach of fiduciary duty claims are also time-barred. *See Purushealth, L.L.C. v. Day Ketterer, L.L.P.*, 126 N.E.3d 923, 931 (Ohio App. 2019) ("When the gist of the complaint sounds in malpractice, the other duplicative claims,

even those labeled as fraud and breach of contract, are subsumed within the legal-malpractice claim" for statute of limitations purposes).[13]

Fraud.  While Plaintiffs' fraud claims in Counts VII-VIII do not contain verbatim recitations of the above-quoted legal malpractice allegations, they pertain to the same subject matter—namely, "the timeliness of filings," "information surrounding the expert disclosures, necessary affidavits, and other expert opinions necessary to move forward with the case," and "preparing and submitting the required disclosures." *Id.* ¶¶ 125, 130. Moreover, the fraud allegations focus entirely on the manner in which Defendants purportedly represented Plaintiffs in the Dorsey and Foley Suits. *Id.*  As such, under Ohio law, the fraud claims are duplicative of the legal malpractice claims and must be dismissed as time-barred. *See Nalluri v. Jones*, No. 19AP-779, 2020 WL 5203223, at *6 (Ohio App. Sep. 1, 2020) (affirming trial court's application of Ohio's one-year statute of limitations to dismiss not only plaintiff's legal malpractice claim, but also breach of contract, rescission, unjust enrichment, fraud, negligent misrepresentation, and piercing the corporate veil claims on the grounds that the legal malpractice claim subsumed all other claims, noting that "[t]he well-established guiding precedents mark this sort of complaint as one in malpractice").

---

[13]    The *Purushealth* court also held that "in Ohio, a claim against an attorney acting in his professional capacity is a malpractice claim.  Ohio does not recognize an independent claim for breach of fiduciary duty against an attorney acting in his capacity as attorney and counselor." *Purushealth*, 126 N.E.3d at 931.

### III.   PLAINTIFFS' FRAUD CLAIMS ARE DEFICIENTLY PLED AND FAIL

### A.   <u>Pleading requirements for fraud claims</u>

The initial inquiry is the substantive law to be applied to Plaintiffs' fraud claims in Counts VII and VIII.  The fraud claims asserted by Nielsen and Everest relating to the Dorsey and Foley Suits, respectively, should be governed by Ohio law because the Engagement Agreement provides that parties' relationship "shall be governed in all respects by the law…of the State of Ohio" or by Minnesota law as the law of the forum state.  The fraud claim asserted by Everest relating to the Rambicure Suit should be governed by Kentucky law because all relevant aspects of that lawsuit were connected to Kentucky or by Minnesota law as the law of the forum state.

With respect to the choice of law analysis, however, no outcome determinative conflict exists because the requirements for pleading a plausible fraud claim are functionally identical in all three jurisdictions.  As such, no further choice of law analysis is necessary, and this Court can apply Minnesota law to the fraud claims.  *See Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, Civil No. 05–2310(DSD/JJG), 2007 WL 4191717, at *5 (D. Minn. Nov. 21, 2007) (applying Minnesota law to fraud claims when no outcome determinative conflict existed between Minnesota and Ohio law).

To state a cognizable claim for fraud under Minnesota law, Plaintiffs must plead facts plausibly demonstrating the following: (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was false or true; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance

thereon; and (5) pecuniary damages as a result of the reliance. *See U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011).[14]

The plaintiff also must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the Rule 9(b) particularity requirements, the Complaint must plead the "time, place, and content" of the fraud and "the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) (internal quotations omitted).[15] "In other words, to survive a motion to dismiss, plaintiffs 'must typically identify the who, what, where, when and how of the alleged fraud.'" *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)).[16] Rule 9(b)'s

---

[14]    Likewise, "[u]nder Ohio law, the elements of fraud are (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely with knowledge of its falsity, or with other such disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Rennick v. Provident Bank*, No. 1:06cv820, 2008 WL 696893, at *6 (S.D. Ohio Mar. 12, 2008). Kentucky is the same: "A viable fraud claim under Kentucky law requires that the defendant (a) made a material misrepresentation; (b) which was false; (c) which was known to be false or made recklessly; (d) which was made with inducement to be acted upon; (e) which plaintiff acted in reliance upon; and (f) which caused plaintiff injury." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 436 (6th Cir. 2008).

[15]    *See also Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (Rule 9(b) requires the plaintiff "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent").

[16]    *See also Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 515 (S.D. Ohio 2012) (dismissing fraud claim where plaintiff "has not pleaded even the minimum 'who,

particularity requirements serve to "ensure[] that a defendant is given sufficient notice of

the allegations against him to permit the preparation of an effective defense." *Streambend*

*Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015)

(quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997)).[17]

**B.      The Complaint fails to plausibly plead a cognizable fraud claim**

Both fraud claims in the Complaint are premised on near-identical allegations

regarding the supposed misrepresentations made by Defendants in connection with their

representation of Plaintiffs in the underlying legal malpractice suits.  Everest's fraud claim

in Count VII, which relates to the Foley and Rambicure Suits, alleges the following:

> [(1)] Cathey and Porter Wright representations to Everest about Cathey's
> experience in handling legal malpractice cases was inaccurate and
> misleading.  [(2)] Cathey had repeated conversations and communications
> with Everest about the timeliness of filings and the readiness of the necessary
> filings and information surrounding the expert disclosures, necessary
> affidavits, and other expert opinions necessary to move forward with the
> case.  These representations were false and inaccurate when they were made
> and were made with the intent that Nielsen and Everest would rely upon these
> statements to their detriment. [(3)] This included Cathey's statements that he
> would assume responsibilities regarding the expert issues and the adequacy
> of the expert reports.  [(4)] Cathey and Porter Wright represented that they
> knew and understood what was necessary to be filed under Minnesota law
> for a legal malpractice claim and that they had fully covered all of these
> requirements for Everest as a part of preparing and submitting the required
> disclosures.

---

what, where, when, and how' of any alleged misrepresentation) (citing *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)).

[17]      *See also Advocacy Org. for Patients and Providers v. Auto Club. Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) ("The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud") (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)).

Compl. ¶ 125 (bracketed information added).  Nielsen's fraud claim in Count VIII, which relates to the Dorsey Suit, contains substantially similar allegations (omitting a single sentence[18]):

> [(1)] Cathey and Porter Wright representations to ~~Everest~~ <u>Nielsen</u> about Cathey's experience in handling legal malpractice cases was inaccurate and misleading.  [(2)] Cathey had repeated conversations and communications with ~~Everest~~ <u>Nielsen</u> about the timeliness of filings and the readiness of the necessary filings and information surrounding the expert disclosures, necessary affidavits, and other expert opinions necessary to move forward with the case.  ~~These representations were false and inaccurate when they were made and were made with the intent that Nielsen and Everest would rely upon these statements to their detriment.~~ [(3)] This included Cathey's statements that he would assume responsibilities regarding the expert issues and the adequacy of the expert reports. [(4)] Cathey and Porter Wright represented that they knew and understood what was necessary to be filed under Minnesota law for a legal malpractice claim and that they had fully covered all of these requirements for Everest as a part of preparing and submitting the required disclosures.

*Id.* ¶ 130 (bracketed information, strikethrough and underlining added).  Each of the four allegations upon which the fraud claims are premised is legally insufficient to state a plausible fraud claim.

---

[18]    By virtue of this omission in Paragraph 130, Count VIII contains no allegation regarding Defendants' intent with respect to the alleged misrepresentations in connection with the Dorsey Suit.  This pleading omission requires that the claim be dismissed.  *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 805-6 (8th Cir. 2013) ("Even if we determined . . . that appellants stated the circumstances surrounding [plaintiff's] alleged misrepresentations with the required particularity, appellants' second amended counterclaim would fail because appellants do not plead the element of intent"); *Corbett v. Beneficial Ohio, Inc.*, 847 F. Supp. 2d 1019, 1027 (S.D. Ohio 2012) (dismissing fraud claim where complaint "is completely devoid of *any* allegations that Defendants made the statements at issue with the intent to mislead another into relying on them").

1.    <u>**ALLEGATION NO. 1**</u>: **The alleged representations about legal malpractice experience**

The Complaint's allegation that Defendants inaccurately and misleadingly represented Cathey's experience in handling legal malpractice claims fails to sustain a claim for fraud for multiple reasons.  <u>First</u>, the Complaint is devoid of any details regarding what was said and when it was said.  By the time Plaintiffs retained Defendants to prosecute the Dorsey and Foley Suits, the Rambicure Suit had been ongoing for more than 15 and 25 months, respectively.[19]  Without any particulars of the "what" or "when," these allegations are legally insufficient to sustain a fraud claim.  *See Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 592-93 (D. Minn. 2014) (dismissing fraud claims because, among other reasons, the Complaint "contain[s] no indication of when the misrepresentations occurred" and "has not identified with any particularity what specific misrepresentations [plaintiff] bases her claim on or where these statements were made"); *Ransom*, 918 F. Supp. 2d at 899 (dismissing fraud claim because, among other reasons, "the complaint fails to identify what statements constitute the alleged fraud, and where these representations were made").[20]  <u>Second</u>, the Complaint fails to plead any facts

---

[19]    The Rambicure Suit commenced on July 1, 2015, the Dorsey Suit commenced on October 27, 2016, and the Foley Suit commenced on August 1, 2017.  *See supra*, Factual Background §§ B-D.

[20]    *See also Jasmine-Jade Enters., LLC v. Borders Group, Inc.*, No. 5:09CV320, 2009 WL 10715165, at *5 (N.D. Ohio Apr. 20, 2009) (dismissing fraud claim because, among other reasons, "Plaintiffs fail to provide any general dates when these representations were made….This is insufficient under Rule 9(b)'s particularity requirement"); *Novolex Holdings, LLC v. Wurzburger*, No. 19-cv-145, 2020 WL 4758360, at *12 (E.D. Ky. Aug. 17, 2020) (fraud claims fail where "Plaintiffs have made no attempt to identify when the alleged misrepresentations were made, beyond labeling them as 'post-closing'").

regarding how Defendants' representations regarding Cathey's "experience in handling legal malpractice cases"—whatever those representations apparently were and in whatever context those representations apparently were made—were "inaccurate and misleading." *See Doe v. Mower County Health and Human Servs. Office of Child Support*, No. 18-cv-3221 (WMW/KMM), 2019 WL 3824256, at *3 (D. Minn. Aug. 15, 2019) (dismissing fraud claim because, among other reasons, plaintiff "fails to allege how this statement constitutes a fraudulent misrepresentation").[21]  Third, the Complaint fails to identify in any respect—much less with the required particularity—how, if at all, Plaintiffs relied on the purported statements to their detriment.  *See Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) ("Parties alleging fraud must plead reliance with sufficient particularity to state a plausible claim of justifiable reliance…Conclusory allegations that a plaintiff detrimentally relied on defendants' representations are not sufficient factual matter to state a claim of relief plausible on its face") (citations omitted, internal punctuation modified); *Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082, 1096 (D. Minn. 2018) (dismissing fraud claims where "[i]nstead of pleading reliance with particularity, Plaintiffs rely on the same vague and nearly identical allegations for each Plaintiff[]").[22]

---

[21]    *See also Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 515 (S.D. Ohio) (dismissing fraud claim where plaintiff failed to allege, in relevant part, "how the [purported misrepresentation] was part of the sort of fraudulent scheme that [plaintiff] contends was afoot here[]"); *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 887 (E.D. Ky. 2015) ( dismissing fraud claim where plaintiffs do not allege how statements were made to induce reliance, "how [plaintiffs] relied on these misrepresentations, or how this reliance caused them injury[]").

[22]    *See also Dowling v. Select Portfolio Servicing, Inc.*, No. 2:05-cv-049, 2006 WL 571895, at *7 (S.D. Ohio Mar. 7, 2006) ("the plaintiff must plead the element of reliance with particularity") (citations omitted); *Branham v. Micro Computer Analysts, Inc.*, 2008

2.    **ALLEGATION NO. 2**: The alleged representations about timeliness and readiness of necessary filings

The allegations regarding the "repeated conversations and communications" about the "timeliness" and "readiness" of "necessary filings" fail to state a claim for similar reasons. <u>First</u>, the Complaint fails to provide any particulars regarding what was said during the supposed "repeated conversations and communications." Nor does the Complaint identify when during each of the three underlying malpractice suits the alleged conversations and communications occurred. Because the Complaint describes the alleged substance and timing of these supposed communications only in general terms (at best), the purported misrepresentations cannot sustain a fraud claim. *See Zimmerschied*, 449 F. Supp. 3d at 592-93; *Ransom*, 918 F. Supp. 2d at 899. <u>Second</u>, the Complaint is without any specific allegations regarding how Plaintiffs purportedly relied on the alleged "repeated conversations and communications" to their detriment. *See Ambassador Press*, 947 F.3d at 423; *Bhatia*, 323 F. Supp. 3d at 1096.

3.    **ALLEGATION NO. 3**: The alleged representations about assuming responsibilities regarding expert issues

The allegation that Cathey represented he would "assume responsibilities regarding the expert issues and the adequacy of the expert report" borders on unintelligible. Among other things, no details are provided regarding the "responsibilities" Cathey purportedly stated he would assume, or when and in connection with which of the three underlying malpractice suits the supposed representations were made. *See Zimmerschied*, 449 F.

---

WL 1868016, at *4 (E.D. Ky. Apr. 24, 2008) ("The content of those false statements and facts demonstrating reliance must be plead, too, with particularity….").

Supp. 3d at 592-93; *Ransom*, 918 F. Supp. 2d at 899.  Nor does the Complaint elaborate on what, if anything, Plaintiffs claim to have done in detrimental reliance on the alleged representations.  *See Ambassador Press*, 947 F.3d at 423; *Bhatia*, 323 F. Supp. 3d at 1096.

    **4.**    <u>**ALLEGATION NO. 4**</u>**: The alleged representations about knowing and understanding the requirements for a Minnesota legal malpractice claim**

The final allegation—*i.e.*, that Defendants represented to Plaintiffs that they "knew and understood" how to prosecute a legal malpractice case in Minnesota and had "fully covered" the applicable requirements—provides a textbook example of vagueness.  <u>First</u>, it is unclear how or why such a representation would have been made by Defendants in connection with the Rambicure Suit, which was the first-in-time malpractice suit and not venued in Minnesota.  <u>Second</u>, as for timing, it appears that Plaintiffs allege that representations were made both (1) before (or at least early in) one or more of the engagements—by virtue of the allegation that Defendants represented they "knew and understood what was necessary to be filed"—and (2) after Defendants had "prepar[ed] and submit[ed] the required disclosures" in one or more of the underlying malpractice suits. But, without any specificity or particularity regarding the timing and substance of these apparent dual representations, the Complaint fails to provide the requisite fair notice of the claims, leaving Defendants and this Court to speculate as to the substance of the fraud claims.  Needless to say, this outcome is antithetical to Rule 9(b)'s purpose.  *See Zimmerschied*, 449 F. Supp. 3d at 592-93; *Ransom*, 918 F. Supp. 2d at 899.  <u>Third</u>, as with the other three purported misrepresentations, the Complaint fails to provide any specificity

as to how Plaintiffs detrimentally relied on these purported representations. *See Ambassador Press*, 947 F.3d at 423; *Bhatia*, 323 F. Supp. 3d at 1096.

The above-identified pleading deficiencies are incurable—by reference to other allegations in the Complaint[23] or otherwise. The absence of reasonably specific, concrete, factual allegations is fatal to Plaintiffs' fraud claims. Accordingly, Counts VII and VIII should be dismissed.

## IV.    PLAINTIFFS' MINN. STAT. CH. 481 CLAIMS FAIL

Lacking a viable fraud claim, Plaintiffs statutory claims in Counts IX-XII also fail as a matter of law. Simply put, the statutory provisions in Minn. Stat. §§ 481.07 and 481.071 do not provide an independent cause of action:

> Sections 481.07 and 481.071…merely provide the penalty for a successful cause of action with respect to the offending attorney conduct. Therefore, in order to properly assert a claim for damages under either statute, the plaintiff must: (1) specifically allege a claim of fraud as the underlying cause of action, in compliance with Fed. R. Civ. 9(b); and (2) show that the offending attorney conduct occurred within the context of a judicial proceeding.

*Beardmore v. Am. Summit Fin. Holdings, LLC*, No. Civ. 01-948, 2001 WL 1586785, at *8 (D. Minn. Dec. 10, 2001); *see also Baker v. Ploetz*, 616 N.W.2d 263, 270 (Minn. 2000); *Love v. Anderson*, 61 N.W.2d 419, 422 (Minn. 1953). Because Plaintiffs' fraud claims fail for the above reasons (*supra* § III), Plaintiffs cannot pursue the statutory remedies in

---

[23]    Plaintiffs may attempt to prop up their facially-deficient fraud claims by arguing that the allegations in Paragraphs 125 and 130 merely summarize allegations appearing in the main body of the Complaint. But, the allegations appearing in the main body of the Complaint provide no more specificity or particularity than those in Paragraphs 125 and 130. A vague allegation is a vague allegation, no matter how often it is repeated. Nor can vague supporting allegations transform a vague primary allegation into a specific allegation.

Counts IX-XII. *See Richter v. Fed. Nat'l Mortgage Assoc.*, Civ. No. 13-00475, 2013 WL 3223377, at *4 (D. Minn. June 25, 2013) ("Sections 481.07 and 481.071 do not apply unless buttressed by a properly-pleaded claim of fraud"). Counts IX-XII should be dismissed.

## CONCLUSION

Defendants respectfully request that the Court grant their motion in its entirety and dismiss (1) all claims in Counts I-VIII regarding the Dorsey and Foley Suits as time-barred, (2) all fraud claims in Counts VII-VIII, and (3) all statutory claims in Counts IX-XII.

Dated: December 14, 2021    **TAFT STETTINIUS & HOLLISTER LLP**

By: *s/Jason R. Asmus*
    Jason R. Asmus (#0319405)
    Jeremy D. Schildcrout (#0399926)
2200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 977-8400
Fax:     (612) 977-8650
Email:    JAsmus@Taftlaw.com
        JSchildcrout@Taftlaw.com

**COUNSEL FOR DEFENDANTS**

72061380v2