## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Everest Stables, Inc., a Minnesota corporation and Jeffrey Nielsen, | Court File No.: 21-cv-2289-WMW-JFD |
| Plaintiffs, | |
| v. | **PLAINTIFFS MEMORANDUM IN OPPOSITION OF MOTION TO DISMISS** |
| Porter, Wright, Morris, & Arthur LLP and Christopher D. Cathey, | |
| Defendants. | |

## <u>INTRODUCTION</u>

Plaintiffs Jeffrey Nielsen ("Nielsen") and Everest Stables, Inc., ("Everest") (collectively "Plaintiffs") submit this Memorandum of Law in Opposition to Defendants Christopher D. Cathey ("Cathey") and Porter, Wright, Morris & Arthur LLP ("Porter Wright") (collectively, "Defendants") Motion to Dismiss. Plaintiffs' original Complaint arises out of a series of malpractice, misrepresentations, and fraud committed by Defendants through their representation of Plaintiffs in various past litigations.

Defendants first began their legal representation of Plaintiffs on or about June 23, 2015, when Plaintiffs and Cathey entered into an initial engagement agreement for representation to pursue legal malpractice claims against William C. Rambicure, Jr., Rambicure Law Group, PSC and Miller &Wells, PLLC ("*Rambicure* Litigation" or "*Rambicure*"; Compl. ¶ 11; Asmus Decl. Ex. 1). Nielsen retained Cathey, who at the

time worked at Roetzel & Andres, LPA, to represent his claims in the United States District Court for the Western District of Kentucky.

Sometime thereafter, Plaintiffs hired Cathey and Porter Wright to represent them in two other claims in an effort to consolidate multiple litigations to one firm. Plaintiffs hired Cathey to pursue legal malpractice claims against Thomas Pahl and Foley & Mansfield, PLLP ("*Foley* Litigation" or "*Foley*"; Compl. ¶ 9). Plaintiffs also hired Cathey to represent them in a legal malpractice suit against George Eck and Dorsey & Whitney, LLP. ("*Dorsey* Litigation" or "*Dorsey*"; Compl. ¶ 10). In total, Cathey represented Plaintiffs in three separate legal malpractice suits simultaneously for an extended period of time. (Compl. ¶¶ 9-11). The *Dorsey* and the *Foley* cases were brought in Minnesota State Court by Defendants acting under pro hac vice.

After Defendants failed to adequately represent Plaintiffs in each of the *Rambicure, Dorsey,* and *Foley* claims ("Underlying Suits" or "Underlying Matters" Compl. ¶¶ 9-11), Plaintiffs commenced this action. Despite Defendants' contentions, Defendants have not demonstrated that any of Plaintiffs' claims are deficient, insufficiently plead, or without merit.

## STATEMENT OF FACTS

There are three separate, underlying legal malpractice matters at the foundation of Plaintiffs' current claims. As previously stated, Plaintiffs entered into an engagement agreement with Cathey who at the time was working at Roetzel & Andres, LPA on June 25th, 2015, to pursue legal malpractice claims *Rambicure* Litigation on behalf of Everest in the drafting of a Purchase and Sale Agreement relating to the reduction of Everest's

equine stock (*Everest Stables v. William C. Rambicure, Jr., et al* #3:15-CV-576 GNS/CHL; Compl. ¶ 11; Asmus Decl. Ex. 1).

In the second of three matters, Porter Wright and Cathey were retained by Plaintiffs to pursue claims against Foley and Mansfield, PLLP ("F&M") and attorney Thomas Pahl ("Pahl") related to F&M's and Pahl's representation of Everest in two separate pieces of litigation. (*Everest Stables v. Foley & Mansfield and Thomas W. Pahl* #27-CV-18-8745; Compl. ¶ 9).

Lastly, Plaintiffs retained Defendants to pursue legal malpractice claims against Dorsey & Whitney LLP ("Dorsey") and attorney George Eck ("Eck") relating to personal matters arising in Washington County ("*Washington County Litigation*"; *Jeffrey Nielsen v. Dorsey & Whitney, LLP, George Eck, and Peter M. Lancaster* #27-CV-17-16371; Compl. ¶ 10). The three Underlying Matters and Defendants' conduct in each will be discussed below.

**A. Everest Stables v. William C. Rambicure, Jr., et al Litigation**

Plaintiffs hired Cathey, who at the time worked for the law firm Roetzel & Andres, LPA to represent them regarding claims of malpractice against William Rambicure, Jr. and the Rambicure Law Group, PSC.

a. *Underlying Rambicure Matter*

Everest originally hired William Rambicure, Jr. and the Rambicure Law Group, PSC to draft a contract that would protect Everest during its sale reduction of its equine assets that were being cared for by Crestwood Farm Bloodstock, LLC ("Crestwood") (Compl. ¶ 66). Everest had originally engaged Crestwood to facilitate a reduction for

estate planning purposes. (Compl. ¶ 70; Exhibit C to Plaintiffs' Complaint). Nielsen, believing it to be in the best interest of Everest, hired William Rambicure Jr., and the Rambicure Law Group, PSC to draft a contract to facilitate the reduction. According to Mr. Rambicure, the contract established a fiduciary relationship between Everest and Crestwood to protect Everest during the sale process. (Compl. ¶ 67). Mr. Rambicure also provided advice to Everest based on the contract, stating that Everest could set a reserve price on its horses to protect their value without breaching their contract or incurring damages. (Compl. ¶ 68).

Later, it was revealed that Crestwood was deceptive and fraudulent in its dealings with Everest, leaving Everest with significant damages. After Crestwood's fraudulent conduct, Nielsen relied on the contract prepared by Mr. Rambicure to remedy the injuries sustained by Everest. However, after litigation ensued, the Federal Court determined that the contract failed to establish the fiduciary relationship that Mr. Rambicure stated it would. (Compl. ¶ 67). The Federal Court also determined that the advice Mr. Rambicure provided to Everest on the contract was incorrect. (Compl. ¶ 68). As a result of Mr. Rambicure's repeated failures, Plaintiffs incurred loss of claims and significant damages. (*Id.*)

b. *Defendants' Representation in the Rambicure Litigation*

Plaintiffs hired Cathey, who at the time worked for the law firm Roetzel & Andres, LPA to represent them in a legal malpractice suit against Mr. Rambicure, Rambicure Law Group PSC, and other involved parties. (Compl. ¶ 11). Plaintiffs and Cathey entered into an engagement agreement for representation dated June 23, 2015.

(Asmus Decl. Ex. 1). In the agreement, Cathey did not include any choice of law provision, and Nielsen agreed to the engagement in signing.

After litigation commenced, Defendants promptly began exhibiting their lack of ability to successfully pursue Plaintiffs' claims. Defendants stumbled through litigation and constantly made mistakes. Defendants failed to conduct the necessary discovery, failed to take depositions of the defendant or third parties, and failed to obtain necessary expert opinions and necessary legal support to sustain the legal viability of the claims. (Compl. ¶¶ 72-74). Furthermore, Defendants failed to obtain the necessary valuation of Plaintiffs' horses, including the complete history of the horse involved in the litigation and at the hearing before the Court. After summary judgment occurred, the court in the *Rambicure* litigation raised additional new issues sua sponte. Defendants failed to answer those questions and failed to supplement the record to fully address the court's question sua sponte. (Compl. ¶ 77).

To make matters worse, Defendants represented to Plaintiffs throughout the litigation that they had the requisite competency and capabilities to successfully represent Plaintiffs. (Compl. ¶ 13). Cathey withheld information from Plaintiffs and misrepresented matters related to the litigation such as preparation needed, merits of the claims, and preparation of expert reports. (Compl. ¶¶ 75-76). Cathey assured Plaintiffs the additional claims were viable and proceeded to pursue those claims for massive fees. (Compl. ¶ 71). However, the *Rambicure* Court found these claims to be futile and ridiculed Plaintiffs for pursuing them. (*Id.*). Following Defendants withdrawal from the *Rambicure* suit, the *Rambicure* litigation proceeded forward until it was reduced to one issue. (Compl. ¶ 78).

The *Rambicure* trial has been postponed due to COVID-19 and awaits its rescheduled trial date. (Compl. ¶ 81).

**B. Nielsen v. Dorsey & Whitney, LLP, *et al* Litigation**

While working on the *Rambicure* suit, Plaintiffs hired Cathey, who at the time worked for Porter Wright to represent them in claims of malpractice against George Eck and Dorsey & Whitney, LLP.

*a. Underlying Dorsey Matter*

George Eck, while working at Dorsey & Whitney, represented Nielsen individually in a number of lawsuits between October 2010 through June 2011. (Compl. ¶ 47). In sum, these lawsuits commenced against Nielsen arose from disagreements and conflict between Nielsen and a certain political candidate running for office in Nielsen's home county. After Nielsen consulted Eck, he was advised that he had viable claims against certain individuals, and that he had a high likelihood of success in these claims. (Compl. ¶ 56: Exhibit B to Plaintiffs' Complaint). However, the claims brought by Dorsey and Eck were universally dismissed as futile. (Compl. ¶ 48). The blatant futility of the claims brought by Eck were noted by the *Dorsey* court, which repeatedly dismissed Nielsen's claims as without having merit, moot, or lacking factual or legal support. (*Id*).

At the conclusion of the majority of Nielsen's suits, a set of named defendants to one of the suits sought sanction against Nielsen, Dorsey, and Eck for the frivolousness of the suits brought by them. (Compl. ¶ 49). The Court also threatened Eck with sanctions due to the fruitless nature of the claims he persuaded Nielsen to pursue. (*Id*). Eventually,

Eck and Dorsey withdrew, and the Court denied the motion for sanctions against Nielsen, stating that sanctions would only be appropriate against Nielsen's attorney. (*Id.*).

### b. *Defendants' Representation in the Dorsey Litigation*

Nielsen, who had already been represented by Defendants in the *Rambicure* Matter, then employed Defendants to assist him individually in his obvious claims against Dorsey and Eck. A second engagement letter was executed between the parties on September 20, 2016. (Asmus Decl. Ex. 7). Due to the parties' previous interaction through the *Rambicure* suit, Nielsen believed that the two agreements were identical in nature and desired Cathey to continue representing him in his subsequent litigations. Cathey did not explain or detail any differences between the agreements and did not delineate or point out the new provision involving a choice of law. Cathey by his omissions failed to note or disclose this important provision. Although the entirety of the proceedings in the *Dorsey* matter occurred in Minnesota, Nielsen retained Cathey due to his involvement with the *Rambicure* suit. Cathey was then admitted pro hac vice to represent Nielsen in Minnesota. (Steffenson Decl. Ex. 1). Porter Wright and Cathey commenced action in Hennepin County, Minnesota on behalf of Nielsen on October 27, 2016, against Dorsey and Eck claiming professional malpractice/negligence, breach of contract, breach of fiduciary duty, fraud, and violations of Minn. Stat. §481.07, and Minn. Stat. §481.071. (Compl. ¶ 53).

On July 17, 2017, Cathey and Porter Wright provided an Affidavit of Expert Identification identifying expert Paul D. Friedman, P.C. as Plaintiffs' expert. On November 29, 2017, a motion was brought before the Court to amend the Complaint to

add claims, most of which were denied. (Compl. ¶ 55-56). By January 19, 2018, the Court issued its Scheduling Order outlining dates and deadlines, including the expert disclosures. (Compl. ¶ 55). Defendants were put on notice that their complete and final disclosures regarding experts were due by June 1, 2018. (Compl. ¶ 58). Although the parties stipulated to an amended Scheduling Order to extend dates, deadlines for expert submissions were not stipulated to or extended by the Court. (Compl. ¶ 59).

Eventually, Defendants withdrew as Nielsen's counsel. The District Court then heard a Motion for Summary Judgment petitioned by Eck and Dorsey to examine the validity of the expert affidavit and report obtained by Defendants while acting as legal counsel for Nielsen. (Compl. ¶ 62). The District Court determined that the claims of Nielsen were barred by the repeated failures and deficiencies of the expert affidavit, delineating those failures in its Order dated October 18, 2019. (*Id.*; Steffenson Decl. Ex. 2). Following the result of the Court of Appeals decision in the *Foley* suit, Nielsen determined that appealing the issues were futile. Accordingly, Nielsen proceeded forward to settle the Dorsey and Eck case. (Compl. ¶ 64).

### C. Everest Stables v. Foley & Mansfield and Thomas W. Pahl Litigation

Similar to the *Dorsey* suit, Plaintiffs hired Cathey and Porter Wright to represent them regarding claims of malpractice against Thomas Pahl and Foley & Mansfield, PLLP.

#### a. *Underlying Foley Suit*

F&M and Pahl undertook two pieces of litigation on behalf of Everest, those being the *Crestwood Litigation* and *Canani* Litigation. In *Crestwood,* Pahl commenced

8

litigation on behalf of Nielsen on claims related to a series of transactions involving various horses, involving claims for breach of contract, breach of fiduciary duty, fraud and misrepresentation, and implied covenant of good faith and fair dealing. (Compl. ¶ 16). Although the suit was originally brought in Minnesota, it was moved the Eastern District of Kentucky Court due to the significance of events that occurred there. (Compl. ¶ 15). The Kentucky court dismissed all of Everest's claims based on F&M and Pahl's negligence. (Compl. ¶ 16). F&M and Pahl attempted to file a motion for a fourth amended complaint attempting to add a series of new claims but was summarily denied. The Court denied F&M and Pahl because all relevant deadlines had passed, and the claims would be nothing but futile. (Compl. ¶ 17).

The *Canani* litigation was initiated by F&M and Pahl in the U.S. District Court for the Central District of California, Court file No.:  2:09-CV-09446 on December 23, 2009. The Complaint was subsequently amended three times by F&M and Pahl.  (Compl. ¶ 18). In sum, the *Canani* suit dealt with individuals who conspired to defraud Nielsen during the sale of Everest's valuable racehorses. During the litigation, it was imperative to Nielsen's case in fact to introduce expert testimony to establish credible evidence regarding the valuation of horses. However, due to Pahl's missteps and failures, no expert was disclosed pursuant to the Federal Rules of Civil Procedure. Nielsen was barred from testifying as an expert because he was not disclosed timely, and no expert testimony was admitted. As a direct result,  although Everest prevailed on its claims,  it was unable to recover its significant damages because of the failures of expert disclosure and failures to present the necessary evidence at trial. (Compl. ¶¶ 21-24).

### b. Defendants' Representation in the Foley Litigation

Similarly to the *Dorsey* suit, Nielsen employed Defendants to represent him in the *Foley* suit. Defendants officially commenced claims against F&M and Pahl in Hennepin County on August 1, 2017. The claims included professional malpractice, negligence, breach of contract, and breach of fiduciary duty relating to the *Crestwood* and *Canani* matters. (Compl. ¶ 25). At or around that time, Cathey provided an Affidavit of Expert Review pursuant to Minnesota Statute § 544.42, stating that he had conferred with an expert who supported the claims of malpractice against F&M and Pahl. (*Id*.)

Nine months after commencing suit, Defendants submitted an Amended Complaint, adding claims of fraud and negligent misrepresentation. (Compl. ¶ 26). Shortly thereafter, the Court issued an Amended Scheduling Order on July 20, 2018, providing in part that Nielsen's expert disclosures must be submitted to the Court no later than January 14, 2019. (Compl. ¶¶ 28-29, 32). Defendants, echoing the promise they made at the onset of their representation, assured Plaintiffs they would never miss a deadline and would avoid the same mistakes that had plagued Plaintiffs in the past. (Compl. ¶¶ 9, 28).

By January 14, 2019, seven months after the Amended Scheduling Order was received and two years after obtaining Nielsen's file regarding the *Foley* matter, Defendants failed to produce or submit an expert report. Instead, Defendants brought a motion to extend time to file the expert affidavit, despite the fact they had ample time to prepare and submit one. (Compl. ¶34). At the hearing on Defendants' motion to extend time to file the expert affidavit, the Court admonished Defendants for their lazy and

careless behavior, especially after possessing all the relevant information and timelines well in advance of the January 14, 2019 deadline. The Court proceeded to deny Defendants' request.

Additional to their promise that they would never miss a deadline, Defendants also assured Nielsen that they would not tolerate deficient discovery and would fully pursue any discovery deemed deficient. (Compl. ¶ 30). Cathey assured Plaintiffs that if he didn't receive a favorable response during the motion for extension of time to file an expert affidavit, he would assume responsibility with the court and acknowledge to the Court his wrongdoings to protect Plaintiffs' claims. (Compl. ¶ 36). Defendants also assured Plaintiffs that their claims still had validity even without expert testimony and that Plaintiffs still had a likelihood of success on the claims. These representations all turned out to be fraudulent and false.

Porter Wright and Cathey submitted their notice to withdraw as counsel for Everest on April 25, 2019, knowing that Everest would need to replace counsel within 30 days. (Steffenson Decl. Ex. 5). The manner of this withdrawal by Porter Wright and Cathey caused Everest harm as it had to immediately seek new counsel under the difficult circumstances of critical motions left pending or which were brought by the various defendants shortly after the withdrawal. F&M and Pahl brought their motion dismiss on June 10, 2019, hardly one month after Defendants withdrew as counsel. (Compl. ¶ 41). The District Court granted F&M's and Pahl's motion to dismiss in part, criticizing Everest's affidavit and failures to timely submit relevant expert opinions. (Compl. ¶ 42).

On July 10, 2020, F&M and Pahl brought their motion for summary judgment on the remaining claims. In its October 2, 2020 Order, , the District Court heavily referenced the failure of the expert affidavit as it related to the claims and determined that these claims needed expert opinions to be proven. (Compl. ¶ 43).   The District Court' October 2, 2020 Order repeatedly sets forth the failures of the affidavit and the failures to provide expert opinions on certain issues, for which it had now determined that expert testimony was necessary.   Everest then appealed the District Court's ruling to the Court of Appeals. (Compl. ¶ 45). Nielsen eventually lost on all claims brought in the *Foley* suit.

## PROCEDURAL HISTORY

Plaintiffs originally commenced action against defendants in Hennepin County District court on January 29, 2021. (Asmus Decl. Ex. 10). On February 26, 2021, both parties to this action entered into a tolling agreement whereby Plaintiffs dismissed the suit in Hennepin County and would resume this action in Federal District Court for the District of Minnesota. (Asmus Decl. Ex. 11-12).

Plaintiffs subsequently commenced this action on October 15, 2021. Plaintiffs' Complaint includes claims for legal malpractice in the *Dorsey* and *Foley* suits (Compl. ¶¶ 87-100), breach of contract in the *Dorsey* and *Foley* suits (Compl. ¶¶ 101-113), breach of fiduciary duty in the Underlying Suits (Compl. ¶¶ 114-123), fraud and misrepresentation to Everest (Compl. ¶¶ 124-128), fraud to Nielsen (Compl. ¶¶ 129-133), and violations Minn. Stat. §§ 481.07 and 481.071 (Compl. ¶¶ 134-149). On December 14, 2021, Defendants filed this Motion to Dismiss.

## ARGUMENT

### I.    LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. To survive a motion to dismiss a complaint need only "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain "detailed factual allegations," but must only allege facts with enough specificity "to raise a right to relief above the speculative level." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must assume "all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 556. A claim has facial plausibility when the plaintiff has pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678.

When evaluating a motion to dismiss under Rule 12(b)(6) the court assumes the facts in the Amended Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F. 2d 185, 187 (8th Cir. 1986), *Rickmyer v. Browne*, 995 F. Supp. 2d 989, 995 (D. Minn. 2014). In deciding a motion to dismiss, the Court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the

complaint. *Wilwal v. Nielsen*, 346 F. Supp. 3d 1290, 1300 (D. Minn. 2018) (citing *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999)).

Furthermore, Defendants' argument would require different state laws and statutes to be applied to the various malpractice claims. Defendants admit and establish in their brief that Minnesota law applies to the *Rambicure* claims. However, Defendants also attempt to allege that Ohio law applies to the *Foley* and *Dorsey* claims. This creates a conundrum whereby this Court would find itself in the problematic position of contemplating two different states' laws to claims that are inherently intertwined. This is inconsistent, implausible, and would result in difficulty for both parties involved and be extremely confusing for a jury.

Lastly, decision making regarding the claims at issue is not appropriate for a motion to dismiss. Fed. R. Civ. P. 12 (d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The Court may convert a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment if the Court considers matters outside the pleadings. However, the Court may sometimes consider some materials necessarily embraced by the pleadings. *See, e.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 698 n.4 (8th Cir. 2003). Normally, if the parties present and the court considers information or other matters that are outside the pleadings, a motion to dismiss is inappropriate and Minnesota courts will treat the

motion as a motion for summary judgment. *See Shank v. Carleton Coll.*, 232 F. Supp. 3d 1100, 1108 (D. Minn. 2017).

Factual issues such as the ones argued in both Plaintiffs' and Defendants' briefs are more appropriately dealt with on a dispositive motion for summary judgement by this court after the requisite discovery has been conducted and concluded. Defendants argue in detail about facts that require further discovery in order to determine their factual relevance or basis. Such determination of fact is appropriate for summary judgment after discovery has taken place, not for a motion to dismiss.  Furthermore, to the extent any of these claims are deficient, Plaintiffs would respectfully request the opportunity to amend the Complaint to more fully set forth their claims.

## II.    MINNESOTA LAW APPLIES TO THE CLAIMS SET FORTH IN THE COMPLAINT

### A.    The choice of law provision contained in the second engagement agreement is invalid.

A federal court sitting in diversity applies state substantive and federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 427 (1996). In determining which state's law applies, we look to the choice of law principles of the forum state. *Whirlpool Corp v. Ritter,* 929 F.2d 1318, 1320 (8th Cir. 1991) (when jurisdiction is based in diversity, the forum state's choice of law analysis applies). Minnesota courts generally honor contractual choice of law provisions. *Milliken and Co. v. Eagle Packaging Co., Inc*., 295 N.W.2d 377, 380 n.1 (Minn. 1980). The policy behind enforcement of choice of law provisions is to foster predictability in contracting. *Medtronic, Inc. v. Advanced Bionics Corp.,* 630 N.W.2d 438, 454 (Minn. Ct. App. 2001); *see Hauenstein &*

*Bermeister, Inc. v. Met–Fab Industries, Inc.*, 320 N.W.2d 886, 889 (Minn. 1982) (explaining that this approach "accords with ancient concepts of freedom of contract and reflects an appreciation of the expanding horizons of American business"; it also provides "a degree of certainty to business contracts by obviating jurisdictional struggles and by allowing parties to tailor the dispute resolution mechanism to their particular situation.") For instance, an independent business enterprise acting in good faith and without an intent to evade the law may contractually designate a choice of law. *Hagstrom v. American Circuit Breaker Corp.,* 518 N.W.2d 46, 48 (Minn. Ct. App. 1994*); St. Jude Medical S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785 (8th Cir. 2016) (under Minnesota law "a contractual choice-of-law provision will govern so long as the parties 'act[ed] in good faith and without an intent to evade the law.'"

The Restatement (Third) of the Law Governing Lawyers § 18 Comment H points out that "contracts between clients and lawyers are to be construed from the standpoint of a reasonable person in the client's circumstances." This is due to the fact, inter alia, that "attorneys are more able than most clients to detect and repair omissions or ambiguities in attorney-client agreements." The lawyer thus bears the burden of ensuring that the contract states any terms diverging from a reasonable client's expectations. The Restatement further asserts that a client-lawyer contract is to be construed in accordance with, among other things, "in light of the circumstances in which it was made." Restatement (Third) of the Law Governing Lawyers § 18 Comment H.

Here, Cathey and Porter Wright did not uphold its obligations to Nielsen. As emphasized by Defendants, there were two engagement agreements executed between the

parties: one for Defendant Cathey's previous firm and one for Cathey as a member the Defendant Porter Wright. It is undisputed that the first agreement did not have a choice of law provision while the second one did. Cathey failed to detail the changes between the two agreements. This is a fraudulent omission as the second agreement had materially different terms than the first. Furthermore, Nielsen's experiences and expectations with past representation from Cathey aligned with the first engagement agreement. Because the claims, the court, and the facts relevant to the underlying suits took place in Minnesota, and all relevant pretrial and trial litigation were to take place in Minnesota for the malpractice claims Cathey was supposed to perform, it is clear that Nielsen's expectations were that any dispute arising under the legal representation would also occur in Minnesota. Moreover, the second agreement can also be seen to be unconscionable. The second agreement was created more than one year after the first agreement was signed and representation commenced. (Asmus Decl. Ex. 1, 7).

Furthermore, the choice of law provision should not be enforced because it would be prejudicial to Plaintiffs. The entirety of the suit did not take place in Ohio, and performance of duties was to be done in Minnesota. All pretrial litigation and motion practice for *Foley* and *Dorsey* occurred in Minnesota state district court, and all hearings occurred in the Hennepin County. Using Ohio law to govern a suit in which all relevant underlying facts, claims, events, procedures, and outcomes all occurred in Minnesota would be prejudicial to Plaintiffs.

Enforcing this provision would also be against Minnesota public policy and considered forum shopping. Evidence of forum shopping or that the application of the

law of one state would promote forum shopping would indicate disrespect for the law of the other state. *Jepson v. General Cas. Co. of Wisconsin*, 513 N.W.2d 467, 471-72 (Minn. 1994); *Blake Marine Group v. CarVal Investors LLC,* 829 F.3d 592, 595 (8th Cir. 2016); *Perry, Trustee for Sherrell v. Beltrami County,* 2021 WL 568409, at *3 (D. Minn. 2021), *citing Lommen v. City of East Grand Forks*, 522 N.W.2d 148, 152 (Minn. Ct. App. 1994). A major concern regarding choice-of-law enforcement is avoidance of forum shopping. Maintaining interstate order is a "strong consideration" where there is evidence of forum shopping. *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 739 (8th Cir. 1995*); Danielson v. National Supply Co*., 670 N.W.2d 1, 7-8 (Minn. Ct. App. 2003). The Eighth Circuit has held that the maintenance of interstate order is a factor that favors application of the law of the state "in which almost all events which gave rise to the lawsuit occurred." *Nesladek v. Ford Motor Co*., 46 F.3d 734, 739 (8th Cir. 1995)

Here, it is clear that the choice of law provision was included solely for the purpose of preselecting a forum should representation go askew. Defendants are misguided in assuming that physical placement alone in a foreign location precludes liability from forum shopping. It is undeniable that the events, representations, and pretrial proceedings all occurred in Minnesota. The *Foley* and *Dorsey* suits have absolutely no relation to Ohio except for the fact it is the location where one of the Defendant is domiciled. The inclusion of the choice-of-law provision serves no other purpose than to preselect a forum jurisdiction that would heavily favor the defendants.

Cathey's actions regarding the choice of law provision also constitute fraud by omission. "[F]or an omission to be actionable, it must be material to the transaction, and

the party concealing the fact must have been under a legal or equitable obligation to communicate the fact to the other party." *Williams v. Total Life Changes, LLC*, CV 20-2463 (MJD/HB), 2021 WL 2592385 (D. Minn. June 24, 2021) (citing *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp*., 850 N.W. 2d 682, 695 (Minn. 2014) (citations omitted)). "Under the common law, one party to a transaction has no duty to disclose material facts to the other party" absent special circumstances that may trigger a duty to disclose. *Id*. Those special circumstances may include situations where (1) the parties are in a confidential or fiduciary relationship, (2) one party "has special knowledge of material facts to which the other party does not have access," and (3) "a person who speaks must say enough to prevent the words communicated from misleading the other party." *Id*. If one of the parties has special knowledge of material facts that the other party doesn't, the concealment of such material fact is considered fraudulent if the party "conceals a fact material to the transaction and peculiarly within its knowledge, knowing that the other party acts on the presumption that no such fact exists*." Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.,* 450 F.3d 816, 821 (8th Cir. 2006).

Here, Cathey's actions regarding the second engagement agreement meets the standard for fraud by omission. The choice of law provision contained in the second engagement agreement is material to these proceedings as it dictates the selection of law to be applied to this case. Rule 1.4 of the Minnesota Rules of Professional Conduct requires an attorney to "reasonably consult with the client about the means by which the client's objectives are to be accomplished . . . keep the client reasonably informed about

the status of the matter . . . [and] shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Furthermore, Rule 7.1 of the Minnesota Rules of Professional Conduct states that attorneys "shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact of law, or omits a fact necessary to make the statement considered as a whole not materially misleading."

Cathey did not inform Plaintiffs of the significance of the choice of law provision. The material differences between the first and second agreement were never communicated to Plaintiffs, nor was the impact these differences would have should they be enforced. Cathey as an attorney has an elevated, specialized knowledge regarding the engagement agreement, and as such had an obligation to inform Nielsen of any material provisions contained in the agreement. Because no such choice of law provision existed in the previous agreements, and because no forthright explanation was given regarding the new provision, Plaintiffs acted on the presumption that either the provision did not exist or that it was inconsequential to their representation. Moreover, decision making regarding these types of issues is not appropriate for a motion to dismiss. Factual issues such as the choice of law provision are more appropriately dealt with on a dispositive motion for summary judgement by this court after the requisite discovery has been conducted and concluded.

**B.    The MUCLLA Section 541.33 "Escape Clause" applies to the current claims.**

Minnesota adopted the Uniform Conflict of Laws—Limitations Act in 2004 ("MUCLLA"). The MUCLLA provides that "if a claim is substantively based … upon the law of one other state, the limitation period of that state applies," or if it is based "upon the law of more than one state, the limitation period of one of those states chosen by the law of conflict of laws of this state applies." Minn. Stat. § 541.31 subd.1. While certain claims may be barred by the provisions of this new rule, the MUCLLA Section 541.33 contains what is known as an "escape clause" for certain applicable instances where it would be unfair from either the plaintiff's or defendant's perspective to apply the limitation period of another state:

> If the court determines that the limitation period of another state applicable under section[] 541.31 . . . is substantially different from the limitation period of this state and has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against, the claim, the limitation period of this state applies.

Minn. Stat. § 541.33. When analyzing this provision, Minnesota courts typically require that there be both "substantial" differences in competing states' limitations periods, and that the 'fair opportunity' to sue has not occurred. *Burks v. Abbott Labs.*, 639 F. Supp. 2d 1006, 1119 (D. Minn. 2009). While the Court in *Burk*s noted that Minn. Stat. § 541.33, as an initial matter, should be "rarely" employed in "extreme cases," they also stated that discovery would provide additional facts to determine whether a party had "encountered any kind of substantial barriers to instituting the suit within one year." Through this

analysis, the Court therefore concluded that a motion to dismiss was inappropriate until further discover was conducted. *Id.*

As stated in detail above, the choice-of-law provision contained in the engagement agreement is invalid, and Minnesota substantive law should apply. Alternatively, in the event Ohio law is determined to prevail, the escape clause of the MUCLLA applies in this case. The statute of limitations for a legal malpractice claim is one year. *See* Ohio Rev. Code. §2305.117(A).  In contrast, the statute of limitations for legal malpractice in Minnesota is six years. Minn. Stat. § 541. 05(5); *Antone v. Mirviss*, 720 N.W.2d 331 (Minn. 2006). While the mere time difference between limitations periods does not "form the sole grounds to argue substantial differences and fair opportunities" under the escape clause, additional discovery "may provide a reasonable factual basis to conclude that the parents 'encountered any kind of substantial barriers to instituting the suit within one year.'" *Burks,* 639 F.Supp.2d at 1120.; *Burks v. Abbot Labs.,* 917 F.Supp.2d 902, 919 (D. Minn. 2013). It is the duty of the Plaintiffs to prove whether the escape clause should apply. *Id.*

Here, it is clear that Plaintiffs meet the requirements for the escape clause under the MUCLLA. First, as an initial fact, the year difference in the statutes of limitations between Ohio and Minnesota is five years. *See* Ohio Rev. Code. §2305.117(A). *See also* Minn. Stat. § 541. 05(5). Second, the continuance of events in the Underlying Suits each qualify as a substantial factor in preventing Plaintiffs the fair opportunity to litigate this matter. Defendants incorrectly assert that there is no "basis to claim" Plaintiffs were time-barred by the *Foley* and *Dorsey* suits to pursue this litigation. The *Foley* suit definitively

ended on September 7, 2021. The *Dorsey* suit was settled and dismissed on October 21, 2021. Plaintiffs' legal malpractice action regarding the *Foley* and *Dorsey* suits against Defendants commenced on January 29, 2021, in state court, but a tolling agreement was stipulated by the parties by which Plaintiffs dismissed the state court action and refrained from litigation the current issues until the completion of the *Foley* and *Dorsey* suits. Plaintiffs did this as they were unable to fully realize whether Defendant's conduct constituted malpractice until the completion of the *Foley* and *Dorsey* cases occurred. In order to determine the full extent of the legal malpractice, misrepresentation, and fraudulent actions of Defendants, it was essentially necessary for Plaintiffs to continue litigating the claims to fully realize the malpractice, misrepresentation, and fraud that occurred.

Defendants argue that Plaintiffs cannot claim incapability or lack of resources as a factor to exert the escape clause. While Defendants are correct in this regard, it is in fact indicative of Plaintiff's inability to commence these proceedings until the *Foley* and *Dorsey* suits concluded. For at least some length of time, the Underlying Suits to this matter were simultaneously litigated by Defendants. This in itself demonstrates Plaintiffs' ability to maintain simultaneous claims. However, it was necessary for Plaintiffs to conclude the *Dorsey* and *Foley* cases in order for Defendants' malpractice, fraud, and misrepresentation to be fully realized. Defendants are misguided in their interpretation of the escape clause. The series of events in the Underlying Suits qualify as substantial factors limiting Plaintiffs' fair opportunity to litigate the current suit. Defendants attempt

to divert attention from their own injustices towards Plaintiffs does not preclude the application of the escape clause.

**C.    Difference in limitations periods materially alters Plaintiffs' ability to bring a claim**.

The statute of limitations for a legal malpractice claim is one year. *See* Ohio Rev. Code. §2305.117(A).   In contrast, the statute of limitations for legal malpractice in Minnesota is six years. Minn. Stat. § 541. 05(5); *Antone v. Mirviss*, 720 N.W.2d 331 (Minn. 2006). As previously discussed, Minnesota law should apply either by invalidation of the choice-of-law provision in the engagement agreement or by application of the escape clause in the MUCLLA. Alternatively, should this court find that Ohio law applies, Plaintiffs' legal malpractice claims arising from the *Dorsey* and *Foley* suits accrued at the time the respective suits ended.

> ***a.*** *If Ohio law applies, Plaintiffs claims accrued within the statutory period.*

Plaintiffs' legal malpractice claims arising from the *Dorsey* and *Foley* suits accrued at the time the respective litigations concluded. Ohio Rev. Code § 2305.11(A) sets forth the limitations period in this case and provides that "[a]n action . . . for malpractice . . . shall be commenced within one year after the cause of action accrued . . ." This period begins to accrue on the happening of a "cognizable event" or termination of the attorney-client relationship for that particular transaction, whichever occurs later. *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989). In *Zimmie*, the Supreme Court held that a cognizable event is that event whereby the client discovers or should have discovered that his injury was related to his attorney's act or

24

non-act and the client is put on notice of a need to pursue his possible remedies against the attorney. *Id.*

Ohio courts have followed that it is not the possibility or remote chance that there has been malpractice that causes the claim for relief to accrue, but rather an actual adverse ruling that may constitute the cognizable event. For example, in *Vagianos v. Halper*, 76408, 2000 WL 1844752 (Ohio Ct. App. Dec. 14, 2000), the Court of Appeals of Ohio, Eighth District held that the possibility or remote chance that malpractice has occurred does not constitute a cognizable event. The Court of Appeals stated that "[T]he mere assertion of a defense does not establish that the defense has any merit, much less that counsel's substandard representation is responsible for the availability of the defense. If the defense were ultimately rejected, there surely would be no reason to treat its mere assertion as a cognizable event. To rule otherwise would result in a flood of unnecessary complaints filed by clients who, in order to preserve their right to file, felt compelled to sue their former attorneys every time an affirmative defense suggested the possibility of malpractice. A possibility or remote chance is not equivalent to a cognizable event." *Id. Citing to Cutcher v. Chapman (1991),* 72 Ohio App.3d 265, 594 N.E.2d 640; *See also Wozniak v. Tonidandel,* 73086, 1998 WL 685497 (Ohio Ct. App. Oct. 1, 1998) (plaintiff's action against defendant for malpractice accrued upon jury's finding that plaintiff had concealed and embezzled probate assets).

In the *Foley* case, the cognizable event occurred when the Court in that matter issued its Order for Summary Judgment on October 2, 2020. (Compl. ¶ 43). The Honorable Ronald A. Abrams ("Judge Abrams") acknowledged the admissibility of

expert reports when he issued his order granting partial summary judgment on September 19, 2019. However, the case became reassigned to the Honorable Judge James A. Moore (Judge Moore) on June 17, 2020. (Steffenson Decl. Ex. 3). After the reassignment, Plaintiffs disputed Judge Abrams's conclusions regarding expert testimony during a hearing for summary judgment.  (Steffenson Decl. Ex. 4).  Plaintiffs argued that the expert testimony of Thurow and McCart should be admitted.  (*Id.*). Plaintiffs argued that the experts retained should be allowed to testify, as their testimony would be the same as such that is contained in the affidavit and the reports. (*Id.*). It was not until Judge Moore dismissed these arguments on October 2, 2020, that the cognizable event or effect of Cathey's actions was notice or realized by Nielsen. Because of this, the cognizable event is October 2, 2020, the claim was brought well within the one-year accrual period. As such, the claims against Defendants with regard to the *Foley* suit are valid and not time barred.

Furthermore, the September 7, 2021, may also serve as the "cognizable event" for Plaintiffs' malpractice claims to accrue. As previously stated, it was not until Summary Judgment was granted on October 2, 2020 that any notice may have been put on Plaintiffs. However, an appeal was commenced immediately following the summary judgment order in order to preserve Plaintiffs' claims and revitalize the opportunity to include expert testimony. Because of this, Plaintiffs still had the potential opportunity to utilize Thurow's and McCart's testimony should the Court of Appeals agree with their analysis. It was not until the Court of Appeal's affirmation of the District Court's order

for summary judgment that the loss of expert testimony for Plaintiffs' claims in *Foley* was realized.

In the *Dorsey* case, the "cognizable event" giving rise to Plaintiffs' malpractice claims occurred on October 29, 2021 when plaintiffs settled the *Dorsey* suit and dismissed it with prejudice. The *Dorsey* court analyzed Nielsen's expert affidavit during its hearing on Dorsey and Eck's Motion for Summary Judgment and determined it to be insufficient for all claims except claims for attorneys fees. (Steffenson Decl. Ex. 2). While the judge conducted an analysis of the affidavit, she did not declare that the affidavit was entirely insufficient nor exclude it from the case. The expert witness was still going to testify at trial about the underlying malpractice.   Because of this, the extent of the malpractice could not have been understood until a definitive ruling on the legitimacy and sufficiency of the affidavit in the case at whole was determined. Because the case was settled and dismissed with prejudice, the affidavit's sufficiency was finally realized, which makes the date of settlement the "cognizable event" date for purposes of this suit.

### D.    Plaintiffs' claims regarding *Dorsey* and *Foley* are legitimate and valid.

According to Ohio law, "[A]n action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice ... regardless of whether predicated upon contract or tort." *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 5 F. Supp. 3d 922 (S.D. Ohio 2014) (quoting *Richardson v. Doe,* 176 Ohio St. 370, 372, 199 N.E.2d 878 (1964)). Although malpractice by any other name still constitutes malpractice, a litigant may assert claims

for, *inter alia*, fraud, breach of contract, and breach of fiduciary duty if the conduct underlying those claims is distinct from the conduct underlying the malpractice claim. *Davis*, 5 F. Supp. 3d at 922; *See also Pierson v. Rion*, 2010 WL 1636049, *2 (Ohio Ct.App.).

  a. *Breach of contract, breach of fiduciary duty, and fraud claims in the Dorsey and Foley suits are not time barred because Minnesota law should apply.*

As previously discussed, Minnesota law should apply either by invalidation of the choice-of-law provision in the engagement agreement or by application of the escape clause in the MUCLLA. Furthermore, Minnesota courts have reiterated the intertwined nature of legal-malpractice claims and breach-of-fiduciary-duty claims against attorneys. *Mittelstaedt v. Henney*, 954 N.W.2d 852 (Minn. Ct. App. 2021). Specifically, Minnesota courts have previously noted that "Minnesota law recognizes various legal theories of recovery related to attorney misconduct, including intentional fraud and misrepresentation, breach of contract, breach of fiduciary duty, and professional negligence." *Id.* (quoting *Noske v. Friedberg*, 713 N.W.2d 866, 875 (Minn. App. 2006), review denied (Minn. July 19, 2006).

Here, Minnesota law should apply to the breach of contract, breach of fiduciary duty, and fraud claims for the *Dorsey* and *Foley* suits. Minnesota law clearly delineates a difference between such claims and legal malpractice claims. Moreover, while the court in *Mittelstaedt* declined to extend such distinctions to breach of fiduciary duty claims, The Minnesota statute of limitations for a legal malpractice claim is six years. Minn. Stat. § 541. 05(5); *Antone v. Mirviss*, 720 N.W.2d 331 (Minn. 2006). Therefore, claims for

breach of contract, breach of fiduciary duty, and fraud as they relate to the *Dorsey* and *Foley* suits are valid.

>   b. *The breach of contract, breach of fiduciary duty, and fraud claims in the Dorsey and Foley suits are not time barred under Ohio law.*

In the alternative, Plaintiffs' claims regarding the *Foley* and *Dorsey* suits are valid and have not expired under Ohio's statute of limitations. It has been previously stated that a plaintiffs' legal malpractice claim commences within one year after the cause of action accrued. *See* Ohio Rev. Code § 2305.11(A). The accrual period begins after either a "cognizable event" or termination of the attorney-client relationship for that particular transaction, whichever occurs later. *Zimmie,* 43 Ohio St.3d at 538. The Ohio Supreme Court in *Zimmie* held that a cognizable event is one whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on *notice* of a need to pursue his possible remedies against the attorney (emphasis added). *Id.*

In *Vagianos v. Halper*, 76408, 2000 WL 1844752 (Ohio Ct. App. Dec. 14, 2000), the Court of Appeals of Ohio, Eighth District held that the possibility or remote chance that malpractice has occurred does not constitute a cognizable event. The court of Appeals stated that "[T]he mere assertion of a defense does not establish that the defense has any merit, much less that counsel's substandard representation is responsible for the availability of the defense. If the defense were ultimately rejected, there surely would be no reason to treat its mere assertion as a cognizable event. To rule otherwise would result in a flood of unnecessary complaints filed by clients who, in order to preserve their right

to file, felt compelled to sue their former attorneys every time an affirmative defense suggested the possibility of malpractice. A possibility or remote chance is not equivalent to a cognizable event." *Id. Citing to Cutcher v. Chapman*, 72 Ohio App.3d 265, 594 N.E.2d 640 (1991); *See also Wozniak v. Tonidandel*, 73086, 1998 WL 685497 (Ohio Ct. App. Oct. 1, 1998) (plaintiff's action against defendant for malpractice accrued upon jury's finding that plaintiff had concealed and embezzled probate assets).

As previously discussed, Plaintiffs' legal malpractice claims are not time barred because the accrual period began at the conclusion of the *Foley* and *Dorsey* suits. Because Ohio courts have recognized that claims for breach of contract, breach of fiduciary duty, and fraud that arise out of legal malpractice qualify as malpractice under Ohio's statute of limitations, these claims receive the same accrual period as Plaintiffs legal malpractice claims. Ohio courts require a client to be put on notice of alleged misconduct. *See Zimmie,* 43 Ohio St.3d at 538. During the representation, Cathey repeatedly assured Plaintiffs that he, Cathey, would claim responsibility for any missteps and failures. (Compl. ¶ 36).  Cathey's reassurances prevented Plaintiffs from being on notice that their claims would fail. It wasn't until the demise and conclusion of the *Foley* and *Dorsey* suits that Plaintiffs were officially put on notice. Furthermore, the effects of Cathey's breach of contract, breach of fiduciary duty, and fraud continued until the conclusion of the suits. In sum, because Ohio applies the one-year legal malpractice statute of limitations period to claims for breach of contract, breach of fiduciary duty, and fraud that arise out of legal malpractice, and because these claims did not accrue until the completion of the *Foley* and *Dorsey* suits, they are valid and not time-barred.

### III.    PLAINTIFFS' FRAUD CLAIMS ARE SUFFICIENTLY PLEAD AND VALID

#### A.    Pleading requirements for fraud claims.

In their brief, Defendants make an inquiry regarding the substantive law to be applied to Plaintiffs' fraud claims VII and VIII. Plaintiffs agree with Defendants that, with respect to choice of law analyses regarding these claims, this Court can apply Minnesota law to the fraud claims.

The elements of a fraud claim are (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance; (4) the representation caused reasonable reliance; and (5) pecuniary damages as a result of the reliance. *U.S. Bank N.A. v. Cold Spring Granite Co*., 802 N.W.2d 363, 373 (Minn. 2011). Pursuant to Fed. R. Civ. P. 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

In Minnesota, one making representations is held to this duty of care only when supplying information, either for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment. *Bonhiver v. Graff,* 311 Minn. 111, 122, 248 N.W.2d 291, 298–99 (1976). The Eight Circuit has held that circumstances such as time, place, and contents of false representations, as well as individuals making these representations, need to be alleged in order to plead a claim of fraud. *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc*., 61

F.3d 639, 644 (8th Cir. 1995). "Put another way, the complaint must identify the who, what, where, when and how of the alleged fraud*." United States v. St. Luke's Hosp., Inc*., 441 F.3d 552, 556 (8th Cir. 2006) (quotation omitted).

However, "Rule 9(b) does not require that a 'complaint be suffused with every minute detail of a misrepresentation.'" *McGregor v. Uponor, Inc.,* Civil No. 09–1136 (ADM/JJK), 2010 WL 55985 at *4 (D. Minn. Jan. 4, 2010) (quoting *Carlson v. A.L.S. Enters., Inc.,* Civil No. 07–3970, 2008 WL 185710 at *3 (D. Minn. Jan. 18, 2008)). Rather, the complaint must simply include enough detail to state the "core of [a plaintiff's claims] and the factual grounds on which the claims were based*. Commercial Prop. Investments, Inc. v. Quality Inns Intern., Inc*., 61 F.3d 639, 646 (8th Cir. 1995). "[w]rongful intent, as a state of mind, is rarely provided directly, e.g. by an admission of bad faith, but is normally established through circumstantial evidence." *Hoyt Properties, Inc. v. Prod. Res. Grp., L.L.C*., 736 N.W.2d 313 (Minn. 2007). Furthermore, "a legal statement in the form of an expression of opinion may still be actionable if it carries 'with it by implication the assertion that the facts known to the maker are not incompatible with his opinion or that he does know facts that justify him in forming it.'" Hoyt 736 N.W.2d at 318 (citing Restatement (Second) of Torts § 545 cmt. C (1977)).

The *Hoyt* case is particularly instructive to the fraud claim, as it involved similar issues of fraud related to the representations of a lawyer regarding abstract statements of law or pure legal theories or a mixed statement of law and fact may be actionable. As set forth by the *Hoyt* Court following the *Osterlund* case holding "if it amounts to an implied assertion that facts exist that justify the conclusion of law which is expressed" and the

other party would ordinarily have no knowledge of the facts" then it is actionable fraud.

Hoyt, 736 N.W.2d at 318, *See also Miller v. Osterlund*, 154 Minn. 495, 496, 191 N.W.

919, 919 (1923). The holding in Hoyt as well as the holding in Osterlund was consistent

with the Restatement (Second) of Torts.

> "A representation of law that is clearly a statement of opinion does not
> carry an implication of fact and is not actionable. *See* Restatement
> (Second) of Torts § 545 (1977). Thus, according to the Restatement, one
> who says, "`I think that my title to this land is good, but do not take my
> word for it; consult your own lawyer,'" cannot be reasonably understood
> as asserting any fact with respect to the title. *Id.* cmt. d. However, a legal
> statement in the form of an expression of opinion may still be actionable
> if it carries "with it by implication the assertion that the facts known to
> the maker are not incompatible with his opinion or that he does know
> facts that justify him in forming it." *Id.* cmt. c. For example, a statement
> that one mortgage has priority over another may imply an assertion that
> one was made before the other; and a statement that a corporation has the
> legal right to do business in a state may carry with it an assurance that it
> has as a matter of fact taken all of the steps necessary to be duly
> qualified.

Lastly, to the extent any claims of fraud are found deficient, Plaintiffs would respectfully

request the opportunity to amend the Complaint to more fully set forth their claims.

**B.    Defendant's argument illogically requests this Court to apply
multiple states' laws to different claims.**

Defendants have expressly admitted that Minnesota law applies to *Rambicure*

claims. First, the engagement agreement between Cathey and Plaintiffs does not have a

choice of law provision. Minnesota applies a choice of law rule whereby the forum state

law applies. *Whirlpool Corp v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) (when

jurisdiction is based in diversity, the forum state's choice of law analysis applies).

Defendants do not argue any choice of law as it pertains to Counts I-VI with respect to

*Rambicure*. Second, Defendants expressly admit that Minnesota law should apply to the *Rambicure* claims when they applied Minnesota law to their fraud analysis. Defendants have not argued Minnesota as the choice of law for the *Rambicure* claims, only for the *Foley* and *Dorsey* claims

Defendants' logic introduces a conflict of laws issue within itself. It is established that Minnesota law applies to the *Rambicure* claims. Should this court find that Ohio law applies to the *Foley* and *Dorsey* claims, it would then find itself in the problematic position of contemplating two different states' laws to claims that are inherently intertwined and brought before this court together. Not only is this illogical, but also arduous for all parties involved to monitor and separate laws and claims. Further, applying two would be extremely confusing for a jury.

### C.    Plaintiffs' fraud claims contained in the Complaint are valid.

The types of representations made by Cathey are fundamentally of the mixed statement of law and facts. Cathey made representations to Nielsen that implied that Cathey was aware of facts, facts that supported his representations. It was not a pure legal opinion, but rather a statement implying that facts existed that supported a legal opinion. These types of representations are actionable. *Hoyt*, 736 N.W2.d at 319, See *Osterlund*, 154 Minn. at 496, 191 N.W. at 919; Restatement (Second) of Torts § 545. These types of statements by individuals have been consistently found to be actionable *See, e.g., Davis v. Re-Trac Mfg. Corp.*, 276 Minn. 116, 118, 149 N.W.2d 37, 39 (1967) (affirming a jury's award of damages to a plaintiff who relied on a false representation of "past or existing material fact"). The comments and statements made in the Hoyt case were actionable.

There was no requirement that those statements be analyzed by an expert to discern the fraud.

The fraud claims contained in the Complaint are sufficiently plead to satisfy Fed. R. Civ. P. 9(b). Defendants' accusations to the contrary ignore the facts contained in the Complaint. Plaintiffs' fraud claims include enough detail to state the core of their claims and the factual grounds on which those claims were based. These claims include incorporation and reference to the above plead paragraphs. (Compl. ¶ 124, 128).

The complaint sufficiently demonstrates that Defendants misrepresented their experience in handling legal malpractice claims. "Expert testimony is generally required on the elements of the standard of care and its breach" in a legal malpractice suit. *Guzick v. Kimball*, 869 N.W.2d 49, 49 (Minn. 2015). The core issue in each of the Underlying Suits was the omission of expert testimony to satisfy the elements of legal malpractice. Plaintiffs notified Defendants of their previous experiences and voiced their concerns. (Compl. ¶ 12). Defendants assured them of their experience and promised they would not make the same mistakes and Plaintiffs' previous counsel had. (*Id.*). Defendants went so far as to assure Plaintiffs they would never miss a deadline. (Compl. ¶ 28).  Despite this, Defendants grossly mishandled the necessary expert testimony needed. (Compl. ¶ 34, 42). Specifically, Defendants filed a motion to extend the time for filing the required expert affidavit on January 14, 2019. (*Id.*). This motion was heard on January 30, 2019, and soon thereafter was denied due to the ample time Defendants had to prepare for and submit expert reports, yet failure to do so. (Compl. ¶ 32, 35, 37-38). Cathey advised Plaintiffs that if he was unable to obtain a favorable response from the judge regarding

the expert opinions, he would take responsibility and would remedy the situation with the court. (Compl. ¶ 36). However, this did not happen, and Plaintiffs were left abandoned by Defendants soon thereafter on April 25, 2019. (Compl. ¶ 39) (Steffenson Decl. Ex. 5).

Taken collectively, the facts stated above and in the Complaint sufficiently demonstrate Defendants' false misrepresentations and sustain Plaintiffs' claim for fraud. The Complaint, as described above in detail, outlines the timeliness of necessary filings and Defendants' assurances to Plaintiffs of their competency in completing deadlines for filing. (Compl. ¶ 12, 32, 36). Defendants attempt to distract the Court by calling for specific details about each claim. However, Plaintiffs "need only allege sufficient facts to state a claim." *Noske v. Friedberg*, 670 N.W.2d 740, 742 (Minn. 2003). It is clear that Plaintiffs encountered expert testimony issues in the suits which Defendants were hired to pursue. It is also clear that, among other things, Defendants made representations and assurances to Plaintiffs that similar issues would not be encountered again during their representation of Plaintiffs. However, Defendants failed to meet the expectation established by themselves, and in turn harmed Plaintiffs through their conduct. The Complaint clearly establishes the requisite facts to sustain Plaintiffs' fraud claims, and as such should not be dismissed.

## IV.   PLAINTIFFS' FRAUD CLAIMS SUPPORT ITS CLAIMS UNDER MINN. STAT. §§ 481.07 AND 481.071

Defendants argue that according to their analysis of Plaintiffs' claims for fraud, Counts IX-XII of Plaintiffs' Complaint also fail as a matter of law. However, Plaintiffs have furnished adequate evidence of fraud in their Complaint to satisfy their statutory

claims in Counts IX-XII. "[A]n attorney who, with intent to deceive a court or a party to an action or judicial proceeding, is guilty of or consents to any deceit or collusion ... shall be liable to the party injured in treble damages*." Schumacher v. Fed. Home Loan Mortg. Corp.,* CIV. 13-29 DSD/FLN, 2013 WL 3033746 (D. Minn. June 17, 2013), aff'd, 559 Fed. Appx. 595 (8th Cir. 2014). However, a plaintiff seeking damages allowed by these statutes must "specifically allege a claim of fraud as the underlying cause of action, in compliance with Fed.R.Civ.P. 9(b)." *Id. See Beardmore v. Am. Summit Fin. Holdings*, LLC, No. 01–948, 2001 WL 1586785, at *8 (D. Minn. Dec. 10, 2001) (citation omitted).

As detailed above, Plaintiffs have adequately provided evidence of fraud in their Complaint. Through their fraudulent misrepresentations, Cathey and Porter Wright intended to deceive Plaintiffs. Their assurances regarding their competency in handling multiple malpractice suits were false and done intentionally to lead Plaintiffs to believe something that was not true. Defendants' numerous false representations were done without regard to their truthfulness or falsity and were relied upon by Plaintiffs, as described in the Complaint and this memorandum. Because of this, Plaintiffs meet the requirements to recover treble damages pursuant to Minn. Stat. §§ 481.07 and 481.071.

## CONCLUSION

For the foregoing reasons Plaintiffs' respectfully request that the Court deny Defendants' motion in its entirety.

Dated: January 4, 2022                    HENNINGSON & SNOXELL, LTD.


                                          /s/Mark V. Steffenson
                                          Mark V. Steffenson (#178457)
                                          6900 Wedgwood Road, Suite 200
                                          Maple Grove, MN 55311
                                          Tel: (763) 560-5700
                                          Fax: (763) 560-0119
                                          Email:  msteffenson@hennsnoxlaw.com

                                          ATTORNEY FOR PLAINTIFFS