# Exhibit 21

27-CV-17-16371

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

STATE OF MINNESOTA             COUNTY OF HENNEPIN

DISTRICT COURT             FOURTH JUDICIAL DISTRICT

---

Jeffrey L. Nielsen,

            Plaintiff,

vs.

Dorsey & Whitney, LLP, *et al.*,

            Defendants,

and

Dorsey & Whitney, LLP,

            Counterclaimant,

vs.

Jeffrey L. Nielsen

            Counterclaim Defendant.

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

File No. 27-CV-17-16371
Kristin Siegesmund

---

       The above-entitled matter came on for a hearing on July 25, 2019, before the Honorable Kristin A. Siegesmund on Defendants' and Counterclaimant's Motion for Summary Judgment on Plaintiff's claims against Defendants Dorsey & Whitney, LLP and George Eck related to their representation of Plaintiff. [1]

       Attorneys Marc Steffenson and Karen Kingsbury appeared on behalf of Plaintiff and Counterclaim Defendant, Jeffery L. Nielsen. Attorneys Matthew Sloneker and Paul Peterson appeared on behalf of Defendant/Counterclaimant Dorsey & Whitney, LLP and George G. Eck (collectively "Dorsey").

       Based upon the hearing, the submissions of the parties, and the files and records in the case, the Court makes the following:

---

[1] Dorsey attorney Peter Lancaster was dismissed from the case by order of the court in January 2019. Nielsen's wife Susan Nielsen was dismissed from the counterclaims by order of the court in March 2018.

27-CV-17-16971

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

## ORDER

1. Dorsey's Motion for Summary Judgment is GRANTED in part and DENIED in part.

2. Count IV (fraud) and Counts V and VI (treble damage claims) are DISMISSED with prejudice.

3. Count I (malpractice/negligence), Count II (breach of contract) and Count III (breach of fiduciary duty) are not dismissed in regard to damage claims regarding fees paid to Dorsey or for which Dorsey claims are still owing.

4. Damage claims regarding fees paid by Chubb to Bassford Remele or settlement fees paid by Chubb are DISMISSED with prejudice.

5. Damage claims regarding fees paid to Foley & Mansfield or to Anthony Ostlund Baer & Louwagie are DISMISSED with prejudice

6. Damage claims regarding lost damages in the Federal Action or DPPA claim are DISMISSED with prejudice.

7. The attached Memorandum is incorporated into this Order.

**BY THE COURT:**

Siegesmund, Kristin
2019.10.18 13:25:51
-05'00'

The Honorable Kristin A. Siegesmund
Judge of District Court

Dated:   October 18, 2019

Clerks: 612-596-1085
        612-596-1072

2

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

# MEMORANDUM

## I.    Facts

This account of the facts takes them in the light most favorable to Nielsen, the nonmoving party. This case arises from Dorsey's representation of Plaintiff Jeffrey Nielson in three lawsuits and a criminal action. All of these actions were related to complaints Nielson had about political lawn signs being placed on his street in a public right of way. In the fall of 2010, Nielsen was unhappy with the placement of campaign signs on his residential street in Grant, MN. Nielsen's primary concern were the signs placed by City Councilperson Stephen Bohnen. Nielsen contacted George Eck, then a partner at Dorsey & Whitney, to assist him. Nielsen had hired Mr. Eck before. Dorsey requested that the candidates remove their signs.[2] When this did not work, Nielsen asked what legal action could be taken to address the campaign sign issue. A declaratory judgment action was considered. One of Nielsen's objectives was to be able to recover his attorneys' fees.[3]

**Criminal Action:** Before any legal action was taken by Dorsey on Nielson's behalf, a criminal complaint was brought against Nielson. On October 4, 2010, Nielson took down Bohnen's campaign signs and was taking the signs to Grant City Offices. Nielsen was followed by Bohnen's campaign volunteer Keith Mueller.[4] A confrontation ensued in a parking lot. As a result, Nielsen received a criminal citation for theft, disorderly conduct, and illegally entering a right of way on or about October 11, 2010.[5] That citation was issued by Washington County Deputy Terry Hyde.[6] Defendant Eck and attorney Eric Thole represented Nielsen in that case (the "Criminal Action"). Prior to trial, Eck successfully moved to dismiss the theft charge and the prosecutor dismissed the right-of-way charge.[7]

However, Nielsen was convicted of the remaining charge. In March 2011 a jury found Nielsen guilty of disorderly conduct. Nielsen did not appeal this conviction. In October 2012 he retained separate counsel, who moved unsuccessfully for post-conviction relief.[8] In a January 2019 order of this Court, Judge Petersen held that since Nielsen's criminal conviction has never been vacated, he

---

[2] First Amended Complaint ¶¶ 19-25.
[3] Nielsen dep. p. 26, Sloneker Aff. Ex 1.
[4] First Amended Complaint ¶ 28-31.
[5] First Am. Compl. ¶41
[6] Nielsen Decl., at 2.
[7] *Id.* at ¶ 67.
[8] First Am. Compl. ¶ 103. Nielsen did not argue that his conviction should be overturned because he received ineffective assistance of counsel. Instead, he sought post-conviction relief on the basis that the prosecutor had improperly withheld three emails that should have been disclosed.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

may not pursue malpractice claims against Dorsey for any conduct he alleges occurred in the course of the criminal case. Judge Peterson dismissed those claims from this action.

**The Mandamus Action:** On October 15, 2010, Dorsey commenced two actions on behalf of Nielsen. The first was an action to compel local authorities, including the City of Grant and council members, to enforce local zoning laws regarding campaign signs.[9] Before this action was started, in September 2010, Nielsen had gotten information from his consultant Tim Nelson and had contacted George Eck at Dorsey about how to get the signs removed. After the confrontation with Mueller, Nielsen contacted Eck to resolve the sign issue. Eck wrote a letter to Bohnen, demanding that he remove the signs.[10]

Prior to starting the Mandamus Action, Eck pointed out limitations to the proposed lawsuit. Dorsey gave Nielsen a memo on October 7, 2010, stating that most regulations regarding sign placement were preempted during an election year.[11] On October 9, 2010, after receiving the memo, Nielsen proposed bringing a blanket declaratory judgment action.[12] On October 12, 2010, Eck sent an email to Nielsen which said that according to Dorsey's research "we do not have the ability to use the private attorney general statute to attempt to recover fees" and in regard to standing "there appear to be significant hurdles to any claims."[13] And on October 14, 2010, Eck sent an email to Nielsen which expressed additional concerns, "Charlie is concerned that the two government defendants will simply say that they have broad discretion to allocate their limited resources to law enforcement as they deem necessary. That will [sic] among their defenses. I wanted to make sure that I have adequately expressed Charlie's reservations."[14] Despite these reservations that had been disclosed to Nielsen, the Mandamus Action and the Washington County Action were filed the next day.[15]

No expedited hearing was held prior to the November elections. Nielsen's wife had successfully asked her neighbors on October 19, 2010, to enforce a restrictive covenant in their neighborhood and the signs were taken down.[16] After the November elections the mandamus defendants argued that the case was moot. Dorsey argued that the case was capable of repetition and should be ruled on.

---

[9] The "Mandamus Action" is Washington County District Court File No. 82-CV-10-6692.
[10] First Am. Complaint ¶ 37.
[11] First Amended Complaint ¶ 38. Sloneker Aff. Ex. 4
[12] Sloneker Aff. Ex. 5: 10/9/10 email from Nielsen to Eck.
[13] Sloneker Aff. Ex. 6, First Amended Complaint ¶ 42; Nielsen dep. 30, Sloneker Aff. Ex. 1.
[14] Sloneker Aff. Ex 7.
[15] The Washington County Action was a verified complaint signed by Nielsen Sloneker Aff. Ex. 8.
[16] Sloneker Aff. Exs. 9, 10.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

At a hearing on June 17, 2011, the judge strongly expressed her belief that the case was moot and that Nielson should dismiss or she might issue sanctions. After that hearing, Eck told Nielsen that the hearing had not gone well and recommended to Nielsen that the claims be dismissed.[17] Nielsen did not agree to dismiss. Eck told Nielsen on June 18 that Dorsey could no longer represent Nielsen and withdrew as counsel.[18] Nielsen retained Tom Pahl of Foley & Mansfield to handle the case. At no point did Nielsen offer a mutual walk away or attempt to voluntarily dismiss.[19] The Mandamus Action was eventually dismissed four months later on October 19, 2011.

**The Washington County Action:** The second lawsuit that Dorsey commenced on Nielsen's behalf on October 15, 2010 was a state court action filed in Washington County against City Council candidate Stephen Bohnen, his campaign manager Keith Mueller and Washington County, numbered 82-CV-10-6694. The primary basis of this suit was Nielsen's belief that Bohnen and Mueller lied to the police and put pressure on the Washington County Sheriff to bring criminal charges against him. There were also allegations regarding the improper placement of the signs. The complaint alleged, among other things, malicious prosecution, nuisance, fraud, deprivation of civil rights under 42 U.S.C. § 1983, and civil conspiracy.[20] Eck had discussed filing this claim in Federal court but by mistake it was brought in state court.

In the Washington County Action Mueller brought a counterclaim for relief under Minnesota's anti-SLAPP statute in about April 2011[21]. Nielsen tendered the defense of this claim to his insurance carrier who retained Bassford Remele to represent him in May 2011. Bassford was able to get the anti-SLAPP claim dismissed and also successfully challenged Bohnen's claim that Bohnen had immunity against the claims made in the Washington County Action.[22]

Nielsen asked for and, on about February 4, 2011, was given a memo[23] about damages he could expect regarding malicious prosecution. The memo stated that because this was a civil suit he could not recover most of his attorney fees except for fees regarding the § 1983 action.[24] The memo

---

[17] Nielsen Dep. 21, 37-38, Sloneker Aff. Ex. 1.
[18] First Amended complaint ¶ 89. Sloneker Aff. Ex 16. Emails between Eck and Nielsen on June 18, 2010. See also Sloneker Aff. Ex 18, email from Eck to Nielsen 6/21/11.
[19] Nielsen Dep. 41-42, Sloneker Aff. Ex. 1.
[20] See Complaint in the "Washington County Action" File No. 82-CV-10-6694.
[21] See Kingsbury Aff. Ex. 16
[22] See Bradford Aff.
[23] The memo was written by Dorsey associate Charles LaPlante and is attached to the Amended complaint as Ex. D. along with related emails.
[24] Nielsen admits that he received this memo. Nielsen Dep. 30-31, Sloneker Aff. Ex. 1.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

also stated that he could not recover for his personal time spent on the litigation except for time he spent defending his criminal case. He would however be able to recover damage to reputation, mental anguish and humiliation in regard to the malicious prosecution case. Nielson complained on February 8, 2011, in an email "hearing last week that in fact I will not be able to recover the vast majority of my legal fees and now getting the jolt that I have no reasonable or likely damage claim whatsoever, was exactly that—a jolt."[25] Despite those areas in which damages were possible he made a similar complaint on March 3, 2011, "I have no meaningful means to recover damages, other than small, fractional legal fees attributed to my criminal defense" and asked for help to reposition himself. Eck responded on March 3, 2011, "I would be pleased to help, and ultimately not withstanding the initial cut at the research I have to believe that your damages will not be so limited."[26]

Eck agreed to stay discovery on February 28, 2011 until the criminal case was completed. Dorsey moved to amend the complaint in May 2011 to add abuse of process and assault claims. Two months after Dorsey had withdrawn from representation, on August 16, 2011 the court issued an order on this request to amend and on the defendants' motions.[27] The court did not allow Sheriff Hutton to be added as a defendant. The court dismissed the malicious prosecution and deprivation of civil rights claims because the results of the criminal action barred these claims by res judicata. The conspiracy claim was also dismissed. The court did permit some claims to continue and allowed an abuse of process claim against Bohnen and Mueller to be added.[28]

Nielsen retained new counsel and pursued the Washington County Action for three more years. Nielsen retained Tom Pahl of Foley & Mansfield and later Joseph Anthony of Anthony Ostlund Baer & Louwagie. On May 17, 2012 the court denied Bohnen's motion for summary judgment, finding that there were genuine issues of material fact whether Bohnen acted in good faith when he reported Nielsen to law enforcement. The judge found that Bohnen did not have immunity.[29] These denials of summary judgment were affirmed by the Court of Appeals. Prior to the summary judgment decision, on March 6, 2012, Pahl amended the complaint a second time asserting abuse of process,

---

[25] Ex. D to Amended Complaint.
[26] Sloneker Aff. Ex. 57 (contains both the March 3, 2011 email from Nielsen and Eck's response).
[27] Sloneker Aff. Ex. 36.
[28] See First Amended Complaint ¶ 98-99.
[29] Sloneker Aff. Ex. 38; See Judge Sipkins's decision in 27-CV-12-20870 dated 10/29/2018 Ex. H to Sloneker Affidvat filed in support of motion for Partial Summary Judgment.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

assault, and nuisance. On August 7, 2012, the court again refused to dismiss the claims against Bohnen.[30]

    In February 2014, Nielsen continued the case with Anthony despite a blunt assessment from Anthony that he saw "no clear path to a successful economic outcome in the continued prosecution of the case." Anthony advised that Nielsen could probably achieve a "walk away" but understood that Nielsen was not interested in that resolution, hoping instead "as you say, that moving forward may create an opportunity in the future that does not presently exist."[31] At no point with Pahl or Anthony did Nielsen offer a mutual walk away.[32] The Washington County Action ended on May 23, 2014 when Nielsen voluntarily dismissed the nuisance action and the court dismissed the abuse of process claim.[33]

    **Federal Action:** On June 16, 2011 Dorsey filed an action in Federal court on behalf of Nielsen against Bohnen and Mueller for violations of the Driver's Privacy Protection Act ("DPPA").[34] This was spurred by Nielsen; on June 6, 2011, he said to Eck in an email, "With all the damages claims rolling in I encourage you to file the privacy claim in Federal Court."[35] Nielson alleged that the defendants had improperly accessed personal data from motor vehicle records. Dorsey withdrew on June 30, 2011.[36] Nielsen continued the case with Tom Pahl. The Federal court dismissed the case in August 2011 for failing to state a claim because the complaint failed to allege facts that support a violation of the DPPA.[37]

    **Hennepin County Action:** Nearly a year and half after Dorsey had withdrawn, in October 2012, Bohnen brought his own claims against Nielsen, Eck, Dorsey & Whitney, and Foley & Mansfield in Hennepin County, File No. 27-CV-12-20870, essentially alleging that the three lawsuits had been brought to intimidate and harass him. The amended complaint alleged five causes of action: abuse of process in the Federal and Washington County Actions, malicious prosecution in the Federal and Washington County Actions and civil conspiracy. Nielsen again tendered his defense to his homeowner's insurance carrier, Chubb, which retained Bassford Remele to defend him against the

---

[30] Sloneker Aff. Ex. 37.
[31] Sloneker Aff. Ex. 47.
[32] Nielsen Dep. p.44, Sloneker Ex. 1.
[33] First Amended Complaint ¶ 104.
[34] Sloneker Aff. Ex. 29.
[35] Sloneker Aff. Ex. 28.
[36] Sloneker Aff. Ex 30.
[37] First Amended Complaint ¶ 95. *See* Judge Sipkins's decision in 27-CV-12-20870, Ex. H to Sloneker Affidavit filed 10/29/2018 in support of motion for Partial Summary Judgment.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

claims in this action as well as (as previously described) against the counterclaim brought in the Washington County Action. All of his defense costs were paid by Chubb. The case was stayed until the Washington County Action was completed.

On June 5, 2015, Judge Sipkins granted summary judgment in favor of Dorsey, Eck, Pahl, and Foley, dismissing all 5 claims against them. The court found that Bohnen had failed to prove an exception to attorney immunity, which protects attorneys from liability to third parties arising from employment as an attorney. An exception exists if the attorney acts fraudulently or maliciously, or otherwise commits an intentional tort. Defining "malice" as "the intentional doing of a wrongful act without legal justification or excuse," the court ruled that there was no evidence that the attorneys acted fraudulently, maliciously, or in bad faith to commit an intentional tort.[38] Judge Sipkins also found that the attorneys brought claims and made arguments that had a reasonable basis under the law.[39] Bohnen did not appeal this decision but reached a settlement with Dorsey.[40]

The remaining claims against Nielsen in the Hennepin County Action were settled in November 2015. As part of the settlement, Chubb and Son Insurance Company agreed to pay Bohnen $125,000 on behalf of Nielsen.[41] Judge Sipkins ordered that this settlement be unsealed.[42]

**Procedural History**

The procedural history of this case is lengthy. The court will review the procedural history relevant to this motion. The case was served in October 2016 on Dorsey & Whitney and George Eck. The First Amended Complaint was filed on October 12, 2017. The January 2019 Order for Partial Judgment dismissed all claims regarding the Criminal Action, which includes any claim that Dorsey committed malpractice in defending Nielsen in the Criminal Action.[43] The court also dismissed Count VIII for negligence against Mr. Lancaster.

The remaining claims against Dorsey & Whitney and Eck are: I, Malpractice/Negligence; II, Breach of Contract; III, Breach of Fiduciary Duty; IV, Fraud; V, Minn. Stat. § 481.07; and VI, Minn. Stat. § 481.071. The last two are treble damage clauses that apply to lawyers in certain situations involving deceit or collusion towards a party or towards the court in a legal proceeding. Both parties

---

[38] Sloneker Aff. in support of motion for partial summary judgement filed 10/29/18, Ex. H, p. 16.
[39] *Id.*
[40] *See* Order for Partial Summary Judgment, January 2019.
[41] First Amended Complaint ¶ 111.
[42] First Amended Complaint ¶ 120-121.
[43] However, the parties agree that any malpractice claims against Dorsey for bringing malicious prosecution claims in the Washington County Action have not been dismissed by the January 2019 Order.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

agree that these two statutory sections do not create their own cause of action but must be tied to another tort.

As set forth in Nielsen's Memorandum in Opposition to the current motion for Summary Judgment, Nielsen is now seeking damages for attorneys' fees paid to Dorsey in any of these cases and attorneys' fees paid after Dorsey's withdrawal which he claims were necessary to mitigate caused by Dorsey's conduct.[44]  Specifically Nielson is seeking as compensatory damages:

    a.   $28,054 for Legal Expenses Paid to Dorsey[45];

    b.   Forgiveness of $130,000 outstanding bill claimed by Dorsey;

    c.   $135,088 for Legal Expenses Paid to Foley;

    d.   $119,216 for Legal Expenses Paid to Anthony;

    e.   $353,083 for Legal Expenses Paid to Bassford;

    f.   Settlements paid to Mueller and to Bohnen by Chubb; and

    g.   $15,000 in liquidated damages resulting from the DPPA claim asserted in the Federal Action.

Nielsen is also seeking treble damages under the two statutory provisions.  Nielsen is not claiming any damages for loss of reputation, emotional distress, or loss of earnings.

Dorsey counterclaimed for breach of contract, alleging that Nielsen and his wife, Susan Nielsen, had failed to pay $130,000 for legal services.  Nielsen's wife was dismissed from the counterclaims by order of the court in March 2018.

Dorsey has now filed a motion for summary judgement on all the remaining claims, making arguments that fall into four categories.

    1.   In regard to the treble damage statutes in Counts V and VI,[46] Dorsey argues that these claims are barred by a two year statute of limitations applicable to actions "upon a statute for penalty or forfeiture" pursuant to Minn. Stat. 541.07(2).  In addition, Dorsey argues

---

[44] See Opp. to Summary Judgment p. 30.  Because of the dismissal of claims related to the Criminal Action, Nielsen is no longer seeking as damages the fees he paid to Erick Thole and Charles Hawkins to defend him in the Criminal Action.  Also, because his claims against Mr. Lancaster have been dismissed, Nielsen is no longer seeking fees regarding his fight with the StarTribune over disclosure of a confidential settlement agreement.

[45] Of course any claim for fees incurred by Dorsey in regard to defending the criminal case cannot be challenged because of Judge Peterson's Jan 2019 Order.  Dorsey argues that Nielsen admitted that part of these claimed fees are actually fees related to the criminal case.  This is a fact issue which the court cannot rule on at this time.

[46] The parties agree that these statutes do not provide for an independent cause of action

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

that there is no evidence of deceit or collusion, which is a precondition to the application of the statute.

2. As to Fraud (Count IV), Dorsey argues that there is no evidence that Dorsey made a false representation of a past or existing material fact susceptible of knowledge, and there is no evidence of intent to deceive, reliance or damages because of any misrepresentations.

3. Dorsey argues that all the remaining claims fail because Nielsen cannot establish that any of Dorsey's actions caused Nielsen's damages. Dorsey argues that Nielsen's subsequent decision to hire new attorneys to continue the litigation was an intervening cause, that many claimed damages were not a proximate result of any of Dorsey's actions, and that there is no expert affidavit on causation as required for a claim of legal malpractice.

4. In regard to Counts I (malpractice/negligence), II (breach of contract) and III (breach of fiduciary duty), Dorsey argues that Nielsen cannot show that he would have obtained a better result absent Dorsey's alleged negligence.

## II. Analysis

### a. Summary Judgment Standard

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746, 753 (Minn. 2005). The moving party has the burden of showing that there is no issue material fact. *Id.* at 754. "However, the nonmoving party cannot rely on the pleadings alone to defeat a summary judgment motion but instead must produce specific facts which establish the existence of a genuine issue for trial." *Krogness v. Best Buy Co.*, 524 N.W.2d 282, 285 (Minn. App. 1994). A genuine issue of material fact is more than a mere "metaphysical doubt"; the nonmoving party's evidence must be sufficiently probative that it would allow reasonable people to draw different conclusions about the essential elements of the claim. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

### b. Elements of a claim under Minn. Stat. §§ 481.07 and .071

Minn. Stat. §§ 481.071 and .071 do not create independent causes of action. *Baker v. Ploetz*, 616 N.W.2d 263, 270 (Minn. 2000) (explaining, as dicta in a decision about whether section 481.071 applied outside of an action or judicial proceeding, that the predecessor statute to section 481.071 had been held not to create a new cause of action); *Love v. Anderson*, 61 N.W.2d 419, 422 (Minn. 1953) ("[Section 481.07] deals with penalties for deceit or collusion. It does not create a new cause of action. The common law gives the right of action and the statute the penalty."). To be entitled to treble

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

damages under the statutes, a party must prove that an attorney engaged in "deceit or collusion." Minn. Stat. §§ 481.07, .071.

Nielsen's only cause of action that involves deceit or collusion is his claim for fraud—Courts I, II, and III, for malpractice/negligence, breach of contract, and breach of fiduciary duty, do not require that Eck or Dorsey engaged in any deceit or collusion, and thus are not a basis for an award of treble damages under the statutes. *See Love*, 61 N.W.2d at 316-17 (holding that a claim under section 481.07 was properly dismissed where there was no allegation of reliance on fraud). Nielsen's claim for treble damages under section 481.07 and .071 can survive summary judgment only if his claims for fraud survive summary judgment. Without the underlying fraud claim, there can be no recovery of treble damages.

Thus, the appropriate first question is whether Nielsen has produced sufficient evidence supporting his fraud claims to create a genuine issue of material fact as to whether Eck and Dorsey committed fraud against him.

### c. Fraud Claims

Under Minnesota law, a claim for fraud has five elements:

> (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance.

*U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011).[47] The parties' main dispute is over whether Eck's statements can satisfy the first element of the test, because they constituted either predictions of future facts or legal opinions, neither of which is actionable in fraud because neither is susceptible of knowledge. *Martens v. Minn. Min. & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000). Even promises are not a basis for a fraud claim, unless the claimant can prove that the

---

[47] There is also an 11-element version of fraud, which requires:

> [T]hat [the] defendant (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation [and] (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

*Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002) (alterations in original) (quoting *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992)). The two tests appear to require the same things, with the only difference being how they break out each of the requirements.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

promisor "had not intention to perform at the time the promise was made." *Id.* (quoting *Vandeputte v. Soderholm*, 216 N.W.2d 144, 146 (Minn. 1974). The parties also dispute whether Nielsen reasonably relied on any of Eck's statements. *See Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995) ("[E]stablishing the reasonableness of the reliance is essential to any cause of action in which detrimental reliance is an element."). And they dispute whether Nielsen suffered any damages to the extent that he did rely on the statements.

In his memorandum to this Court, Nielsen identifies nine statement that he claims constituted fraud. The Court will analyze each of the allegedly fraudulent statements individually.

### i.   "Disregard the research"

In his deposition, Nielsen testified that after LaPlante's research on damages was sent to him, he confronted Eck, who told him "Disregard the research. Your damages will not be that limited."[48] There are a number of reasons that this was not a fraudulent misrepresentation.

First, it is a legal opinion, about the likelihood that Nielsen's claims for damages would succeed. *See Hoyt Properties, Inc. v. Production Resource Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007). Nielsen, relying on *Hoyt*, argues that this was a fraudulent misrepresentation because it implied the existence of facts supporting the opinion even though such facts did not exist. But Nielsen does not identify what those facts would be, he simply says that the statement falsely implied certain facts. *Nicollet Restoration*, 533 N.W.2d at 848.

Second, whatever false facts the statement might have implied would have been known to Nielsen. Unlike in *Hoyt*, where the attorney committing fraud provided a legal opinion that implied facts unknown to the victim, the facts supporting Eck's legal opinion are those alleged by Nielsen in his complaint. If Eck's opinion implied false facts, Nielsen could not have reasonably relied on them, because he had independent knowledge of the facts of the complaint.

Third, the statement concerns what would happen if Nielsen were to win his case; it is a prediction, not a statement of past or present fact. Nielsen's claim that this statement was a fraudulent misrepresentation fails as a matter of law. *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 369 (Minn. 2009) (holding that a prediction about the future performance of a paint product was not actionable in fraud).

Finally, it is clear that Nielsen's deposition testimony is referring to an email exchange that took place between Nielsen and Eck. Those emails are part of the record on summary judgment, and

---

[48] Sloneker Aff. Ex. 1, Nielsen Deposition 30:20-31:9.

27-CV-17-4639

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

their contents do not match Nielsen's summary of them. In fact, Eck said that "ultimately notwithstanding the initial cut at the research I have to believe that your damages will not be so limited."[49] That version of the statement makes it even clearer that this was a prediction based on a belief, not a factual statement about damages, and thus is not actionable in fraud.

### ii. "Very unlikely to win" nondisclosure

Next, Nielsen argues that Eck committed fraud by not disclosing to him an email from LaPlante which opined that they were "very unlikely to win" against the City of Grant.

"For nondisclosure to constitute fraud, 'there must be a suppression of facts which one party is under a legal or equitable obligation to the other, and which the other party is entitled to have communicated to him.'" *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 190 (Minn. 1999).

Initially, there is a factual problem with Nielsen's claim. LaPlante's phrase "very unlikely to win" was used in response to the statement of an attorney for the City of Grant who pointed out that the City had discretion over the enforcement of its own ordinances, making mandamus unlikely to succeed. LaPlante sent the email that Nielsen claims should have been disclosed to him on October 18, 2010.[50] But four days earlier, on October 14, 2010, Eck had expressed LaPlante's concern about this issue to Nielsen in an email.[51] While the email to Nielsen did not contain the phrase "very unlikely to win," it did accurately describe the defense that LaPlante believed would be successful. *Id.* Thus, even if Eck did not disclose LaPlante's opinion about the claim, he did disclose the underlying legal analysis. Nielsen cannot maintain a claim for fraudulent nondisclosure in light of uncontradicted evidence that the information he claims should have been disclosed was disclosed to him.

Further, because "very unlikely to win" is quite clearly an expression of opinion about future events, even if it was not disclosed, that nondisclosure would not be actionable in fraud because no facts were suppressed. *Cf. Witzman*, 601 N.W.2d at 190.

### iii. Agreed to send email about dismissal of mandamus claim

Nielsen also argues that Eck engaged in fraud when he said that he would send an email to the attorney for the City of Grant agreeing to settlement of the mandamus claim in March 2011, but never did so. Misrepresentation of a present intention may amount to fraud, but there must be evidence that "the promisor had no intention to perform at the time the promise was made," and it is

---

[49] Sloneker Aff. Ex. 57.
[50] Kingsbury Aff. Ex. 6.
[51] Sloneker Aff. Ex. 7.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

insufficient to merely show that "the represented act or event did not take place." *Vandeputte*, 216 N.W.2d at 147.

Nielsen does not cite any record evidence for this claim. While Eck's agreement to send the email is in the record,[52] the purported statement by the attorney for the City of Grant that he had not received any settlement emails does not appear to be anywhere in the record. Even if it is in the record, to successfully show that Eck's promise to send the email was fraud, Nielsen would need to prove that Eck did not intend to send the email at the time that he said he would do it. *See Vandeputte*, 216 N.W.2d at 147. Other than the fact that the email was not sent—which, to repeat, is a fact that does not appear to be part of the record—there is no evidence that would tend to establish Eck's intent at the time he said that he would send the email. His claim therefore fails as a matter of law.

### iv.   Legal action could be taken quickly and inexpensively

Nielsen next argues that Eck committed fraud by telling him that he could take legal action "quickly and inexpensively" on October 9, 2010. While Nielsen's brief puts this language in quotes, he does not cite to the record, and it is not clear where the origin of that quotation is. The record does show that Nielsen asked a question with similar language on October 9, 2010, by email.[53] But Eck responded only to a follow-up question that Nielsen asked, regarding Nielsen's proposed litigation strategy, saying that he would send Nielsen a "bullet point email with the law," and saying that while they could file and serve the suit in two days, as Nielsen asked, they would be very unlikely to be able to get into court on that day. *Id.* Eck did not directly answer whether quick and inexpensive legal action could be taken. And even if Eck's email does suggest that legal action could be taken quickly and inexpensively, it would appear to be both a non-actionable prediction and a non-actionable opinion. *See Valspar*, 764 N.W.2d at 369 (denying claims that a representation about the future performance of paint was actionable because it was a prediction of future results). This is particularly true in light of the fact that "quick" and "inexpensive" are relative terms, and appear to be the sort of "general and indefinite" statements that are not representations of fact. *See Martens*, 616 N.W.2d at 747.

### v.   Claims will not trigger an insurance defense

Nielsen's next claim is that Eck committed fraud by stating that the claims would not trigger an insurance defense. Specifically, Eck told Nielsen in an email that he was "good to go."[54] This

---

[52] Sloneker Aff. Ex. 14.
[53] Sloneker Aff. Ex. 5.
[54] Sloneker Aff. Ex. 1, at 202:15-18.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

statement is, on its face, a non-actionable statement of legal opinion. *See Martens*, 616 N.W.2d at 747. But Nielsen argues that, like the statement in *Hoyt*, it implicitly misrepresented what Bohnen and Mueller's insurance would or would not cover, even though Eck did not have such knowledge. *See Hoyt*, 736 N.W.2d at 319. However, Eck's statement is still distinguishable from that in *Hoyt*.

First, in Nielsen's version of events, Eck made it clear that he was relaying the opinion of an insurance expert, Skip Durocher.[55] Thus, the statement did not assert any personal knowledge of Bohnen or Mueller's insurance coverage, but instead was a representation as to the belief of another about those facts. To have fraudulent intent, a statement must either be "known to be false or . . . asserted as of the representer's own knowledge when he or she does not in fact know whether it is true or false." *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986). Because Eck was merely relaying Durocher's statement, Eck was not asserting that he had personal knowledge of its truth. And the fact that Eck turned to an expert similarly indicates that he did not know whether the statement about insurance coverage was true or false. Thus, the question is not of Eck's state of mind, but of Durocher's. And Nielsen does not assert that Durocher had any fraudulent intent.

The insurance statement is distinguishable from *Hoyt* in another way. The statement at issue in *Hoyt* implied facts about, among other things, the structure of a corporation, its capitalization, and its observation of formalities, all of which existed at the time the statement was made. 736 N.W.2d at 318-19. The statement that Nielsen's lawsuit would not trigger an insurance defense implied facts about the sort of insurance claim that Mueller or Bohnen would file, and whether their insurance companies would defend on their behalf. But there had not yet been an insurance claim, nor a decision on the claim. Thus, to the extent the statement implied facts, they were future facts, not yet in existence, and therefore not actionable in fraud. *Valspar*, 764 N.W.2d at 369.

### vi.    Nielsen could recover attorney fees

Nielsen next asserts that Eck told him that he could recover "any expended legal expense" if his claims were successful. This statement is also not actionable in fraud.

First, it is both a legal opinion and an opinion about future events—it states the opinion that the law would Nielsen to recover, in the future, if his claims succeed. Thus, it is not false as to any knowable fact, and cannot constitute fraud. *Martens*, 616 N.W.2d at 747.

Second, this statement also fails to be actionable in fraud because the falsity of the statement was not the proximate cause of Nielsen's claimed injuries. To be actionable in fraud, the false character

---

[55] Sloneker Aff. Ex. 1, at 202:9-18, 224:16-25, 226:11-17; *see also* Kingsbury Decl. Ex. 31, at 121:5-10

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

of the statement, not merely the statement itself, must be the cause of the asserted damages. *Bryan v. Kissoon*, 767 N.W.2d 491, 493 (Minn. App. 2009).

In *Bryan*, a homeowner was selling a house that had suffered a house fire, and also had unrelated pre-existing structural damage. 767 N.W.2d 491, 493 (Minn. App. 2009). The seller knew of the fire but not of the structural damage. *Id.* at 496. The seller fraudulently failed to disclose the fire. *Id.* at 495. The buyer later incurred costs in repairing the pre-existing structural damage, and sued. *Id.* at 493-94. The court held that the fraudulent nondisclosure was a but-for cause of the injury—the buyer would not have bought the house if the seller had told the truth—but not a proximate cause of the injury. *Id.* at 496. Because the injury arose out of a condition of which the seller was unaware, rather than out of the condition that the seller knew about but failed to disclose, the buyer could not bring an action in fraud. *Id.*

Nelson argues that he would not have brought the suit had he been aware that attorney fees were unavailable. But the unavailability of attorney fees did not cause his injury, because he did not succeed in his lawsuit. His injury, to the extent it exists, was caused by the fact that his substantive claims failed, not by the fact that, had his substantive claims succeeded, he still would not have been able to recover attorney fees.

### vii.   Eck would file claims against Washington County in Federal Court

Nielsen's seventh identified misrepresentation is that Eck agreed to file certain claims in federal court, rather than in state court, but then filed all of those claims in state court. He argues that this constituted fraud. But Nielsen does not identify any evidence suggesting that, when Eck said he would file in federal court, he lacked the intent to do so. Because a misrepresentation must concern a past or present fact, Eck's promise to file in federal court can only be fraudulent if he lacked the intent to do so at the time that he made the promise. Without proof of the absence of such intent, when the promise was made, Nielsen's claim fails as a matter of law. *See Martens*, 616 N.W.2d at 747 ("Where a representation regarding a future event is alleged . . . an additional element of proof is that the party making the representation had no intention of performing when the promise was made . . . .").

Nielsen also argues that Eck committed fraud when he told Nielsen that it was too late to dismiss the Washington County Action and refile it in federal court. To survive summary judgment, a fraud claimant must produce evidence of pecuniary damages resulting from reliance on the fraudulent misrepresentation. *U.S. Bank*, 802 N.W.2d at 373. But Nielsen does not claim that he would have achieved a different result if the Washington County Action had been filed in federal

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

court; in fact, the theory of his malpractice claims in this case is that the Washington County Action lacked merit and should not have been brought in the first place. Thus, even if Eck's statement that the Washington County Action could not be dismissed and refiled was a misstatement of fact, Nielsen's inability to identify any damages caused by that misstatement means that his claim fails as a matter of law.

### viii.    Claims were non-meritorious

The eighth item Nielsen identifies as a misrepresentation is the assertion that the claims brought by Eck lacked merit. But it is entirely unclear how this even alleges a misrepresentation to Nielsen, and Nielsen does not provide any explanation. The complaints in the Washington County Action were verified—Nielsen himself affirmed that the factual assertions contained in them were true.[56] And the petition for a writ of mandamus relied on the complaint in the Washington County Action for its statement of facts.[57] Since Nielsen could not have reasonably relied on any factual misrepresentations in the complaints that he swore were true, his fraud claim is unsustainable. *Nicollet Restoration*, 533 N.W.2d at 848. Additionally, even if the legal theories contained in the complaints lacked merit, those theories were not representations of fact made to Nielsen, and Nielsen presents no evidence suggesting that Eck intended Nielsen to rely on legal arguments that were directed to the court. *See U.S. Bank*, 802 N.W.2d at 373 (stating that intent to cause reliance is an element of fraud).

### ix.    No need to wait until after criminal trial to bring a malicious prosecution claim

Finally, Nielsen points to statements made by Eck in response to Mueller's motion to dismiss the malicious prosecution case. Specifically, Eck told Nielsen in an email that

> Making [a] false statement to officers to have an innocent man charged must be actionable. It would be poor public policy to decide summarily that Mueller and Bohnen—who are clearly acting together to get Nielsen charged—are telling the truth and Nielsen is not. Making an innocent man wait until the criminal process runs its due course to seek civil justice is not required. That is not the law nor should it be the law.[58]

Nielsen admits that some of these statements—the "must be actionable" and "poor public policy" sentences—are legal opinions. But he asserts that the others—the "making an innocent man wait" and "that is not the law" sentences—are factual misrepresentations. However, the two statements

---

[56] Sloneker Aff. Exs. 8, 22, 26.
[57] Kingsbury Decl. Ex. 5.
[58] Kingsbury Decl. Ex. 8.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

that Nielsen claims are actionable simply state what Eck believes the law is. They are therefore nonactionable "abstract statements of law or pure legal opinions." *Hoyt*, 726 N.W.2d at 318. Even if they are misstatements of the law, Nielsen and does not argue, and has provided no authority suggesting, that a pure misstatement of law can constitute fraud.

Further, the context of these statements shows that they were not even representations to Nielsen about what the law is; rather, they constituted a rough draft of the arguments Eck intended to make to the court against dismissal of the malicious prosecution action.[59] The email begins with Eck stating that he "wanted to send some preliminary ideas on the motion to dismiss."[60] And immediately after the statements that Nielsen claims are fraudulent, Eck writes "These are some ideas for our response."[61] Eck's email is an outline of potential arguments that Eck was considering. In context, Eck's email is not a representation to Nielsen of what the law is, but rather a representation to Nielsen of what he intends to argue that the law is. Because of the contingency inherent in legal argument—that is, the ever-present possibility that a legal theory will be rejected by the court—it is not reasonable to rely on arguments made to a court as if they are definitive statements of what the law will be held to be. Therefore, even if these statements could be actionable in fraud, Nielsen cannot show that he reasonably relied on them. His claim therefore fails. *See Nicollet Restoration*, 533 N.W.2d at 848 (requiring that reliance be reasonable).

Viewing the evidence in the light most favorable to Nielsen, he cannot meet the elements of a fraud claim for any of the statements that he claims are fraudulent, and therefore his fraud claim, Count IV, should be dismissed. Because Nielsen's fraud claim cannot be sustained, the two treble damage claims which are dependent on the fraud claim must also be dismissed.[62]

Because the court has dismissed the treble damage claims, the issue of the statute of limitations is moot.[63]

---

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] Although much of the court's analysis focused on the first factor for a fraud case, whether the statements were of a past or existing material fact susceptible of knowledge; the court finds that there is no evidence that Eck acted with intent to deceive, which is a necessary element for a treble damages.

[63] It appears most likely that the six-year limitations period would apply because case law has held that two elements must exist for an action to be considered "upon a statute for a penalty or forfeiture." Minn. Stat. § 541.07(2) (2018); *McDaniel v. United Hardware Distrib. Co.*, 469 N.W.2d 84, 86-87 (Minn. 1991). The first element is that the action must address a public wrong. *McDaniel*, 469 N.W.2d at 86-87. This element is likely met, because the treble damages statutes both create misdemeanors. Violation of those statutes is therefore by definition a wrong against the state, which has an interest

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

### d. Causation

In addition to the fraud and statutory treble damages claims addressed above, the remaining claims alleged by Nielsen's First Amended Complaint include negligence, breach of contract, and breach of fiduciary duty. Each of these claims requires Nielsen to prove that Dorsey's conduct proximately caused damages. *Noske v. Friedberg*, 670 N.W.2d 740, 742-43 (Minn. 2003) (as to legal malpractice/negligence); *Border State Bank v. Bagley Livestock Exch., Inc.*, 690 N.W.2d 326, 336 (Minn. App. 2006) (as to breach of contract); *TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 434 (Minn. App. 2017) (as to breach of fiduciary duty).[64] In this case, Nielsen's claim for damages must be limited to the fees paid to Dorsey because he cannot establish that Dorsey's conduct proximately caused any of his other asserted damages.

### i. Expert Affidavit

Dorsey's first argument is that Nielsen has failed to produce an expert affidavit that adequately explains how any malpractice by Dorsey caused Nielsen's injuries.

"A prima facie case of legal malpractice requires a plaintiff to establish four things: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; [and] (4) that but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action." *Guzick v. Kimball*, 869 N.W.2d 42, 47 (Minn. 2015) (quoting *Blue Water Corp., Inc. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983)). In some circumstances the court has modified the fourth but-for element to "but for defendant's conduct, the plaintiff would have obtained a more favorable result".[65]

---

in regulating lawyers to ensure the public's trust and confidence in the legal system. The second element is that the penalty be "unrelated to the extent of actual damages," such that the penalty would be awarded even if there were no damage. *Id.* The second element cannot be met here, as treble damages can only be calculated if a plaintiff has some actual damages. Thus, it does not appear that the two-year statute of limitations applies to actions under sections 481.07 and .071.

[64] Note, however, that a plaintiff bringing a claim of breach of fiduciary duty against an attorney need not prove that the breach caused damages in order to recover all or part of the fees paid to that attorney. *See Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982) (holding that a breach of a fiduciary duty by an attorney results in forfeiture of fees, even if no damage is proved); *see also Gilchrist v. Perl*, 387 N.W.2d 412, 417 (Minn. 1986) (holding that, where there is a breach of fiduciary duty, but no bad faith and no actual damages, the amount of a fee forfeiture was to be scaled in accordance with the factors for calculating punitive damages in Minn. Stat. § 549.20, subd. 3).

[65] In an action for legal malpractice arising out of representation in transactional matters, the fourth element of the cause of action is modified to require a plaintiff to show that, but for the defendant's conduct, the plaintiff would have obtained a more favorable result in the underlying transaction than the result obtained. *Jerry's Enterprises, Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 819 (Minn. 2006)

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

In a legal malpractice case, an expert affidavit is generally required to establish the applicable standard of care and the breach of that standard. The affidavit must address the aspects of duty and breach, unless the conduct can be evaluated by a jury in absence of expert testimony. *Guzick*, 889 N.W.2d at 49; Minn. Stat. § 544.42 (describing the affidavit as being used "to establish a prima facie case"). The Minnesota Supreme court recently clarified that the same standard applies for the other elements of a malpractice case—an expert affidavit setting forth facts and opinions is needed for proximate cause and "but for" causation, unless a jury would be capable of evaluating that without expert testimony. *Guzick*, 889 N.W.2d at 50.[66]

In *Guzick*, the court rejected an expert affidavit as inadequate when it simply implied that the defendant's actions were the proximate cause of plaintiff's injuries. *Id.* at 51. Identifying the standard of care, the manner in which the defendant breached the standard, and the injuries suffered by the plaintiff was insufficient to establish proximate cause. *Id.* "A summary requires more than an implication; rather, a sufficient summary explicitly explains the expert's opinion on how the negligent acts were the proximate cause of the injury. Here, the affidavit does not at all detail the expert's theory of causation. It only states that Kimball's negligent acts 'caused damages.'" *Id.* An expert affidavit must provide meaningful information beyond conclusory statements. The affidavit must identify how the failure to satisfy the standard of care caused the injury. *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 219 (Minn. 2007).

Dorsey does not challenge that the expert, Dr. Friedman, set forth an adequate basis on the standard of care and the specific breaches of that standard of care. Dorsey challenges the adequacy of the affidavit in regard to proximate cause, claiming that the affidavit only provides conclusory statements that the breaches caused injury rather than meaningful information about how the breaches of the standard of care led to Mr. Nielsen having to litigate for years and incur hundreds of thousands of dollars prosecuting his cases.

Friedman does provide an explanation for the damage claim regarding Dorsey's fees. On page 19 of his report, Friedman states that if counsel breaches his fiduciary duties there is a forfeiture of

---

[66] *See also Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 219 (Minn. 2007) ("[T]he minimum standards for an affidavit of expert disclosure, sufficient to satisfy the 180-day requirement, must be that the affidavit provide some meaningful information, beyond conclusory statements, that (1) identifies each person the attorney expects to call as an expert; (2) describes the expert's opinion on the applicable standard of care, as recognized by the professional community; (3) explains the expert's opinion that the defendant departed from that standard; and (4) summarizes the expert's opinion that the defendant's departure was a direct cause of the plaintiff's injuries.").

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

compensation, even if there is no injury. This explanation is insufficient as a matter of law, because it does not describe proximate cause between a breach and an injury, but instead describes an equitable remedy that is available even if there is no injury. *See Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982) (holding that a breach of a fiduciary duty by an attorney results in forfeiture of fees, even if no damage is proved). If the remedy does not depend on the presence of an injury, then describing when it becomes available does not describe how the particular conduct that triggers it causes an injury. Nonetheless, the causal relationship alleged is sufficiently straightforward with respect to Dorsey's fees that no expert report on the element of proximate cause is required. Nielsen's claims against Dorsey are based on the theory that, had he been properly informed about the law, he would not have brought the suits. Nielsen argues that, if he had not brought the suits, he would not have paid Dorsey for its litigation of the suits. Whether and to what extent any violation of the standard of care Dorsey caused Nielsen to bring the suits, and thus incur fees to Dorsey, can be evaluated by a jury without expert testimony.

However, in regard to the claim that Nielsen was injured by being forced to pay other attorneys after Dorsey withdrew, Friedman's affidavit is insufficient in regard to stating an opinion regarding proximate cause. Just as in *Guzick*, the affidavit provides only conclusory statements that essentially mirror the complaint: because of the alleged breaches, Nielsen incurred legal expenses to Foley, Anthony, and Bassford, and was also damaged by the settlements to Mueller and Bohnen. For example, in Section VII of the report Friedman states "The failure to comply with the standard of care caused the Plaintiff damages. . . . Plaintiff was subjected to attorney's fees, sanctions, and loss of reputation."[67] Friedman states, without any explanation, that Nielsen was required to retain Tom Pahl and Joseph Anthony. Friedman supplies no explanation as to why either the Mandamus Action or the Washington County Action needed to be prosecuted, especially since he also opines that Dorsey breached its duty of bringing these actions without a sufficient legal basis. Had something changed? Were they now meritorious? Friedman provides no explanation. This is a mere conclusion and does not meet the standards set forth in *Guzick*.



Friedman also states that Dorsey's breaches caused Nielsen to have an anti-SLAPP counterclaim filed in the Washington County Action and to be sued in the Hennepin County Action. Friedman says that Nielsen had to retain Bassford to defend him and that Nielsen made settlement payments to Bohnen and Mueller. He opines that "[a]ll of these expenses would not have been

---

[67] The court notes that Nielsen is no longer seeking damages for loss of his reputation and he has not listed sanctions as one of his damages.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

incurred absent Defendants' negligence and/or malpractice, and were therefore proximately caused by Defendants' actions." Although it is reasonable that if someone is sued they must defend themselves, Friedman has not explained how the actions of Dorsey led to Bohnen's filing of a lawsuit alleging abuse of process, malicious prosecution, and civil conspiracy 16 months after Dorsey had withdrawn.[68] Such an explanation is particularly necessary in light of the fact that Nielsen was actively continuing the Washington County Action with another lawyer. Indeed, Pahl amended the complaint in the Washington County Action nearly a year after Dorsey withdrew and well before the Hennepin Action was instigated. It is not obvious that all of the costs incurred in the defense were directly caused by Dorsey's actions and Friedman has provided no explanation. Thus, the affidavit is too conclusory and fails. In addition, the facts upon which Friedman relied are incorrect since Chubb, not Nielsen, paid these expenses.

Friedman opines that Dorsey's alleged breaches caused him to lose his DPPA case. However, although that claim was dismissed for insufficient pleading, Friedman provides no explanation as to why the claim was "lost" and could not have been amended or refiled by his new attorney. Again this is conclusory and does not meet the *Guzick* standard.

Nielsen's arguments that proximate cause should be a question for the jury ignores the decision in *Guzick* which specifically addressed this question. In a legal malpractice case, proximate cause requires an expert opinion unless it falls into the category of cases easily evaluated by a jury. This is not one of those cases. An expert is needed to explain, if possible, how any mistakes made by Dorsey necessitated years of litigation, mostly on claims that Nielsen now asserts were without merit.

Nielsen also asks the court to allow him the protections of the safe harbor in Minn. Stat. § 544.42, which allows a party 60 days to amend a deficient expert report. However, to qualify for the safe harbor a disclosure must provide some meaningful information, beyond conclusory statements. *Guzick*, 869 N.W.2d at 51. Although there is meaningful information regarding standard of care and breach, the proximate cause section is conclusory. As in *Guzick*, this is not a minor defect, indeed it is a major flaw in the case. Moreover this is not the beginning of a lawsuit. The actions complained of occurred 8 years ago, and this case was brought two years ago. Nielsen should have been well



---

[68] The Court also notes that Friedman's opinion on causation erroneously equates but-for causation with proximate causation. *See Harpster v. Hetherington*, 512 N.W.2d 585, 586 (Minn. 1994) (explaining that but-for causation is an inappropriate standard for tort liability because innumerable events are but-for causes of an injury; rather, the alleged wrong must also proximately cause the injury).

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

aware of *Guzick* and the need to have substance rather than conclusory statements. Just as in *Guzick,*  the Court finds that this a major defect and will not allow Nielsen the protection of the safe harbor.

Because the expert disclosure lacks a meaningful disclosure of the expert's opinion on proximate cause, which is an element of a prima facie case that, on these facts, is required to be established by an expert, the malpractice claim must be dismissed except as it relates to fees Nielsen paid to Dorsey.

### ii. Proximate cause

Dorsey next argues that Nielsen has not produced sufficient evidence that Dorsey's claimed breach of contract and breach of fiduciary duty proximately caused any of Nielsen's injuries.[69]  To establish that Dorsey's[70] acts or omissions were the proximate cause of his damages, Nielsen must show that Dorsey's "conduct was a substantial factor in bringing about the injury." *Flom v. Flom,* 291 N.W.2d 914, 917 (Minn. 1980). "Generally, proximate cause is a question of fact for the jury; however, where reasonable minds can arrive at only one conclusion, proximate cause is a question of law.'" *Lubbers v. Anderson,* 539 N.W.2d 398, 402 (Minn. 1995) (citing *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 115 (Minn. 1992)).

### 1. Payment to Bassford Remele and Settlements to Bohnen and Mueller.

Nielsen's claim that he should be reimbursed the legal fees paid to Bassford in defending him in the in the Hennepin County Action and the anti-SLAPP counterclaim in the Washington County Action, as well as for the amount paid to settle these claims, fails for a simple reason: These are not damages that Nielsen suffered.

"If the loss of an insured is fully covered by insurance and the insurer has compensated insured for the loss, the insurer is subrogated to any rights insured may have had against a third party because of the loss.  In such case, the insurer is the real party in interest and must bring suit in its own name under the real-party-in-interest statute." *Blair v. Espeland,* 43 N.W.2d 274, 276 (Minn. 1950).  While the real-party-in-interest statute was repealed in 1974, *see* 1974 Minn. Laws 707, Ch. 395, § 12, the Rules of Civil Procedure still require that actions be prosecuted by the real party in interest.  Minn. R. Civ. P. 17.01.

---

[69] Dorsey also argues that the malpractice action fails if there is no evidence of proximate cause. The court agrees and found above that the expert report was insufficient in this regard.  However, even if an expert report was not necessary, for the reasons set forth in this section, Nielsen has failed to present evidence of proximate cause regarding anything other than the fees he paid to Dorsey.
[70] There is no dispute that the only acts and omissions alleged to have occurred were by Eck.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

Nielsen admits that all of Bassford Remele's charges, as well as all settlements, were paid by his insurance carrier Chubb. He admits that he did not pay any money to defend or settle these claims.[71] He has not produced any evidence that he paid anything out of his own pocket towards the defense or settlement of these claims. Although there was a time when Chubb had a reservation of rights—meaning it had the right to ask Nielsen to pay if his claim was not covered by insurance—there is no evidence that Chubb has asked him to pay. Nor is there any evidence that Chubb assigned its rights to Nielsen. Therefore Nielsen is not the real party in interest, as there is no evidence that the fees and settlements were an injury to Nielsen. The court rules, as a matter of law, that these fees and settlement are not an injury to Nielsen and he cannot recover them.

The court is not persuaded that the common law collateral source rule compels a different result. Nielsen argues that he is entitled to recover fees paid by Chubb based on the collateral source rule. He relies on *Hueper v Goodrich*, which states that "a plaintiff may recover damages from a tortfeasor, although the plaintiff has received money or services in reparation of the injury from a source other than the tortfeasor." *Hueper*, 314 N.W.2d 828, 830 (Minn. 1982). Subsequent legislation superseded *Hueper* and partially abrogated the common law collateral source rule, barring double recovery by plaintiffs in personal injury cases. *See* Minn. Stat. § 548.21 (setting forth a procedure to prevent certain double recoveries); *Swanson v. Brewster*, 784 N.W.2d 264, 269 (Minn. 2010) ("The statute changed the rule on collateral sources and damage awards, essentially providing that a plaintiff cannot recover money damages from the defendant if the plaintiff has already received compensation from certain third parties or entities."). But, as the court of appeals noted in an unpublished decision, the statute, by its plain language, does not apply to an action for legal malpractice. *Russell v. Roberts*, No. A08-1108, 2009 WL 1311863, at *2 (Minn. App. May 12, 2009). Nielsen relies on *Russell* to argue that the common-law collateral source doctrine applies to this situation. But as the *Russell* court held, the common law collateral source rule does not create another source of damages; rather, it limits a defendant's ability to assert lack of injury based on a plaintiff's recovery from another source. *Id.* A plaintiff is still required to prove that an actual injury was suffered. *Id.*

Here, there is no evidence that Nielsen sustained an injury as contemplated by the collateral source rule. No Minnesota cases address whether payments made by a third party to defend against a lawsuit are a third-party payment for injury for purposes of the collateral source rule. But the Court finds the cases from other jurisdictions cited by Dorsey in their Reply Brief to be persuasive. The

---

[71] Nielsen Dep. pp. 69, 72-75, 77-78, 176, 186-87, Sloneker Aff. Ex. 1.

27-CV-17-18371

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

present case is very similar to *Meyer v. Dempcy*, 740 P.2d 383 (Wash. App. 1987), in which a pediatrician's widow sued her estate planning attorney for failing to advise her to probate her husband's estate. Because the estate was not probated, it was still exposed to two medical malpractice actions filed five years after the pediatrician's death. *Id.* at 384. The widow sued her attorney to recover the amounts paid by the malpractice carrier to defend and settle both lawsuits. *Id.* The court noted that the collateral source rule usually applied to personal injuries and should not apply if there was no actual loss. *Id.* at 385-86. The court did not allow the plaintiff to recover the costs her husband's malpractice paid to defend the lawsuits. *Id.*; *see also Sterling Radio Stations, Inc. v. Weinstine*, 765 N.E.2d 56, 62 (Ill. App. 2002) (holding that the collateral source rule did not apply to legal malpractice claims because there are no personal injuries and the plaintiff should not be but in a better position than if the underlying action had been successfully prosecuted or defended).

Nielsen suffered, at most, a theoretical injury. Nielsen's insurance carrier stepped in, as it was contractually obligated to do, and paid for his defense. Because Minnesota has indicated that it disfavors double recovery, and because Nielsen has cited no case that has extended this rule to a circumstance such as this case, the court finds that Nielsen did not sustain an injury as contemplated by the collateral source rule and it therefore does not apply in this case. Any injury is to Chubb and there is no basis for Nielsen to recover the amount of fees or settlements paid by Chubb.

### 2. Fees Paid to Foley and Anthony Firms

Dorsey argues that any acts or omissions by Dorsey were not a substantial factor in Nielsen's decision to continue litigating the Mandamus case, Washington County case and Federal case. The court observes that to the extent the claims brought by Dorsey might have precipitated the claims from Bohnen and Mueller, these were handled by Bassford Remele. Nielsen has not presented any evidence that the fees paid to Foley or Anthony were needed to defend him.

Viewing the facts in the light most favorable to Nielsen, Foley continued the Mandamus case after Dorsey had said it should be dismissed, and after Tom Pahl asserted that Eck should be disbarred for having brought the claims.[72] Nielsen's only explanation as to why it was necessary for the Mandamus Action to continue was that he had been countersued.

Foley also continued the Washington County Action. Instead of dropping the claims that Nielsen now asserts were so without merit that bringing them on his behalf was malpractice, Pahl amended the complaint a second time in March 2012 in order to assert claims of abuse of process,

---

[72] Sloneker Aff Ex. 1, Nielsen Dep. 36:17-23.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

assault, and nuisance.[73]  No explanation has been provided as to why the actions of Dorsey made it necessary for Nielsen to continue to make his abuse of process claims against Bohnen.

In regard to time spent by Foley on the Federal Action, Nielsen has failed to show that the loss of his driver license claim was due to Dorsey's failure to properly plead.  Foley took over the case before the motion to dismiss was brought and could have amended the complaint.  Because the complaint was dismissed for failure to state a claim, it was without prejudice, and the claim could have been refiled.

Nielsen had been told he should dismiss his claims and chose not to do so.  He has failed to provide a reasonable explanation for why he had to continue prosecuting these claims with Foley.  The fact that he faced exposure from the anti-SLAPP suit and, 16 months later, from the Hennepin County Action, explains why he needed a defense, but it does not explain why he needed to continue claims which he now states were frivolous.

In regards to the fees from Anthony, Mr. Anthony in his affidavit states that he thought the case had no likelihood of success and recommended a walk away.  Anthony states that he eventually attempted a walk away, but since Nielsen testified that he never authorized a walk away, and it is unlikely that Anthony made a settlement offer without his client's authority. The evidence is that a walk away was never offered.  Anthony's affidavit states that he demanded $400,000 in an attempt at settlement because the other side was demanding millions of dollars.  But stating that he offered to settle for $400,000 is not the same as stating that he believed that Nielsen should continue to prosecute a claim that had no merit.

The court finds that even if Nielsen needed to defend himself, he has provided no explanation for why the acts and omissions of Dorsey required him to continue to prosecute claims that he now asserts were without merit.  The evidence, even when viewed in the light most favorable to Nielsen, does not support that fees to prosecute his claims were necessary, rather than due to his own independent decision to continue pursuing the claims.  Because Dorsey's conduct did not force him to pay additional fees to Foley and Anthony, those fees are not damages arising from any malpractice, breach of contract, or breach of fiduciary duty by Dorsey.

### 3.  Fees Paid to Dorsey

However, Dorsey's causation argument fails with respect to damages in the form of fees paid to Dorsey.  If a jury were to credit Nielsen's evidence that Dorsey's conduct fell below the standard

---

[73] Sloneker Aff. Ex. 38, at 6.

of care for an attorney, breached its contract with Nielsen, and breached its fiduciary duty to Nielsen, it could reasonably conclude that Nielsen's payments to Dorsey were caused by that conduct. Specifically, a jury could reasonably find that Nielsen would not have initiated any of this litigation, and thus would not have incurred most Dorsey's attorney fees, had Dorsey given him more complete and accurate information of the law before the lawsuit began.

Dorsey also argues that Nielsen's claim for damages against it must be limited to $13,183.64 because Nielsen had, in previous litigation, asserted that he had paid $14,781 to Eck in regards to the criminal matter.[74] In his deposition Nielsen testified that he did not remember what portion of the $28,054.64 he paid to Dorsey was for Eck's work on the criminal case.[75] Further, Nielsen's brief does not present any argument for why Nielsen should not be bound by his assertion in the prior litigation. Nonetheless, the Court notes that Dorsey relies on the doctrine of judicial estoppel, which prohibits a party from asserting inconsistent legal positions in different legal proceedings. *See Hooper v. Zurich Am. Ins. Co.*, 552 N.W.2d 31, 36 (Minn. App. 1996). But the Minnesota Supreme Court has not adopted the doctrine. *Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W.2d 236, 248-49 (Minn. 2016). And even if it was certain that the doctrine was the law in Minnesota, it would not apply here. For judicial estoppel to apply, the party to be estopped "must have prevailed in its original position," there must be a clear inconsistency, and there must not be distinct factual issues between the proceedings. *Id.* at 249. Nielsen did not prevail in the previous proceeding, so the doctrine does not apply. Additionally, as the elements laid out in *Ryan Contracting* make clear, judicial estoppel applies to legal theories, not assertions of historical fact. Even if Nielsen had succeeded, it does not appear certain that he would be estopped from claiming $28,054.56 in fees paid to Dorsey. What portion is related to his criminal defense or to consultation before the lawsuits were initiated is a question of fact. Nielsen's claims for malpractice, breach of contract, and breach of fiduciary duty survive to the extent that they seek to recover fees paid to Dorsey as a result of those alleged wrongs.[76]

### 4. Lost Damages from the Driver's License Case

Nielsen has failed to show that the loss of his driver license claim was due to Dorsey's failure to properly plead. Foley took over the case before the motion to dismiss and could have amended the complaint. Also since the complaint was dismissed for failure to state a claim and without

---

[74] Sloneker Aff. Ex. 60.
[75] Sloneker Aff. Ex. 1, Nielsen Dep. 157:4-16.
[76] The court does not agree that the "better result" rule would bar Nielsen from making a claim for fees against Dorsey since for him the better result would have been to never have brought the claims and to have incurred no fees.

Filed in District Court
State of Minnesota
10/18/2019 1:28 PM

prejudice, it could have been refiled.  Given these undisputed facts, no reasonable jury could conclude that Dorsey's conduct, specifically failing to properly plead the case, was the proximate cause for him not recovering damages in that case.

K.A.S